1

2

3                    **UNITED STATES DISTRICT COURT**

4                    **EASTERN DISTRICT OF CALIFORNIA**

5

6  **ISAIAS VASQUEZ and LINDA HEFKE,**            **CASE NO. 1:17-cv-00796-AWI-BAM**

7              **Plaintiffs,**

8          **v.**                                 **ORDER DENYING DEFENDANTS'**
                                                  **MOTION FOR RECONSIDERATION**
9  **LEPRINO FOODS COMPANY and**                  **AND PLAINTIFFS' MOTION FOR**
   **LEPRINO FOODS DAIRY PRODUCTS**               **SANCTIONS**
10 **COMPANY,**
                                                  (Doc. Nos. 166, 172)
11             **Defendants.**

12

13                        **I.   Introduction**

14       In this lawsuit, two cheese manufacturing companies are being sued by two of their

15 employees for violating California's wage-and-hour laws.  The two employees are Isaias Vasquez

16 and Linda Hefke (collectively "Plaintiffs").  The two cheese manufacturing companies are Leprino

17 Foods Company and Leprino Foods Dairy Products Company (collectively "Defendants" or

18 "Leprino").[1]

19       Plaintiffs moved for class certification pursuant to Rule 23(b)(3) of the Federal Rules of

20 Civil Procedure.  The Court granted that motion, in part.  See Doc. No. 163 (Court's certification

21 order).  Leprino then moved the Court to reconsider the certification order, arguing that the order

22 is premised on an erroneous factual finding.  See Doc. No. 166.  Plaintiffs then moved for

23 sanctions against Leprino, arguing that Leprino's motion for reconsideration is frivolous.  See

24 Doc. No. 172.  Leprino's motion for reconsideration and Plaintiffs' motion for sanctions are now

25 before the Court.  For the reasons discussed below, the Court will deny both motions.

26

27 [1] In their briefing on Plaintiffs' motion for class certification, the parties, including both defendants, made no
   distinction between, on one hand, Leprino Foods Company and, on the other hand, Leprino Foods Dairy Products
28 Company.  The parties treated both defendants as if they are a single entity, which the parties referred to as "Leprino."
   Accordingly, the Court will adopt that practice in this order.

# II.  Facts

**A.      The Court concluded that Plaintiffs' meal and rest break claim satisfies the commonality-predominance requirement of Rule 23(b)(3).**

Plaintiffs claim that Leprino's policies and practices at the Lemoore West facility effectively placed the facility's hourly-wage employees on call during meal and rest breaks, which is a violation of California Labor Code §§ 226.7, 512, and California Industrial Welfare Commission ("IWC") Wage Order No. 8, Cal. Code Regs., tit. 8.  The following is a summary of Plaintiffs' theory for the meal and rest break claim:

> Based on Brinker [Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004 (2012)], and Augustus [Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257 (2016)], Plaintiffs' theory for the meal and rest break claim is that although Leprino's written meal and rest break policies are facially compliant, and although Leprino schedules facially compliant meal and rest breaks for its employees, Leprino nonetheless "requires the production workers at the Lemoore West plant to remain on-call during their breaks," which is a violation of Wage Order No. 8 and Labor Code § 226.7.  Doc. No. 116-1 at 26.  Leprino claims that the following facts collectively demonstrate that Leprino's employees are on call during their breaks: (1) Leprino's policies stress quality and quotas and pressure employees to avoid production delays, even if that means working during breaks, for example, on machinery; (2) Leprino's policies stress "over communication," as illustrated, in part, by the radios, intercoms, and work phones in breakrooms; (3) Leprino's written policies stress responsiveness and obedience to superiors' requests and instructions, as illustrated in the employee handbook; (4) Leprino's unwritten policies and practices require and pressure employees to carry their radios at all times and respond at all times to calls made on the intercom, breakroom phone, and in person, even if those calls are made during breaks; and (5) Leprino does not tell its employees that they need not respond to work-related matters during breaks.  Collectively, these facility-wide policies and practices, according to Plaintiffs, demonstrate that the employees are effectively on call at all times, even during their breaks — which in turn means Leprino fails to provide legally compliant breaks.

Doc. No. 163 at 24-25

In ruling on Plaintiffs' motion for class certification, the Court ultimately concluded that Plaintiffs' meal and rest break claim satisfies the commonality-predominance requirement of Rule 23(b)(3).  Specifically, the Court concluded that Plaintiffs' on-call theory naturally suited itself to the following common question: In light of Leprino's foregoing class-wide policies and practices, are the class members actually on call during breaks?  The Court arrived at this conclusion because the evidence from the parties sufficiently showed "that the class was subjected to Leprino's foregoing policies and practices."  Id. at 25.  The Court further concluded that the common question satisfied

1   the commonality-predominance requirement of Rule 23(b)(3) because the "determination of the

2   question's truth or falsity will resolve an issue that is central to the validity of each member's meal and

3   rest break claim in one stroke." Doc. No. 163 at 25 (citing <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S.

4   338, 350 (2011)).

5         By agreeing with Plaintiffs' position, the Court simultaneously rejected one of Leprino's

6   arguments against class certification, which is that "the weight of the evidence" submitted by

7   Plaintiffs and Leprino demonstrated that Plaintiffs' witnesses are either lying or statistical outliers.

8   Doc. No. 120 at 33.  In making this argument, Leprino pointed to its own witness declarations

9   from fifty-six Leprino employees, virtually all of whom uniformly declared that they and other

10  employees at the facility were generally freed from employer control during breaks.

11        The Court reviewed and considered Leprino's witness declarations, just as it did with

12  Plaintiffs' witness declarations, and then the Court provided the following assessment of

13  Plaintiffs' and Leprino's competing witness declarations:

14        [Leprino's witness] declarations, however, do not outweigh or refute the many
          witness declarations presented by Plaintiffs . . . , and this is for a fairly simple
15        reason: of Leprino's fifty-six declarations, no more than five are from employees
          who are putative members of the class . . . .  The other fifty-one declarations come
16        from salaried employees, all but one of whom . . . are either managers or
          supervisors.  With respect to Plaintiffs' on-call theory, the Court finds the
17        testimony from most of Plaintiffs' witnesses' declarations more persuasive than the
          uniform testimony from Leprino's salaried managers and supervisors, none of
18        whom are putative members of the class.

19  Doc. No 163 at 26-27.  As will be discussed below, Leprino takes issue with the Court's foregoing

20  statements that "of Leprino's fifty-six declarations, no more than five are from employees who are

21  putative members of the class," and none of "Leprino's salaried managers and supervisors [are]

22  putative members of the class."

23        Having concluded that Plaintiffs' meal and rest break claim satisfied the requirements of

24  Rule 23(b)(3), the Court certified the claim for class aggregation[2] and defined the class as follows:

25        All non-exempt hourly workers who are currently employed, or formerly have been
          employed, as non-exempt hourly employees at Leprino's Lemoore West facilities
26

27  / / /

28  [2]  The Court also certified Plaintiffs' claims that were derivative of the meal and rest break claim, such as the overtime
     claim, minimum wage claim, and accurate itemized wage statement claim.

1          in Lemoore, California, at any time within four years prior to the filing of the
           original complaint until March 31, 2020.

2   Doc. No. 163 at 31.

3          Leprino then moved the Court to reconsider the certification order, arguing that the order

4   was premised on an erroneous factual finding.  See Doc. No. 166.  Plaintiffs then moved for

5   sanctions against Leprino, arguing that Leprino's motion for reconsideration is frivolous.  See

6   Doc. No. 172.

7              **III.   Leprino's Motion for Reconsideration**

8   **A.          Leprino's arguments.**

9          Leprino argues that the Court erred when it concluded that Plaintiffs' meal and rest break

10  claim satisfies the commonality-predominance requirement of Rule 23(b)(3).  According to

11  Leprino, the Court's conclusion is wrong and should be reversed because it is premised on an

12  erroneous factual finding.  That factual finding is, according to Leprino, the Court's finding that

13  no more than five of Leprino's fifty-six witness declarations come from employees who are

14  putative members of the class and none of Leprino's salaried managers and supervisors are

15  putative members of the class.  Leprino argues that this factual finding is erroneous because thirty-

16  two of Leprino's fifty-six witness declarants are putative members of the class, and some of those

17  thirty-two witness declarants are currently salaried managers and supervisors.

18         Leprino further argues that as a result of the Court's erroneous finding, the Court

19  "disregarded" and "ignored" Leprino's witness declarations, such as the thirty-two witness

20  declarations that came from putative members of the class.  Doc. No. 166 at 6, 7, 14, 17.  This was

21  a critical error, argues Leprino, because those witnesses uniformly declared that they and other

22  employees at Leprino were freed from employer control during breaks.  Therefore, according to

23  Leprino, if the Court had considered and properly weighed Leprino's witness declarations, as

24  opposed to ignoring and disregarding the witness declarations, then the Court would have

25  correctly concluded that the commonality-predominance requirement is not satisfied, and this is

26  because Leprino's witness declarations prove that there is no "common practice or policy requiring

27  that non-exempt employees remain on-call during breaks."  Id. at 6.  In other words, Leprino argues

28

4

1    that "the conflicting declarations amongst putative class members foreclose any conclusion that

2    non-compliant breaks were the result of some de facto on-call policy." Id. at 16.

3    **B.    Legal standard.**

4         "The general rule regarding the power of a district court to rescind an interlocutory order is

5    as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent

6    procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be

7    sufficient," including manifest error. City of Los Angeles, Harbor Div. v. Santa Monica

8    Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citations omitted). "A district court's power to

9    rescind, reconsider, or modify an interlocutory order is derived from the common law," not from

10   Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. Toole v. Baxter Healthcare Corp.,

11   235 F.3d 1307, 1315 (11th Cir. 2000) (discussing Rule 59) (cited with approval in Santa Monica

12   Baykeeper, 254 F.3d at 885); Bucy v. Nevada Const. Co., 125 F.2d 213, 217 (9th Cir. 1942)

13   (discussing Rule 60) (cited with approval in Santa Monica Baykeeper, 254 F.3d at 887).

14   **C.    Discussion.**

15        **1.    The Court possesses the jurisdiction and inherent authority to reconsider and
              modify the certification order.**
16

17        The Court's certification order is an interlocutory order. See Weil  v. Inv./Indicators,

18   Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981); McKinsty v. Swift Transportation Co.,

19   of Arizona, LLC, 2017 WL 8943524, at *2 (C.D. Cal. Sept. 18, 2017). Because the Ninth Circuit

20   has not granted a party permission to appeal the certification order, the Court retains jurisdiction

21   over the certification order. Santa Monica Baykeeper, 254 F.3d at 886. Because the Court retains

22   jurisdiction over the certification order, the Court possesses the inherent power to reconsider and

23   modify the order for cause seen by the Court to be sufficient. Id. at 885.

24

25        **2.    The weight of the evidence supported the Court's conclusion that the meal
              and rest break claim satisfies the commonality-predominance requirement.**

26        At the outset, the Court acknowledges that its foregoing statements — namely, that "of

27   Leprino's fifty-six declarations, no more than five are from employees who are putative members

28   of the class," and none of "Leprino's salaried managers and supervisors [are] putative members of

1  the class" — are factually incorrect.  More than five of Leprino's witness declarants are members

2  of the class, and some of Leprino's salaried managers and supervisors are members of the class.

3  However, even though it is true that several of Leprino's witness declarants are members of the

4  class, this fact does not change the Court's conclusion that the evidence from the parties

5  sufficiently showed "that the class was subjected to Leprino's foregoing policies and practices."

6  Doc. No. 163 at 25.

7          First, immediately after the Court erroneously stated that vast majority of Leprino's witness

8  declarations came from individuals who are not members of the class, the Court correctly found that

9  the overwhelming majority of Leprino's witness declarations (at least fifty-one of the fifty-six

10  declarations) came "from salaried employees, all but one of whom . . . are either managers or

11  supervisors."  Id. at 26.  The fact that the overwhelming majority of Leprino's witness declarants were

12  managers and supervisors at the time they provided their declarations is not disputed by Leprino, and

13  the fact was significant to the Court's conclusion that Leprino's witness declarations failed to refute

14  the evidence showing that the class was subjected to the policies and practices.  This is to say, even

15  if thirty-two of Leprino's witness declarants were hourly-wage employees for Leprino at some point in

16  time during the class period, thereby making them members of the class, the more important fact to the

17  Court was that the overwhelming majority of Leprino's witness declarants were managers and

18  supervisors for Leprino at the time they provided their declarations.  These witnesses were the very

19  employees who were responsible for enforcing the allegedly unlawful policies and practices, and these

20  employees had a greater interest in defending Leprino's policies, practices, and business interests than

21  low-level, hourly-wage employees.[3]  Consequently, due to their inherent bias, Leprino's managers and

22  supervisors failed to persuade the Court that Plaintiffs' many witnesses were either lying or statistical

23  outliers,[4] see Ninth Circuit Manual of Model Civil Jury Instructions, Instruction No. 1.14, Credibility

24

25  [3]  Additionally, of Leprino's five witness declarations that came from non-managers and non-supervisors, two of the
     declarations came from employees currently working in Leprino's human resources department.  See Decl. Angela
26  Azpiroz; Decl. Casey McMahan.

27  [4]  In their opposition to Leprino's motion for reconsideration, Plaintiffs stated that Leprino had the opportunity to
     obtain additional witness declarations from current hourly-wage employees, but Leprino instead obtained the
     overwhelming majority of its witness declarations from managers and supervisors.  Plaintiffs further stated, "At the
28  end of the day, Leprino chose to either forego obtaining declarations from current hourly employees, or found them
     unwilling to testify on Leprino's behalf."  Doc. No. 169 at 11.  Leprino did not respond to this point in its reply,

1    of Witnesses (updated Dec. 2019) (stating that a witness's credibility may be determined by

2    considering the "witness's interest in the outcome of the case" and "the witness's bias or prejudice"),

3    especially in light of the fact that Leprino's undisputed official policies stressed quality, "over

4    communication," and responsiveness and obedience to superiors' requests and instructions.

5          Second, even when Leprino's witness declarations are taken at face value, portions of the

6    declarations fail to disprove Plaintiffs' contention that Leprino maintained class-wide policies and

7    practices that infringed on employees' breaks.  For example, many of Leprino's own witnesses

8    declared that they were occasionally contacted about work-related matters during their breaks,

9    including through the radio, intercom, and breakroom phone.  See, e.g., Decl. Salvador Amezcua;

10   Decl. Jacob Avila; Decl. Daniel Barron; Decl. Roger Boling; Decl. Megan Bowen; Decl. Joseph

11   Brown; Decl. Brian Cure; Decl. Jerry Espinoza; Decl. Matthew Garcia; Decl. Valerie Hall; Decl.

12   Oscar Hernandez; Decl. James Jones; Decl. Ronald Vandyke; Decl. Anthony Vasquez.  Moreover,

13   many of Leprino's own witnesses declared that they occasionally contacted other employees about

14   work-related matters during the other employees' breaks.  See, e.g., Decl. Thomas Aquino; Decl. Eric

15   Barber; Decl. Brian Cure; Decl. Brad Dennis; Decl. Matthew Garcia; Decl. Jordan Goodwin; Decl.

16   James Jones; Decl. Jose Zepada.  Moreover, when some of Leprino's own witnesses were deposed,

17   those witnesses testified to facts that support the finding that Leprino maintained class-wide policies

18   and procedures that affected breaks.  For example, both Monica Mata and Alejandro Osuna testified

19   that they were contacted during breaks about work-related matters.  Depo. Monica Mata; Depo.

20   Alejandro Osuna.  Additionally, Ronald Van Dyke testified that he would contact employees during

21   their breaks "a couple times a week."  Depo. Ronald Van Dyke.  Additionally, although Van Dyke

22   stated in his declaration that there is "no reason" to interrupt employees when they are on breaks, Van

23   Dyke testified in his deposition that he does not consider it a "break interruption" when an employee

24   responds to a radio call while on break in the breakroom.  See Decl. Van Dyke; Depo. Van Dyke.

25   Additionally, both Van Dyke and Osuna testified that they were never instructed by Leprino to turn off

26   their radios during breaks.  Depo. Ronald Van Dyke; Depo. Alejandro Osuna.  Additionally, Van Dyke

27

28   leaving the Court to conclude that Leprino did, in fact, have the opportunity to obtain additional declarations from
     current hourly-wage employees, but ultimately chose to not do so.

1  testified that he does not recall being told by Leprino that he is free to choose if and when he responds

2  to radio calls while he is on break.  Depo. Ronald Van Dyke.  Additionally, both Van Dyke and Mata

3  testified that they were not given penalty pay for interrupted breaks.  Depo. Ronald Van Dyke; Depo.

4  Monica Mata.  Finally, Kes Anderson, who has been Leprino's human resources manager since 2010,

5  testified that he has no reason to dispute an employee's claim that he or she was contacted about a

6  work-related matter during a break.  Depo. Kes Anderson.

7         Thus, for the above reasons, Leprino's witness declarations do not undermine the Court's

8  conclusion that "Plaintiffs provided sufficient proof . . . showing for class certification purposes that

9  the alleged policies . . . affected most, if not all, of the class members."  Doc. No. 163 at 26.

10  Accordingly, Leprino's motion for reconsideration will be denied.

11                **IV.  Plaintiffs' Motion for Sanctions**

12  **A.      Plaintiffs' arguments.**

13         Plaintiffs argue that the Court should sanction Leprino for filing the motion for

14  reconsideration because the motion is, first, frivolous and sanctionable under Rule 11 of the

15  Federal Rules of Civil Procedure and, second, designed to delay the resolution of this lawsuit and

16  sanctionable under 28 U.S.C. § 1927.

17         As for Rule 11, Plaintiffs argue that Leprino's motion is frivolous for two reasons.  First,

18  Leprino's motion is based on the same argument that Leprino advanced in its opposition briefing

19  to Plaintiffs' motion for class certification.  That argument is that Leprino's witness declarations

20  prove that the alleged policies and practices did not universally affect the class.  Although the Court

21  squarely rejected that argument in its certification order, Plaintiffs argue, Leprino nonetheless filed

22  the motion for reconsideration to rehash the argument for a second time.  Second, Leprino's

23  motion for reconsideration blatantly misconstrues the Court's certification order.  Specifically,

24  even though the certification order clearly states and shows that the Court considered and weighed

25  Leprino's witness declarations, Leprino's motion for reconsideration falsely accuses the Court of

26  "ignor[ing]" and "disregard[ing]" Leprino's witness declarations.

27         As for 28 U.S.C. § 1927, Plaintiffs argue that Leprino's motion for reconsideration is

28  designed to delay the resolution of this lawsuit because the motion simply rehashes Leprino's

8

1   argument that Leprino's witness declarations prove that the alleged policies and practices did not

2   universally affect the class, even though the Court previously and clearly rejected that argument in

3   its certification order.

4   **B.      Legal standard.**

5   Sanctions are an appropriate response to willful disobedience of a court order . . . or when

6   the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Aloe

7   Vera of Am., Inc. v. United States, 376 F.3d 960, 965 (9th Cir. 2004); Fink v. Gomez, 239 F.3d

8   989, 991 (9th Cir. 2001).  There are three primary mechanisms through which a court may

9   sanction parties or their lawyers for improper conduct: (1) Rule 11 of the Federal Rule of Civil

10  Procedure, which applies to signed writings filed with the court; (2) 28 U.S.C. § 1927, which is

11  aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings; and (3)

12  the court's inherent power.  Fink, 239 F.3d at 991.   Each of these mechanisms has its own

13  particular requirements, and it is important that the grounds be separately articulated to assure that

14  the conduct at issue falls within the scope of the sanctions remedy.  Christian v. Mattel, Inc., 286

15  F.3d 1118, 1131 (9th Cir. 2002).

16         **1.      Rule 11.**

17  Under Rule 11, an award of sanctions is required if a frivolous paper is filed.  Price v. State

18  of Hawaii, 939 F.2d 702, 709 (9th Cir. 1991).  Frivolous filings are those that are both baseless

19  and made without a reasonable and competent inquiry.  Buster v. Greisen, 104 F.3d 1186, 1190

20  (9th Cir. 1997).   Rule 11 states:

21         (b) Representations to Court.  By presenting to the court a pleading, written motion,
           or other paper — whether by signing, filing, submitting, or later advocating it — an
22         attorney or unrepresented party certifies that to the best of the person's knowledge,
           information, and belief, formed after an inquiry reasonable under the
23         circumstances:

24              (1) it is not being presented for any improper purpose, such as to harass,
                cause unnecessary delay, or needlessly increase the cost of litigation;
25

26              (2) the claims, defenses, and other legal contentions are warranted by
                existing law or by a nonfrivolous argument for extending, modifying, or
27              reversing existing law or for establishing new law;

28              (3) the factual contentions have evidentiary support or, if specifically so

9

> identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

> (c) Sanctions. (1) In General.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. . . .

Fed. R. Civ. P. 11.

Rule 11 imposes a duty on attorneys to certify that (1) they have read the pleadings or motions they file and (2) the pleading or motion is grounded in fact, has a colorable basis in law, and is not filed for an improper purpose. See Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994). A court considering a request for Rule 11 sanctions should consider whether the position taken was frivolous, legally unreasonable, or without factual foundation, even if not filed in subjective bad faith. Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986).

**2.      28 U.S.C. 1927.**

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Sanctions are appropriate under § 1927 when there is no obvious violation of the Federal Rules, but where, within the Rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs.  Pickern v. Pier 1 Imps. (U.S.), Inc., 339 F. Supp. 2d 1081, 1091 (E.D. Cal. 2004) (citing In re Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986), as amended by 803 F.2d 1085 (9th Cir. 1986)).  Stated differently, sanctions under § 1927 are appropriate when: (1) the attorney multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3) the conduct resulted in an increase in the cost of the proceedings.  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002); Pickern, 339 F. Supp. 2d at 1091.  An award of sanctions under § 1927 thus requires a finding of recklessness or bad faith.  Ingle v. Circuit City,

1  408 F.3d 592, 596 (9th Cir. 2005); <u>B.K.B.</u>, 276 F.3d at 1107.  Conduct is vexatious or

2  unreasonable when it is done recklessly, with knowledge.  <u>B.K.B.</u>, 276 F.3d at 1107; <u>Pickern</u>, 339

3  F. Supp. 2d at 1091.

4  **C.      Discussion.**

5        As discussed above, the focus of Leprino's motion for reconsideration was the factual

6  finding made by the Court that "of Leprino's fifty-six declarations, no more than five are from

7  employees who are putative members of the class," and none of "Leprino's salaried managers and

8  supervisors [are] putative members of the class."  Doc. No. 163 at 26-27.  As the Court

9  acknowledged above, this foregoing finding is incorrect.

10        In light of the Court's incorrect factual finding, the Court does not conclude that it is

11  frivolous or vexatious for Leprino to argue that the Court's certification ruling should be

12  reconsidered.  Leprino construed the Court's incorrect finding to mean that the Court did not

13  properly weigh Leprino's witness declarations because, in the Court's view, the vast majority of

14  the declarants were not members of the putative class.  This construction, according to Leprino, is

15  warranted because the Court, in conjunction with stating the incorrect finding, indicated that

16  Leprino's witness declarations "do not outweigh or refute the many witness declarations presented

17  by Plaintiffs."  <u>Id.</u> at 26.  Leprino's position is neither baseless nor unreasonable.[5]  Therefore,

18  Plaintiffs' motion for sanctions will be denied.

19                                              **ORDER**

20        Accordingly, IT IS HEREBY ORDERED as follows:

21    1.  Leprino's motion for reconsideration (Doc. No. 166) is DENIED; and

22    2.  Plaintiffs' motion for sanctions (Doc. No. 172) is DENIED.

23

24  IT IS SO ORDERED.

25  Dated:   August 11, 2020                    _____
                                                  SENIOR  DISTRICT  JUDGE

26

27

28  _____
[5]  As this order makes clear, however, the Court's ultimate certification ruling is sound and will not be reversed.
Additionally, Leprino's statements that the Court "ignored" and "disregarded" Leprino's witness declarations are
incorrect and, in turn, inappropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28