1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ISAIAS VASQUEZ and LINDA HEFKE          Case No.  1:17-cv-00796-AWI-BAM
     on behalf of all other similarly situated
12   individuals,                           **ORDER DENYING INFORMAL MOTION
                                            TO COMPEL PLAINTIFF LINDA HEFKE**
13                 Plaintiffs,              **TO AMEND FURTHER SUPPLEMENTAL
                                            DISCOVERY RESPONSES**
14          v.
                                            (Doc. 210)
15   LEPRINO FOODS COMPANY, a
     Colorado Corporation; LEPRINO FOODS
16   DAIRY PRODUCTS COMPANY, a
     Colorado Corporation; and DOES 1-50,
17   inclusive,

18                 Defendants.

19

20                              **BACKGROUND**

21         Defendants Leprino Foods Company and Leprino Foods Dairy Products Company

22   ("Defendants"), through the Court's informal discovery dispute process, moved to compel

23   Plaintiff Linda Hefke to provide supplemental responses to certain of Defendants' interrogatories.

24   On December 16, 2020, the Court partially granted the motion and directed Plaintiff Hefke to

25   serve supplemental responses to four interrogatories related to Plaintiffs' contention that

26   Defendants required class members to remain "on call" during their meal and rest breaks.  (Doc.

27   198.)

28   ///

                                        1

1    Plaintiff Hefke reportedly provided supplemental responses.  Thereafter, on February 25,

2    2021, the parties agreed, through the informal discovery dispute process and after meet and

3    confer efforts, that Plaintiff Hefke would further supplement her responses to the four

4    interrogatories at issue.  (Doc. 205.)

5    On March 17, 2021, the Court held a status conference to address Plaintiff's further

6    supplemental responses to the interrogatories.  A dispute remained regarding the sufficiency of

7    Plaintiff Hefke's responses to Interrogatories Nos. 3 and 4 concerning Defendants' written

8    policies and procedures and Defendants' unwritten policies, practices, and procedures supporting

9    Plaintiffs' contention that Defendants required class member to remain "on call" during their

10   meal and rest breaks.  The Court therefore directed the parties to brief the dispute and submit the

11   matter for a written ruling.  (Doc. 209.)

12   On March 26, 2021, the parties filed separate statements regarding Plaintiff Hefke's

13   supplemental interrogatory responses.  (Docs. 210, 211.)  The matter is deemed submitted on the

14   parties' briefing.

15                                                 **DISCUSSION**

16   Defendants request that Plaintiff Hefke amend her most recent further supplemental

17   responses to Interrogatories Nos. 3 and 4.

18   **Interrogatory No. 3**

19   If Plaintiffs contend that DEFENDANTS required CLASS MEMBERS to remain
      on call during their meal and rest breaks throughout the CLASS PERIOD, then
20   identify with particularity all of DEFENDANTS' written policies and procedures
      that support that contention.
21

22   (Doc. 210, Ex. A, p. 3.)

23   **Further Supplemental Response to Special Interrogatory No. 3:**

24   Defendants argue that the following portion of Plaintiff Hefke's most recent further

25   supplemental response to Interrogatory No. 3 should be removed because it does not identify with

26   particularity written policies and procedures:

27   When new employees started working for Leprino at Lemoore West, Leprino has
      the employees attend a multi-day orientation, during which Leprino reviews with
28   the employees the meal and rest break policies. Additionally, Leprino distributes

                                                      2

1   and makes available to the employees the employee handbook as new versions are created.

2

3   As a matter of facility-wide policy, Leprino emphasizes "quality" at Lemoore West. Leprino trains its employees on the importance of quality in their work and production. As a matter of facility-wide policy, Leprino's supervisors are supposed to have ongoing discussions with employees about the importance of quality. Leprino painted the word "quality" on the steps at the entrance of the Lemoore West facility.

4

5

6   As a matter of facility-wide policy or "recommendation," Leprino trains its employees to "over communicate" about work-related matters with fellow employees "so that [workers] can prevent problems before they happen."

7

8   Leprino imposes production goals and quotas. Meeting these goals and quotas requires, amongst other things, machinery to function properly. Therefore, employees who work with machinery must constantly monitor and/or maintain the machinery so that production goals and quotas are not frustrated. … Employees are held accountable and even disciplined for failure to perform their duties and meet quotas, according to multiple employees. Some employees are regularly prevented from taking scheduled breaks because their duties require them to stay on the job, according to several employees.

9

10

11

12

           . . .

13

14   Leprino assigned personal radios to several employees, but not all employees. Employees who were assigned a radio were required by Leprino to carry the radio at all times and respond to work-related radio calls at all times, including during meal and rest breaks, according to several employees. Employees who were assigned a radio were often contacted on their radios about work-related matters during their meal and rest breaks, according to several employees.

15

16

17   Before the sign was posted by Leprino in 2019 (i.e., "Employees are not required to have their 2-way radio on during meal or rest breaks"), Leprino did not have a written policy stating that employees did not have to have their radios turned on during breaks.

18

19

20   Leprino did not pay employees for breaks that were interrupted with work-related matters, according to several employees. Leprino did not track if or when employees' breaks were interrupted.

21

22   (Doc. 210, Ex. B, p. 38:26-40:2.)

23        Defendants additionally argue that the following portion of Plaintiff's Hefke's most

24   recent further supplemental response to Interrogatory No. 3 should be removed because it does

25   not identify with particularity written policies and procedures, but instead constitutes

26   nonresponsive argument:

27   The radio policies and practices are but one alleged component of Plaintiffs' broader on-call theory. The radio policies and practices, even though not directly applicable to non-carrying employees, may be reasonably considered by the

28

3

factfinder as reflective or symbiotic of a facility-wide policy that prioritizes work above breaks. This consideration would be especially warranted if most or all of the radio-carrying employees were of the understanding that they were required to keep their radios on at all times.

The radio policies and the regular practice of interruptions during breaks, such as via intercoms, breakroom phones, and in-person visits obviously relate to breaks. Moreover, as for the policies about quotas, avoiding production delays, and responsiveness to superiors' requests and instructions, these policies are relevant to breaks because they can naturally and foreseeably encroach into break policies and practices. This is illustrated by the fact that Leprino (prior to Plaintiffs filing this lawsuit) did not have an official written policy that clearly stated that employees need not respond to work-related matters during their breaks — but then Leprino added to its break-time policies in 2019 by implementing a new radio policy; namely, that radio calls need not be responded to during meal breaks. The point is that Plaintiffs' alleged policies and practices do and reasonably can relate to breaks.

(Doc. 210, Ex. B, p. 40, lines 3-17.)

**Interrogatory No. 4**

If Plaintiffs contend that DEFENDANTS required CLASS MEMBERS to remain on call during their meal and rest breaks throughout the CLASS PERIOD, then identify with particularity all of DEFENDANTS' unwritten policies, practices, and procedures that support that contention.

(Doc. 210, Ex. A, p. 3.)

**Further Supplemental Response to Special Interrogatory No. 4:**

Defendants argue that the following portion of Plaintiff Hefke's most recent further

response to Interrogatory No. 4 should be removed because it does not identify with particularity

unwritten policies and procedures, but instead constitutes nonresponsive argument:

Plaintiffs' meal and rest break claim is based on what could be called a "control" or "on call" theory. Accordingly, Leprino effectively places its employees on call or under the employer's control during a meal or rest break because, for example, the employee must be available to respond to employer's requests during the break, then the provided break is not control-free.

Plaintiffs' theory for the meal and rest break claim is that although Leprino's written meal and rest break policies are facially compliant, and although Leprino schedules facially compliant meal and rest breaks for its employees, Leprino nonetheless "requires the production workers at the Lemoore West plant to remain on-call during their breaks." Plaintiff claims that the following facts collectively demonstrate that Leprino's employees are on call during their breaks: (1) Leprino's policies stress quality and quotas and pressure employees to avoid production delays, even if that means working during breaks, for example, on machinery; (2) Leprino's policies stress "over communication," as illustrated, in part, by the radios, intercoms, and work phones in breakrooms; (3) Leprino's written policies stress responsiveness and obedience to superiors' requests and

4

instructions, as illustrated in the employee handbook; (4) Leprino's unwritten policies and practices require and pressure employees to carry their radios at all times and respond at all times to calls made on the intercom, breakroom phone, and in person, even if those calls are made during breaks; and (5) Leprino does not tell its employees that they need not respond to work-related matters during breaks. Collectively, these facility-wide policies and practices, demonstrate that the employees are effectively on call at all times, even during their breaks — which in turn means Leprino fails to provide breaks.

Plaintiffs contend that this "on call" theory of liability naturally provides a common question that is central to the meal and rest break claim. Namely, in light of Leprino's foregoing facility-wide policies and practices, are the class members actually "on call" during breaks? Or, in other words, are the class members not truly freed from Leprino's control during their breaks?

For example, many putative class members stated that they and other employees were regularly contacted during their breaks about work-related matters, be it via radio, intercom, breakroom phone, or in person. And there is no dispute that the entire class was subjected to Leprino's official policies stressing quality, "over communication," and responsiveness and obedience to superiors' requests and instructions.

The radio policies and practices are but one alleged component of Plaintiffs' broader on-call theory. The radio policies and practices, even though not directly applicable to non-carrying employees, may be reasonably considered by the factfinder as reflective or symbiotic of a facility-wide policy that prioritizes work above breaks. This consideration would be especially warranted if most or all of the radio-carrying employees were of the understanding that they were required to keep their radios on at all times.

The radio policies and the regular practice of interruptions during breaks, such as via intercoms, breakroom phones, and in-person visits obviously relate to breaks. Moreover, as for the policies about quotas, avoiding production delays, and responsiveness to superiors' requests and instructions, these policies are relevant to breaks because they can naturally and foreseeably encroach into break policies and practices. This is illustrated by the fact that Leprino (prior to Plaintiffs filing this lawsuit) did not have an official written policy that clearly stated that employees need not respond to work-related matters during their breaks — but then Leprino added to its break-time policies in 2019 by implementing a new radio policy; namely, that radio calls need not be responded to during meal breaks. The point is that Plaintiffs' alleged policies and practices do and reasonably can relate to breaks.

(Doc. 210, Ex. B, p. 52:11-53:25.)

Defendants urge the Court to order Plaintiff Linda Hefke to amend her responses to: (1) remove the nonresponsive alleged unwritten policies and practices stated in response to Interrogatory No. 3; (2) remove the nonresponsive argument stated in response to Interrogatory No. 3; (3) remove the nonresponsive argument stated in response to Interrogatory No. 4; and (4) remove the prior objections and responses to these interrogatories. (Doc. 210 at 5-6.)

1        Plaintiff Hefke counters that the dispute at issue is one of semantics.  For instance,

2    Plaintiff Hefke contends that Interrogatory No. 3, which requests "written policies and

3    procedures," could be read broadly to include both written and unwritten procedures as it does not

4    ask for <u>only</u> written policies and written procedures.  (Doc. 211 at 2.)  As a result, Plaintiff Hefke

5    responded by identifying both written policies and Leprino's procedures.

6        With regard to Interrogatory No. 4, Plaintiff Hefke asserts that statements in the response

7    "are explanatory statements that put Plaintiff's contention into context and *why* she contends they

8    relate to meal and rest breaks."  (*Id.*)  Plaintiff Hefke further asserts that Defendants are not

9    prejudiced by inclusion of these statements.

10        **<u>Analysis</u>**

11        To the extent Defendants argue that Plaintiff Hefke should remove argument contained in

12   the further supplemental responses to Interrogatories Nos. 3 and 4, this objection is overruled.

13   Plaintiff's supplemental responses explain the theory of liability for meal and rest breaks.  If the

14   statements characterized as argument are removed, then the responses which--in Plaintiff's

15   view—state the relevant "policies and procedures" would be eliminated, and Plaintiff's resulting

16   limited answer could be used at trial to narrow Plaintiff's introduction of evidence.  This is

17   inconsistent with the facts as Plaintiff sees them.  The Court finds that the further supplemental

18   responses fairly inform Defendants of Plaintiff's basis of the polices, practices and procedures

19   which support her claims.

20        Defendants also argue that Plaintiff Hefke failed to distinguish between the "written"

21   policies as requested in Interrogatory No. 3 and the "unwritten" policies, practices and procedures

22   as requested in Interrogatory No. 4.  This objection is overruled.  Plaintiff represents that she read

23   each interrogatory broadly because Interrogatory No. 3 does not ask for <u>only</u> written policies and

24   <u>only</u> written procedures.  Plaintiff contends that "policies and practices" can be both written and

25   unwritten.  The Court finds that the further supplemental response to Interrogatory No. 3 is a full

26   answer consistent with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 33(b) ("Each

27   interrogatory must, to the extent it is not objected to, be answered separately and fully in writing

28   under oath.").

1        As to Defendants' objection that Plaintiff's most recent responses include her prior

2 objections and responses to each of the four interrogatories at issue, this objection is overruled.

3 (Doc. 201 at 2 n. 2 and 6).  The Court finds it unnecessary at this juncture for Plaintiff Hefke to

4 remove prior objections and responses to the interrogatories.

5 **CONCLUSION**

6        For the reasons stated, Defendants' objections to Plaintiff Hefke's most recent

7 supplemental responses to Interrogatories Nos. 3 and 4 are OVERRULED.  Defendants' informal

8 motion to compel Plaintiff Hefke to amend her most recent supplemental responses or otherwise

9 provide further supplemental responses to Interrogatories Nos. 3 and 4 is DENIED.

10

IT IS SO ORDERED.

11

12    Dated:   **April 2, 2021**            /s/ *Barbara A. McAuliffe*

13                                   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28