**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ISAIAS VASQUEZ and LINDA HEFKE,** on behalf of all other similarly situated individuals, <br><br> **Plaintiffs,** <br><br> v. <br><br> **LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1–50, inclusive,** <br><br> **Defendants.** | **CASE NO. 1:17-cv-00796-AWI-BAM** <br><br> **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> (Doc. No. 243) |

**<u>INTRODUCTION</u>**

This class action lawsuit, brought before the Court pursuant to 28 U.S.C. § 1332(d)(2), involves an employment dispute between Plaintiff class representatives Isaias Vasquez and Linda Hefke ("Plaintiffs") and Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively, "Leprino" or "Defendants"). On March 30, 2020, the Court certified Plaintiffs' claim that Defendants required their non-exempt workers to remain "on-call" during their meal and rest breaks in violation of California law.[1] Before the Court is Defendants' Motion for Summary Judgment and Motion for Decertification (Doc. No. 243) with respect to Plaintiffs' "on-call" break claim. For the reasons that follow, Defendants' motions will be denied and the Court will stay this case pending the decision of the California Supreme Court in <u>Naranjo v. Spectrum Security Services, Inc.</u>, Cal. S. Ct. Docket No. S258966.

---

[1] The class is defined as follows: "All non-exempt hourly workers who are currently employed, or formerly have been employed, as nonexempt hourly employees at Leprino's Lemoore West facilities in Lemoore, California, at any time within four years prior to the filing of the original complaint until March 31, 2020."

1

**SUMMRY JUDGMENT FRAMEWORK**

2    Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

3 appropriate when it is demonstrated that there exists no genuine issue as to any material fact and

4 that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see

5 Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079-80 (9th Cir. 2004). The moving party

6 bears the burden of establishing the absence of a genuine issue of material fact, generally by

7 "citing to particular parts of materials in the record" such as depositions, interrogatory answers,

8 declarations, and documents. Fed. R. Civ. P. 56(c); see also Cline v. Indus. Maint. Eng'g &

9 Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S.

10 317, 323-24 (1986)). A fact is "material" if it might affect the outcome of the suit under the

11 governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co.

12 v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is

13 "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a

14 verdict for the non-moving party. See Anderson, 477 U.S. at 248; Long v. County of Los Angeles,

15 442 F.3d 1178, 1185 (9th Cir. 2006). If the moving party does not meet this burden, "[s]ummary

16 judgment may be resisted and must be denied on no other grounds than that the movant has failed

17 to meet its burden of demonstrating the absence of triable issues." Henry v. Gill Indus., 983 F.2d

18 943, 950 (9th Cir. 1993).

19    If the moving party does meet this burden, the burden then shifts to the opposing party to

20 show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

21 U.S. 574, 586-87 (1986); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210 F.3d 1099,

22 1103 (9th Cir. 2000). "[A] party opposing a properly supported motion for summary judgment

23 may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific

24 facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248; Estate of Tucker

25 v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008). The evidence of the opposing party is

26 to be believed, and all reasonable inferences that may be drawn from the facts placed before the

27 court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Stegall v.

28 Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Summary judgment may not be granted

1   "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." <u>Fresno</u>

2   <u>Motors, LLC v. Mercedes Benz USA</u>, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015). Nevertheless,

3   inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

4   factual predicate from which the inference may be drawn. <u>See</u> <u>Juell v. Forest Pharms., Inc.</u>, 456 F.

5   Supp. 2d 1141, 1149 (E.D. Cal. 2006); <u>UMG Recordings, Inc. v. Sinnott</u>, 300 F. Supp. 2d 993,

6   997 (E.D. Cal. 2004). If the nonmoving party does not produce enough evidence to create a

7   genuine issue of material fact after the burden has shifted, the moving party is entitled to summary

8   judgment. Fed. R. Civ. P. 56(c); <u>Nissan Fire & Marine Ins. Co.</u>, 210 F.3d at 1103; <u>Celotex</u>, 477

9   U.S. at 322.

10

11                                   **BACKGROUND**[2]

12          Leprino manufactures and processes cheese and dairy ingredients at its Lemoore West

13   facility with a workforce of approximately 1,000 employees. PUMF's 14, 16. The facility operates

14   twenty-four hours a day, seven days a week. PUMF 15. Product "quality" is listed as one of

15   Leprino's core values, and Leprino reminds its employees of the importance of "quality" during

16   meetings and with visuals, including a painting of the word "quality" on the steps at the entrance

17   of the Lemoore West facility. PUMF's 17-20. On each workday a general practice of employees is

18   to follow a policy of "produc[ing] products against a schedule" for Leprino's customers. <u>See</u>

19   Tuttrup Depo. at 79:12–81:4. Leprino trains its employees to "over communicate" with each other

20   to prevent problems before they occur, Anderson Depo. at 129:10–130:5, <u>see</u> PUMF 33, carry out

21   "all written and/or verbal directions and instructions," PUMF 31, and avoid "[u]nnecessary delay

22   of production or operation of equipment," Doc. No. 246-1 at 822, ¶ 20. "Insubordination or refusal

23   to follow Supervisor's instructions" is "prohibited conduct" subject to the employee being

24   "warned, counseled, or disciplined, up to and including termination." PUMF 32.

25

26   [2] "DUMF" refers to Defendants' undisputed material fact. "PUMF" refers to Plaintiff's undisputed material facts. The
     parties make many objections to various pieces of evidence/proposed facts. To the extent that the Court utilizes such

27   evidence/proposed facts, any objections thereto are deemed overruled. The facts analyzed in this motion are based on
     the portions of the record identified by the parties in their briefs. <u>See</u> <u>Southern California Gas Co. v. City of Santa</u>

28   <u>Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003) ("A party opposing summary judgment must direct our attention to specific,
     triable facts.").

Leprino has a written "meal break" policy in its employee handbook which, from May 1, 2013 to October 16, 2017, stated in part "Employees are required to take a 30 minute unpaid duty-free meal break prior to the end of the 5th hour of work. . . . During a meal break, employees are relieved of all duties and are free to leave the facility." DUMF 1. As of October 16, 2017, Leprino's written meal break policy states in part "Employees who work more than five hours in a day are provided a 30 minute unpaid, uninterrupted, duty-free meal prior to the end of the 5th hour of work. … During a meal break, employees are relieved of all duties and are free to leave the facility." DUMF 2.

As for rest breaks, Leprino's employee handbook from May 1, 2013 to March 14, 2017 stated in part "Employees will be provided with one (1) 15-minute paid rest break when they work between 3 1/2 and 6 hours, and a second 15-minute paid rest break when they work between 6 and 10 hours, and a third 15 minute paid rest break when they work between 10 and 14 hours." Doc. No. 120-1 at 21. From March 14, 2017 to October 16, 2017, the employee handbook extended the length of rest breaks to twenty minutes. Id. at 27. As of October 16, 2017, Leprino's written rest break policy states in part "The Company authorizes and permits employees working at least 3 1/2 hours in a day to take a 20-minute, off-duty paid rest period for each four hours worked or major fraction thereof. Employees will be provided with one (1) 20-minute paid rest break when they work between 3 1/2 and 6 hours, and a second 20-minute paid rest break when they work between 6 and 10 hours, and a third 20-minute paid rest break when they work between 10 and 14 hours." Id. at 30.

Since at least 2013, Leprino posted a memorandum near its time clocks which stated in part "Employees are required to take a 30-minute unpaid duty-free meal break prior to the end of the 5th hour of work." DUMF 4. Leprino also posted a sign next to the time clocks that read: "EMPLOYEES ARE EXPECTED TO TAKE A 30 MINUTE LUNCH BREAK RELIEVED OF ALL DUTY." DUMF 5. In January 2019, Leprino added a sign next to the time clocks stating in part "Employees are expected to take a 30 minute lunch break relieved of all duty. Any employee unable to take a full 30 minute duty free meal break because they are required to come back to work early must notify their supervisor immediately. Employees are not required to have their 2-

4

1   way radio on during meal or rest breaks." DUMF 6.

2        Leprino does not expressly require all hourly employees to take their meal or rest breaks in

3   break rooms. DUMF 8. Some hourly employees have taken breaks outside on the patio, outside in

4   the smoking area, or in their cars in the parking lot. DUMF 9. Additionally, some employees have

5   taken their meal breaks away from the facility. DUMF 9. According to a survey by Plaintiffs'

6   expert Jeffrey S. Petersen, when class members were asked whether they leave the building for

7   their entire meal breaks, 16.3% answered "always" or "most of the time," 20.7% answered

8   "occasionally," and 63% answered "rarely" or "never." See Doc. No. 243-1 at 57, Ex. 2. When

9   asked whether they leave the building for their entire rest breaks, 9.8% answered "always" or

10  "most of the time," 6.9% answered "occasionally," and 82.5% answered "rarely" or "never." See

11  Id. For some positions during meal and rest breaks, Leprino provides "break relief," which is

12  designed to have other employees come in to take over the duties of those on break until they

13  return. DUMF 7; PUMF 72.

14        Many class members during their breaks received direct communications from supervisors,

15  group leaders, and those providing break relief. See PUMF's 51, 57, 60, 64, 84. According to

16  several class members, the communications included inquiries related to work or commands to

17  return to work to address urgent issues. See Benedict Depo. Vol. I at 31:2–19, 93:9– 94:12, 95:4–

18  18, 105:4–107:17; Olivarez Depo. at 37:16– 38:6, 47:14–48:13; Williams Depo. at 30:15–24;

19  Covert Depo. at 39:13–44:1, 83:6– 84:3; Colouro Depo. at 66:5– 67:10; Mata Depo. at 73:4–

20  74:19; Ramirez Depo. at 38:18–39:19; De La Torre Decl., ¶ 7; Perkins Decl. 7; Vasquez Decl., ¶

21  3; Woodward Decl., ¶ 7; see also PUMF's 51-52, 65, 77, 84-85, 88. For example, when a machine

22  malfunctioned and excess cheese built up on the production line, some class members on break

23  were called in to "bulk off" the cheese to prevent waste and spillage onto the floor. PUMF's 86,

24  88-89. Many of the communications made to employees on break were made through radio.

25  PUMF's 51-52. To those on break who did not carry radios, communications were made through

26  the facility's intercom system, breakroom phone, cell phones, and in person. PUMF's 57, 60, 63-

27  64. When employees on break received direct communications from a supervisor, many of them

28  immediately responded to the supervisor. PUMF's 58, 60, 80. According to several class

1  members, verbal warnings and threats of discipline were issued to employees who were

2  nonresponsive during breaks. PUMF's 78-79.

3        Plaintiffs' third amended complaint pleads eight causes of action against Leprino in a class

4  representative capacity. Doc. No. 61. On March 31, 2020, the Court certified Plaintiffs' "on-call"

5  break claim that Defendants required their non-exempt workers to remain "on-call" during meal

6  and rest breaks in violation of California law. Doc. No. 163 at 29. The Court further certified

7  Plaintiffs' claim for "off-the-clock" work and derivative claims because they are premised on

8  Plaintiffs' "on-call" break claim.[3] <u>Id.</u> at 29-30.

9

10  **I.**   **<u>SUMMARY JUDGMENT</u>**

11        *Defendants' Arguments*

12        Defendants argue that Plaintiffs' "on-call" break claim fails as a matter of law because all

13  class members were not on call during all of their breaks. According to Defendants, Leprino did

14  not have written or de facto policies and practices that required class members to be reachable and

15  "at the ready" to supervisors during meal and rest breaks. Additionally, Defendants argue that

16  even if all class members were deemed to be "on call" during their breaks, Plaintiffs' claim still

17  fails as a matter of law because they were not all sufficiently subject to Defendants' control during

18  their break times. Defendants contend that during meal and rest breaks, the class members were

19  free to engage in personal activities free of geographical restrictions and were rarely or never

20  contacted by supervisors about work.

21        *Plaintiffs' Arguments*

22        Plaintiffs contend that there are triable issues of material fact regarding Defendants'

23  policies and practices and how they relate to breaks. Specifically, Plaintiffs contend that

24  Defendants' non-stop operations, emphasis on quality, production goals, written requirements to

25  be responsive to supervisors at all times, and threats of discipline do and reasonably relate to

26  breaks. Plaintiffs also argue that Defendants failed to prove that class members were allowed to

27  _____

28  [3] The derivative claims include claims for overtime, minimum wage, failure to compensate for all hours worked, accurate itemized wage statements, failure to pay wages when due, and unfair competition. <u>See</u> Doc. No. 163 at 30:6-8.

1    use breaks for their own purposes because triable issues of material fact still exist as to whether

2    Defendants discouraged class members from leaving during breaks and whether Defendants

3    required them to be able to respond if they temporarily left the plant.

4          *Legal Standard*

5          Under California law, "[a]n employer shall not require an employee to work during a meal

6    or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation,

7    standard, or order of the Industrial Welfare Commission" ("IWC"). Cal. Lab. Code § 226.7(b). In

8    relevant part, IWC Wage Order 1, which governs meal and rest breaks for employees in the

9    manufacturing industry, provides that "[n]o employer shall employ any person for a work period

10   of more than five (5) hours without a meal period of not less than 30 minutes[.]" Cal. Code Regs.

11   tit. 8, § 11010(11)(A). IWC Wage Order 1 also states that employers "shall authorize and permit

12   all employees to take rest periods" and that the "authorized rest period time shall be based on the

13   total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major

14   fraction thereof." Cal. Code Regs., tit. 8, § 11010(12)(A). The California Supreme Court

15   interpreted "rest period" to "mean[] an interval of time free from labor, work, or any other

16   employment-related duties" and where employees are also "free[] from employer control over how

17   they spend their time." <u>Augustus v. ABM Sec. Servs., Inc.</u>, 2 Cal. 5th 257, 270 (2016).

18         State law prohibits rest periods during which employees remain "on-call." <u>Id.</u> at 260.

19   Being "on-call" is a status that "compels employees to remain at the ready and capable of being

20   summoned to action." <u>Id.</u> at 270 (citing <u>Mendiola v. CPS Sec. Sols., Inc.</u>, 60 Cal. 4th 833, 837

21   (2015)). On-call employees are forced to fulfill certain duties such as "carrying a device or

22   otherwise making arrangements so the employer can reach the employee during a break,

23   responding when the employer seeks contact with the employee, and performing other work if the

24   employer so requests." <u>Id.</u> These obligations are irreconcilable with employees' retention of

25   freedom to use rest periods for their own purposes. <u>Id.</u> Options available to employers who are

26   unable to relieve their employees of all duties during rest periods include (a) providing the

27   employees with another rest period to replace the one that was interrupted, or (b) pay the premium

28

1 | pay set forth in the relevant Wage Orders.[4] Id. at 272.

2       While employers are required to have formal policies compliant with California law, an

3 | employer may not undermine a formal policy of providing meal or rest breaks by pressuring

4 | employees to perform their duties in ways that omit breaks. Brinker Rest. Corp. v. Superior Court,

5 | 53 Cal. 4th 1004, 1040 (2012). "[E]ven if an employer has a formal policy that is compliant with

6 | California law, proof of an informal but common scheduling policy that makes taking breaks

7 | extremely difficult, or other informal means of exerting pressure to discourage taking meal and

8 | rest breaks, would be sufficient to establish liability to a class." Brewer v. Gen. Nutrition Corp.,

9 | 2014 U.S. Dist. LEXIS 159380, at *24 (N.D. Cal. Nov. 12, 2014) (citing Brinker Rest. Corp., 53

10 | Cal. 4th at 1040); see also Hoffman v. Blattner Energy, Inc., 315 F.R.D. 324, 341 (C.D. Cal.

11 | 2016); Alberts v. Aurora Behavioral Health Care, 241 Cal. App. 4th 388, 406 (2015) ("[T]he mere

12 | existence of a lawful break policy will not defeat class certification in the face of actual

13 | contravening policies and practices that, as a practical matter, undermine the written policy and do

14 | not permit breaks."). However, the employer is not obligated to police breaks and ensure no work

15 | thereafter is performed. Brinker Rest. Corp., 53 Cal. 4th at 1040.  Bona fide relief from duty and

16 | the relinquishing of control satisfies the employer's obligations, and work by a relieved employee

17 | during a meal break does not thereby place the employer in violation of its obligations and create

18 | liability for premium pay. Id. at 1040-41.

19       When the relevant facts are not in dispute, what qualifies as hours worked is a question of

20 | law that courts can decide at summary judgment. See Wilson v. Skywest Airlines, Inc., 2021 U.S.

21 | Dist. LEXIS 129507, *11 (N.D. Cal. July 12, 2021); Mendiola v. CPS Sec. Sols., Inc., 60 Cal. 4th

22 | 833, 840 (2015). However, "summary judgment is inappropriate where the factors point in

23 | different directions and a reasonable fact finder could find for either party." Wilson, 2021 U.S.

24 | Dist. LEXIS 129507, at *11 (citing Lawson v. Grubhub, Inc., 2017 U.S. Dist. LEXIS 106291,

25 | 2017 WL 2951608, at *7-8 (N.D. Cal. July 10, 2017)). Indeed, "the act of weighing and applying

26 | numerous intertwined factors, based on particular facts, is itself generally the job of the jury." Id.

---

27
28 | [4] IWC Wage Order 1 provides that an employee is entitled to one (1) hour of pay at the employee's regular rate of
compensation for each workday that the meal or rest period is not provided. See Cal. Code Regs. tit. 8, §§
11010(11)(D), (12)(B).

1    (citing <u>Cotter v. Lyft, Inc.</u>, 60 F. Supp. 3d 1067, 1077 (N.D. Cal. 2015)).

2         *Discussion*

3         After drawing all inferences in the light most favorable to Plaintiffs, the Court holds that

4    there are genuine issues of material fact with respect to Plaintiffs' on-call break claim. <u>Cline</u>, 200

5    F.3d at 1229. While there is no dispute over Defendants' written meal and rest break policies,

6    genuine issues of material fact exist as to whether class members were nevertheless required to

7    remain "on-call" during their breaks.

8         In light of the California Supreme Court's decision in *Augustus*, the evidence in this case

9    indicates that a reasonable jury could conclude that Leprino required its employees to "remain

10   vigilant and responsive to calls when needs arose" during their breaks. <u>Augustus</u>, 2 Cal. 5th 257,

11   260. As in *Augustus*, the evidence indicates that a significant number of class members were

12   required to carry and respond to radio communications or make arrangements to otherwise receive

13   and respond to communications (e.g. via intercom, breakroom phone, cell phone, or in person)

14   regarding work during their breaks. <u>See</u> PUMF's 51-52, 57-58, 60, 63-64, 80. According to

15   Plaintiffs' expert survey, more respondents agreed (47.6%) than disagreed (33.3%) with the

16   proposition that "Hourly employees at the Lemoore West facility had to be responsive to work-

17   related requests and instructions from managers and/or supervisors that were made during meal

18   and rest breaks." Doc. No. 243-1 at 58. Additionally, more respondents agreed (64.7%) than

19   disagreed (20.3%) with the proposition that "During meal and rest breaks at the Lemoore West

20   facility, you often heard work-related requests and instructions from managers and/or supervisors

21   that were communicated by radios that hourly employees carry or the intercom and phone in the

22   break room." <u>Id.</u>; <u>see also</u> <u>Medlock v. Taco Bell Corp.</u>, 2015 U.S. Dist. LEXIS 167164, *15-16

23   (E.D. Cal. Dec. 11, 2015) (denying motion for summary judgment because expert survey indicated

24   that more respondents agreed with the non-moving party's position on meal and rest break policies

25   (33.4%) than with the moving party's position (24.5%)). While it is unclear whether Defendants

26   ever disciplined a class member in writing for failing to respond to work-related communications

27   during their breaks, the evidence before the Court indicates that verbal warnings and threats of

28   discipline were issued. PUMF's 39, 78-79.  For example, one supervisor contacted a class member

on his personal cell phone during a break, asking "why are you not doing this, and why are you not doing this thing." Doc. No. 246-1 at 591. The supervisor then "started cussing" on the phone. Id. After the class member told his supervisor "[t]hey don't pay me for this" and hung up, the supervisor radioed the class member into the office the next day and threatened "[n]ext time you hang the phone up from me . . . I will fire you." Id. at 591-92.

Furthermore, the evidence before the Court indicates that there is a genuine issue of material fact as to whether Defendants' policies and practices on quality, production goals, communication, and compliance with directions/orders collectively amounted to a facility-wide policy that placed class members on call during their breaks. According to Plaintiffs' expert survey, 39.0% of respondents agreed and 47.1% disagreed with the proposition that "Leprino Foods managers and/or supervisors stress quality and production goals/quotas to avoid production delays, even if that means working during meal and rest breaks." Doc. No. 243-1 at 58. Additionally, 40.6% of respondents agreed and 47.2% disagreed with the proposition that "Leprino Foods managers and/or supervisors require or expect the hourly employees to be available to do work if or when needed, including during their meal and rest breaks." Id. Although the percentages in the agreement column are not in the majority, when these two survey results are considered alongside the two prior survey results described above and the body of evidence in the record, it is clear that the factors in this case "point in different directions." Wilson, 2021 U.S. Dist. LEXIS 129507, at *11 (N.D. Cal. July 12, 2021); see also Medlock, 2015 U.S. Dist. LEXIS 167164, at *16-17 (finding genuine issue of material fact because "the total record includes compelling evidence" in support of the moving party, "but substantial contrary evidence exists" in support of the non-moving party).

Additional facts that "point in different directions" include whether class members were ultimately held responsible for the cheese's quality even when quality issues arose during their breaks; whether Leprino trained its Class Members to "over communicate" with each other even during their breaks; whether class members were required to partake in the "bulking-off" process during their breaks; whether Leprino ever issued discipline to a class member for not meeting production goals on a shift; whether the class members who received "break relief" were fully

relieved by the break relief of all work responsibilities during their breaks; whether Leprino has any record of discipline issued to a class member for not responding to a supervisor about a work-related matter during a break; and whether class members who were called back to work early from their breaks received premium pay or another break. Wilson, 2021 U.S. Dist. LEXIS 129507, *11 (N.D. Cal. July 12, 2021).

Despite the California Supreme Court's holding in *Augustus*, Defendants contend that the Court must apply the control tests articulated in *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal.4th 833 (2015) and *Madera Police Officers Ass'n v. City of Madera*, 36 Cal. 3d 403 (1984) to determine whether Leprino's control over the class members was sufficiently broad and intrusive to deem "on-call" time as compensable work time. However, the Court in *Augustus* distinguished both *Mendiola* and *Madera* because they concerned on-call eight-hour shifts or longer while *Augustus* concerned much shorter on-call meal and rest periods. Augustus, 2 Cal. 5th at 271 n.13 (2016) ("*Mendiola* is distinguishable [because] . . . shifts lasting eight hours or longer are significantly different from breaks, which are short in duration, break up work periods, and thereby protect employees' health and safety. . . . [F]actors relevant to the extent of employer control during an on-call shift of eight hours or more are inapposite in the context of a rest or meal period." (internal citations omitted)). Here, as in *Augustus*, the on-call periods in question relate to rest and meal periods, not eight-hour or longer on-call shifts. Thus, *Mendiola* and *Madera* are distinguishable, and their control tests do not apply.

In conclusion, based on the evidence submitted by the parties, "a reasonable fact finder could find for either party" with respect to numerous factual disputes, thereby making it inappropriate for the Court to enter judgment as a matter of law on summary judgment. Wilson, 2021 U.S. Dist. LEXIS 129507, at *11; Mendiola, 60 Cal. 4th at 840. Thus, Defendants' motion for summary judgment will be denied.

## II.   **DECERTIFICATION**

### *Defendants' Arguments*

Defendants argue that decertification is necessary because determining whether all class

1    members' breaks were compensable work time will require the fact-finder to delve into

2    individualized issues that predominate over common questions for Plaintiffs' on-call break claim.

3    Doc. No. 243 at 38-39. Specifically, Defendants assert that to determine liability, the fact finder

4    would need to conduct "individual mini-trials" to determine each class member's individualized

5    interpretation of Defendants' general policies and practices and whether each class member

6    actually experienced meal and rest break violations. Id. at 40:11-15.  Defendants also argue that

7    Plaintiffs failed to provide common proof that Defendants, via the common policies and practices

8    alleged, compelled all class members to remain at the ready and capable of being summoned to

9    action during their breaks. Doc. No. 248 at 41.

10            *Plaintiffs' Arguments*

11            Plaintiffs contend that the class should not be decertified because the elements of Rule 23

12    are still satisfied. Doc. No. 246 at 42. According to Plaintiffs, Defendants' contention regarding

13    the predominance of individualized issues is erroneous because the fact finder need not determine

14    how each class member "personally felt about Leprino's uniform policies." Id. at 43-44. Instead,

15    the ultimate question for purposes liability is whether Defendants had an "unofficial policy of not

16    providing breaks or created an atmosphere of discouraging [class members] from taking breaks."

17    Id. at 44. Plaintiffs argue that Defendants had such an unofficial policy and atmosphere and,

18    therefore, the remaining question is simply one of damages, which alone does not warrant

19    decertification. Id.

20            *Legal Standard*

21            1.   Decertification

22            "District court[s] retain[] the flexibility to address problems with a certified class as they

23    arise, including the ability to decertify." United Steel Workers v. ConocoPhillips Co., 593 F.3d

24    802 (9th Cir. 2010). "Even after a certification order is entered, the judge remains free to modify it

25    in the light of subsequent developments in the litigation." General Tel. Co. of the Sw. v. Falcon,

26    457 U.S. 147, 160 (1982). Under Federal Rule of Civil Procedure 23(c)(1)(C), a "[a] district court

27    may decertify a class at any time." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir.

28    2009). In resolving a motion for class decertification, the court may rely on "previous substantive

1  rulings in the context of the history of the case," "subsequent developments in the litigation," and

2  "the nature and range of proof necessary to establish the class-wide allegations." Munoz v. Phh

3  Mortg. Corp., 478 F. Supp. 3d 945, 985 (E.D. Cal. 2020) (citing Arredondo v. Delano Farms Co.,

4  301 F.R.D. 493, 502 (E.D. Cal. 2014)). The standard is the same for class decertification as it is

5  with class certification: a district court must be satisfied that the requirements of Rules 23(a) and

6  (b) are met to allow plaintiffs to maintain the action on a representative basis. Marlo v. United

7  Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011).

8      2.  Rule 23[5]

9      Rule 23(b)(3)'s commonality and predominance requirement inquires into whether the

10  class members' interests are "sufficiently cohesive to warrant adjudication by representation." [6]

11  Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997). The inquiry "logically entails two steps":

12  first, whether the issues in the case are individual or common; and, second, whether the common

13  issues predominate over the individual issues. Gomez v. J. Jacobo Farm Labor Contractor, Inc.,

14  334 F.R.D. 234, 256 (E.D. Cal. 2019) (citing 1 William Rubenstein, Newberg on Class Actions

15  § 4:50 (5th ed. 2012) [hereinafter, "Newberg on Class Actions"]).

16      As for the first step, an individual issue is one where "the members of a proposed class will

17  need to present evidence that varies from member to member." Tyson Foods, Inc. v. Bouaphakeo,

18  577 U.S. 442, 453 (2016) (citing Newberg on Class Actions § 4:50). By contrast, a common issue

19  is one either where "the same evidence will suffice for each member to make a prima facie

20  showing," id., or, similarly, where the issue is "susceptible to generalized, class-wide proof."

21  _____

22  [5] In their motion for decertification, Defendants challenge only the commonality and predominance requirement of
Rule 23(b)(3).

23  [6] "The Ninth Circuit has not affirmatively articulated the burden of proof for decertification." Novoa v. Geo Grp.,
2021 U.S. Dist. LEXIS 207789, *7 (C.D. Cal. Sep. 30, 2021); see True Health Chiropractic Inc. v. McKesson Corp.,
2021 U.S. Dist. LEXIS 199266, *4 n.3 (N.D. Cal. Oct. 15, 2021).  Some district courts have held that the burden stays

24  with the plaintiff to show that certification remains appropriate. E.g. Negrete v. Allianz Life Ins. Co. of N. Am., 287
F.R.D. 590, 598 n.1 (C.D. Cal. 2012).  Other district courts find that the moving party bears the burden of showing

25  that decertification is appropriate.  E.g. Cole v. CRST, Inc., 317 F.R.D. 141, 144 (C.D. Cal. 2016); Munoz v.
Giumarra Vineyards Corp., 2016 U.S. Dist. LEXIS 136262, *9 (E.D. Cal. Sep. 30, 2016). Some courts apply a burden

26  shifting framework in which the moving party first bears the burden to prove "some showing of changed circumstance
or law" to revisit certification, and once this burden is met the plaintiff then assumes the burden to prove that class

27  certification should be maintained. E.g. Novoa, 2021 U.S. Dist. LEXIS 207789 at *7-*8. This Court has previously
held that the moving party bears the burden of showing that decertification is appropriate. Munoz, 2016 U.S. Dist.

28  LEXIS 136262, at *9.  Because the Court's conclusion will not change irrespective of which of the above three
approaches is utilized, it is unnecessary for the Court to reassess its conclusion in Munoz.

1   _Gomez_, 334 F.R.D. at 256 (citing _In re Nassau County Strip Search Cases_, 461 F.3d 219, 227 (2d

2   Cir. 2006)).

3        As for the second step, common issues likely will not predominate if "a great deal of

4   individualized proof" would need to be introduced to address most or all of the elements of a

5   claim, or "a number of individualized legal points" would need to be established after common

6   questions were resolved, or "the resolution of . . . [an] overarching common issue breaks down

7   into an unmanageable variety of individual legal and factual issues." _Id._ (quoting _Cooper v._

8   _Southern Co._, 390 F.3d 695, 722 (11th Cir. 2004) and _Klay v. Humana, Inc._, 382 F.3d 1241, 1255

9   (11th Cir. 2004)). By contrast, common questions likely will predominate if "individual factual

10  determinations can be accomplished using computer records, clerical assistance, and objective

11  criteria — thus rendering unnecessary an evidentiary hearing on each claim," or "when adding

12  more plaintiffs to the class would minimally or not at all affect the amount of evidence to be

13  introduced." _Id._ (citing _Smilow v. Southwestern Bell Mobile Systems, Inc._, 323 F.3d 32, 40 (1st

14  Cir. 2003) and Newberg on Class Actions § 4:50). A finding of predominance will generally not

15  be defeated merely because there is a need to make individualized damage determinations. _See_

16  _Just Film, Inc. v. Buono_, 847 F.3d 1108, 1121 (9th Cir. 2017); _Leyva v. Medline Indus. Inc._, 716

17  F.3d 510, 514 (9th Cir. 2013).

18        _Discussion_

19        The Court holds that the commonality and predominance requirement of Rule 23(b)(3) is

20  satisfied because common issues still predominate over individualized issues. The additional

21  evidence submitted to the Court after the original class certification date include Plaintiffs' expert

22  survey and a declaration from Steve Schmidt, Leprino's Senior Director of Production Human

23  Resources & Safety. Doc. No. 243-2. With respect to Plaintiffs' expert survey, the Court finds that

24  its results, as discussed above, are consistent with Plaintiffs' previously submitted declarations and

25  deposition documents indicating that class members were "regularly contacted during their breaks

26  about work-related matters, be it via radio, intercom, breakroom phone, or in person." Doc. No.

27  163 at 25:17-20. The survey results do not establish that the class should be decertified because

28  the question of whether Leprino's policies and practices put the class members on call during their

1  breaks is still capable of class-wide resolution. The "determination of [the question's] truth or

2  falsity will resolve an issue that is central to the validity of each" member's meal and rest break

3  claim "in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011).

4       With respect to the declaration of Steve Schmidt, the Court finds that it does not

5  demonstrate that certification is inappropriate. The declaration states that class members did not

6  have "production goals or any certain amount of product to produce per shift" and that from May

7  8, 2013 to March 31, 2020, Leprino has "no record of documented discipline issued to any hourly

8  employee at LEW for not responding to a supervisor or any other employee about a work-related

9  matter while the hourly employee was on a meal or rest break . . . or for failing to return to work

10 when requested to do so by a supervisor or any other employee while the hourly employee was on

11 a meal or rest break." Doc. No. 243-2 at 3-4, ¶¶ 7-8. However, evidence in the record contradicts

12 these statements. Regarding Schmidt's statement on production goals, several class members and

13 Defendants' own Human Resources Manager and 30(b)(6) witness testified to the contrary. <u>See</u>

14 Romero Depo. at 49:9–50:10; Ramirez Depo. at 184:18–185:5; Covert Depo. at 44:9–15; Benedict

15 Depo. at 89:13–90:10; Tuttrup Depo. at 79:12–81:4; Anderson Decl. at ¶ 6. For example, Robert

16 Tuttrup testified that "on an individual day" the practice was to follow a general policy of

17 producing products against a schedule. <u>See</u> Tuttrup Depo. at 79:12–81:4. Additionally, when

18 asked about production goals during a shift, Gilbert Romero testified that class members had

19 "target vats" they tried to make each shift and that during pre-shift meetings class members would

20 "discuss how many vats we can make that day." <u>See</u> Romero Depo. at 49:9–50:10. Tom Benedict

21 also testified that class workers had a "daily target" that sometimes caused him to miss rest breaks.

22 <u>See</u> Benedict Depo. at 89:13–90:10.

23       With respect to Schmidt's declaration regarding records of documented discipline, the

24 Court finds that this statement does not affirmatively demonstrate that Defendants lacked a

25 common policy requiring class members to respond to work-related matters during their breaks.

26 While lack of enforcement of a policy may be an indicator that said policy does not exist, the

27 evidence before the Court shows that verbal warnings and threats of discipline were used when

28 class members failed to respond to work-related matters during their breaks. <u>See</u> PUMF's 78-79

(citing Ramirez Depo. at 130:16–131:3; Benedict Depo. at 23:2–25:7, 28:14–29:22; Williams Depo. at 160:4–163:14; Loza Decl., ¶ 15). For example, supervisor Josh Ramirez testified that he would give a "verbal warning" to class members for being nonresponsive even during their meal and rest breaks. See Ramirez Depo. at 130:16–131:3. Fredrick Williams also testified that class members were "disciplined" and threatened to get "written up" when they did not answer their radios during their breaks. See Williams Depo. at 160:4–163:14. Thus, the absence of written records of discipline does not mean that Defendants did not enforce an informal policy or practice that required class members to respond to work-related matters during their breaks. The common question remains "in light of Leprino's foregoing facility-wide policies and practices, are the class members actually 'on call' during breaks? Or, in other words, are the class members not truly freed from Leprino's control during their breaks?" Doc. No. 163 at 25.

Furthermore, the evidence before the Court demonstrates that this common question still predominates over individualized inquiries. Plaintiffs' expert survey and the Schmidt Declaration do not indicate that the fact-finder will be required to conduct individual mini-trials to determine whether Leprino is liable for the alleged meal and rest break violations. The Schmidt Declaration is inapposite because, as discussed above, its statements contradict the testimonies of many class members and Defendants' own witnesses. Additionally, Plaintiffs' expert survey will not require the fact-finder to inquire into each class member's individualized interpretation of Leprino's policies and practices and whether they actually experienced meal and rest break violations. The survey itself provides common proof that the fact-finder can use to evaluate whether class members interpreted Leprino's policies and practices as requiring them to respond to work-related matters during their breaks. Additionally, for purposes of liability, the question is not how many class members actually experienced meal and rest break violations but instead whether Defendants had an unofficial policy of not providing breaks in violation of the law. See Ruiz v. XPO Last Mile, Inc., 2016 U.S. Dist. LEXIS 152095, *30-31 (S.D. Cal. Feb. 1, 2016); see also Williams v. Superior Court, 221 Cal. App. 4th 1353, 1370 (2013) ("[C]lass treatment does not require that all class members have been equally affected by the challenged practices—it suffices that the issue of whether the practice itself was unlawful is common to all."). The mere fact that some class

1  members may have or may have not taken code-compliant breaks "does not show that individual

2  issues will predominate in the litigation." <u>Benton v. Telecom Network Specialists, Inc.</u>, 220 Cal.

3  App. 4th 701, 730 (2013); <u>Alberts v. Aurora Behavioral Health Care</u>, 241 Cal. App. 4th 388, 409

4  (2015); <u>see also</u> <u>Alfred v. Pepperidge Farm, Inc.</u>, 322 F.R.D. 519, 548 (C.D. Cal. 2017) (citing

5  <u>Bradley v. Networkers Internat., LLC</u>, 211 Cal. App. 4th 1129, 1151 (2012)). Whether a class

6  member actually experienced a meal or rest break violation is an issue that goes to damages,

7  which is not a sufficient basis for denying class certification. <u>Just Film</u>, 847 F.3d at 1121; <u>Leyva</u>,

8  716 F.3d at 514; <u>Benton</u>, 220 Cal. App. 4th at 726; <u>Alberts</u>, 241 Cal. App. 4th at 408; <u>Bradley</u>, 211

9  Cal. App. 4th at 1143.

10       In sum, the Court concludes that the commonality and predominance requirements of Rule

11  23(b)(3) are satisfied.[7] Accordingly, Defendants' motion for decertification will be denied.

12

13  **III.   STAY**

14       The Court will exercise its discretion and *sua sponte* stay the case pending the decision of

15  the California Supreme Court in <u>Naranjo v. Spectrum Security Services, Inc.</u>, Cal. S. Ct. Docket

16  No. S258966.

17       A district court has the "power to stay proceedings" as part of its inherent power "to

18  control the disposition of the causes on its docket with economy of time and effort for itself, for

19  counsel, and for litigants." <u>I.K. v. Sylvan Union Sch. Dist.</u>, 681 F. Supp. 2d 1179, 1190-91 (E.D.

20  Cal. 2010). The court may "find it is efficient for its own docket and the fairest course for the

21  parties to enter a stay of an action before it, pending resolution of independent proceedings which

22  bear upon the case." <u>Hoeun Yong v. INS</u>, 208 F.3d 1116, 1119-20 (9th Cir. 2000) (quoting <u>Leyva</u>

23  <u>v. Certified Grocers of California Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1979)). This rule applies

24  whether the separate proceedings are judicial, administrative, or arbitral in character, and does not

25

26  _____

[7] Although Defendants only reference Rule 23(b)(3) in their motion for decertification, the Court recognizes that the predominance requirement of Rule 23(b)(3) relates in part on the commonality requirement of Rule 23(a). See

27  Newberg on Class Actions § 3:27 (explaining that Rule 23(b)(3)'s commonality-predominance requirement "obviously builds on" Rule 23(a)(2)'s commonality requirement). To the extent the Court holds that the predominance

28  requirement of Rule 23(b)(3) is satisfied, the Court also holds that the commonality requirement of Rule 23(a) is satisfied.

require that the issues in such proceedings are necessarily controlling of the action before the court. Id. The related proceeding typically serves to narrow the factual or legal issues for the federal court and is generally of limited duration. Travelers Indem. Co. v. Newlin, 2022 U.S. Dist. LEXIS 52172, *9 (S.D. Cal. Mar. 22, 2022) (citing Landis v. N. Am. Co., 299 U.S. 248, 256 (1936)).

In *Naranjo*, the California Supreme Court granted review of two issues that bear upon this case. Naranjo v. Spectrum Sec. Servs., Inc., 257 Cal. Rptr. 3d 188 (2020). The causes of the parties were argued and submitted to the California Supreme Court on March 1, 2022. The first issue is whether a violation of Labor Code section 226.7, which requires payment of premium wages for meal and rest period violations, gives rise to claims under Labor Code sections 203 and 226 when the employer does not include the premium wages in the employee's wage statements but does include the wages earned for meal breaks. This issue bears upon Plaintiffs' "on-call" break claim and derivative claims because, like the plaintiff in *Naranjo*, Plaintiffs allege that Leprino is liable for penalty pay under Labor Code section 203 for failing to pay class members all the wages due to them upon the end of their employment. See Doc. No. 61 at 16-19. The second issue in *Naranjo* examines the applicable prejudgment interest rate for unpaid premium wages owed under Labor Code section 226.7. This issue bears upon Plaintiffs' case against Leprino because Plaintiffs also seek interest for unpaid premium wages owed under Labor Code § 226.7.

Here, given that the California Supreme Court's decision on the merits is forthcoming, the Court will exercise its discretion and stay this case pending the California Supreme Court's decision. Hoeun Yong, 208 F.3d at 1119-20; I.K., 681 F. Supp. 2d at 1190-91.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment and decertification (Doc. No. 243) is DENIED;

2. The case is STAYED pending the California Supreme Court's decision in *Naranjo v. Spectrum Security Services, Inc.*, Cal. S. Ct. Docket No. S258966;

3. All currently set dates and deadlines, including the June 7, 2022 trial date, are VACATED;

1

2

    4.  The parties are DIRECTED to file a joint status report within twenty-one (21) days of

        resolution of *Naranjo* by the California Supreme Court.

3

4

IT IS SO ORDERED.

5

Dated:   April 29, 2022

                                            _____
                                                SENIOR  DISTRICT  JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28