# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAS VASQUEZ and LINDA HEFKE, on behalf of all other similarly situated individuals , | CASE NO. 1:17-cv-00796-AWI-BAM |
| **Plaintiffs,** | **ORDER ON DEFENDANTS' RENEWED MOTION FOR CLASS DECERTIFICATION, WITNESS LIST, MOTION IN LIMINE NO. 1, AND MOTION IN LIMINE NO. 8** |
| v. | |
| LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1–50, inclusive, | (Doc. Nos. 269, 271, 272, 279) |
| **Defendants.** | |

This class action lawsuit involves an employment dispute between Plaintiff class representatives Isaias Vasquez and Linda Hefke ("Plaintiffs") and Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively, "Leprino" or "Defendants").[1]  On March 30, 2020, the Court certified Plaintiffs' claim that Defendants required their non-exempt workers to remain "on-call" during their meal and rest breaks in violation of California law.[2]  Doc. No. 163.  Defendants thereafter filed a motion for reconsideration, Doc. No. 166, which the Court denied on August 11, 2020.  Doc. No. 177.  On January 14, 2022, Defendants filed a motion for summary judgment or, in the alternative, decertification.  Doc. No. 243.  On April 29, 2022, the Court denied Defendants' motion on the ground that genuine issues

---

[1] The parties are familiar with the facts of this case. A thorough recitation of the underlying facts can be found in the Court's order on Defendant's motion for summary judgment.  Doc. No. 258.

[2] The class is defined as follows: "All non-exempt hourly workers who are currently employed, or formerly have been employed, as nonexempt hourly employees at Leprino's Lemoore West facilities in Lemoore, California, at any time within four years prior to the filing of the original complaint until March 31, 2020."

of material fact exist with respect to numerous factual disputes and that the certification requirements under Rule 23, particularly the commonality and predominance requirements, were still satisfied.  Doc. No. 258.

On November 7, 2022, the parties filed a Joint Pretrial Statement, which included each party's list of prospective witnesses to be called at trial.  Doc. No. 264 at 15-16.  Plaintiffs' prospective witness list named 49 prospective witnesses, Doc. No. 264-1 at 1-3, and Defendants' list named 1,608 prospective witnesses.  Doc. No. 264-2 at 1-52.  Plaintiffs objected to Defendants calling all 1,608 individuals to testify at trial, and Defendants responded that if liability is to be established on a class-wide basis, Defendants must be allowed to present all their witness testimony to challenge Plaintiffs' showing.  Doc. No. 264 at 15-18.  Defendants further argued that they would file a renewed motion to decertify the class because Plaintiffs cannot prove class-wide liability through the individualized testimony of their 49 witnesses.  Id. at 18.

To assist with the determination of an appropriate number of class-member witnesses to be called at trial, the Court ordered the parties to submit memoranda listing their prospective class-member witnesses with a brief summary of each witness's expected testimony at trial.  Doc. No. 267 at 14-15.  The Court also gave Defendants until January 10, 2023 to file a renewed motion to decertify the class.  Id. at 15.  On December 14, 2022, Plaintiffs submitted a list of 13 prospective class witnesses with proffers of their expected testimony.  Doc. No. 268.  On December 28, 2022, Defendants submitted a list of 1,389 prospective class witnesses with proffers of their expected testimony. Doc. No. 269.  On January 4, 2023, Plaintiffs submitted a list of 7 prospective rebuttal class member witnesses with proffers of their expected testimony at trial.  Doc. No. 270.  On January 10, 2023, Defendants filed their renewed motion to decertify the class.  Doc. No. 271.

**LEGAL STANDARD**

### 1. Decertification

District courts retain the "flexibility to address problems with a certified class as they arise, including the ability to decertify."  United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co., 593 F.3d 802, 809 (9th Cir. 2010).  "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the

litigation." Id. (citing General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982)); see also Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time.").  In resolving a motion for class decertification, the court may rely on "previous substantive rulings in the context of the history of the case," "subsequent developments in the litigation," and "the nature and range of proof necessary to establish the class-wide allegations." Munoz v. Phh Mortg. Corp., 478 F. Supp. 3d 945, 985 (E.D. Cal. 2020) (citing Arredondo v. Delano Farms Co., 301 F.R.D. 493, 502 (E.D. Cal. 2014)).  The standard is the same for class decertification as it is with class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis.[3]  Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011).

## 2. Rule 23[4]

Under Rule 23(b)(3), a plaintiff must demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that maintaining a class action is "superior" to other available methods for the fair and efficient adjudication of the controversy. Castillo v. Bank of Am., NA, 980 F.3d 723, 730 (9th Cir. 2020) (citing Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 596 (9th Cir. 2012)).  Rule 23(b)(3)'s "predominance" requirement inquires into whether the class members' interests are "sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997).  The inquiry "logically entails two steps": first, whether the issues in the

---

[3] "The Ninth Circuit has not affirmatively articulated the burden of proof for decertification." Brewster v. City of L.A., 2022 U.S. Dist. LEXIS 213156, *11 (C.D. Cal. July 27, 2022); Novoa v. Geo Grp., 2021 U.S. Dist. LEXIS 207789, *7 (C.D. Cal. Sep. 30, 2021); see also True Health Chiropractic Inc. v. McKesson Corp., 2021 U.S. Dist. LEXIS 199266, *4 n.3 (N.D. Cal. Oct. 15, 2021).  Some district courts have held that the burden stays with the plaintiff to show that certification remains appropriate. E.g. Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590, 598 n.1 (C.D. Cal. 2012).  Other district courts find that the moving party bears the burden of showing that decertification is appropriate. E.g. Cole v. CRST, Inc., 317 F.R.D. 141, 144 (C.D. Cal. 2016); Munoz v. Giumarra Vineyards Corp., 2016 U.S. Dist. LEXIS 136262, *9 (E.D. Cal. Sep. 30, 2016).  Some courts apply a burden shifting framework in which the moving party first bears the burden to prove "some showing of changed circumstance or law" to revisit certification, and once this burden is met the plaintiff then assumes the burden to prove that class certification should be maintained. E.g. Novoa, 2021 U.S. Dist. LEXIS 207789 at *7-*8.  This Court has previously held that the moving party bears the burden of showing that decertification is appropriate. Munoz, 2016 U.S. Dist. LEXIS 136262, at *9.  Because the Court's conclusion will not change irrespective of which of the above three approaches is utilized, it is unnecessary for the Court to reassess its conclusion in Munoz.

[4] In their renewed motion for class decertification, Defendants challenge only the predominance and superiority requirements of Rule 23(b)(3).  Therefore, the Court will limit its review of Defendants' renewed motion to these two components of Rule 23.

case are individual or common; and, second, whether the common issues predominate over the individual issues.  Gomez v. J. Jacobo Farm Labor Contractor, Inc., 334 F.R.D. 234, 256 (E.D. Cal. 2019) (citing 1 William Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) [hereinafter, "Newberg on Class Actions"]).  As for the first step, an individual issue is one where "the members of a proposed class will need to present evidence that varies from member to member." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citing Newberg on Class Actions § 4:50).  By contrast, a common issue is one either where "the same evidence will suffice for each member to make a prima facie showing," id., or, similarly, where the issue is "susceptible to generalized, class-wide proof."  Gomez, 334 F.R.D. at 256 (citing In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006)).  As for the second step, common issues likely will not predominate if "a great deal of individualized proof" would need to be introduced to address most or all of the elements of a claim, or "a number of individualized legal points" would need to be established after common questions were resolved, or "the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004) and Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)).  By contrast, common questions likely will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim," or "when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced." Id. (citing Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 40 (1st Cir. 2003) and Newberg on Class Actions § 4:50).  A finding of predominance will generally not be defeated merely because there is a need to make individualized damage determinations.  See Just Film, Inc. v. Buono, 847 F.3d 1108, 1121 (9th Cir. 2017); Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir. 2013).

    With respect to "superiority," certification under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  To evaluate superiority, the court shall consider four "pertinent" factors: (1) the class members' interests in individually controlling the prosecution or

1    defense of separate actions; (2) the extent and nature of any litigation concerning the controversy

2    already begun by or against class members; (3) the desirability or undesirability of concentrating

3    the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a

4    class action.  Fed. R. Civ. P. 23(b)(3)(A)−(D).  "A consideration of these factors requires the court

5    to focus on the efficiency and economy elements of the class action so that cases allowed under

6    subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."

7    Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted).  "A

8    class action is the superior method for managing litigation if no realistic alternative exists."

9    Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  By contrast, "[i]f each

10   class member has to litigate numerous and substantial separate issues to establish his or her right

11   to recover individually a class action is not superior."  Zinser, 253 F.3d at 1192.

## DISCUSSION

13         *Defendants' Arguments*

14         Defendants argue that decertification is appropriate because Rule 23(b)(3)'s predominance

15   and superiority requirements are no longer satisfied.  Specifically, Defendants assert that these

16   requirements are not met because Plaintiffs have not proposed any manageable plan on the eve of

17   trial to prove that Defendants' official policies and practices effectively created a facility-wide

18   requirement that workers remain on-call during breaks.  According to Defendants, the evidence

19   Plaintiffs intend to use to prove the above "on-call" theory consists of individual class member

20   testimony, an expert survey, and Leprino's written policies concerning product quality,

21   communication, and responsiveness.  Defendants assert that this evidence is not sufficient to prove

22   Plaintiffs' on-call claim because the written policies do not expressly require class members to be

23   on-call during breaks, and the witness testimony and expert survey are not representative enough

24   for the jury to determine whether these policies had the effect of putting class members on-call

25   during breaks.[5]  According to Defendants, individual mini-trials will predominate over common

---

[5] Defendants note that Plaintiffs also plan to use dozens of declarations and depositions of class members, as well as employee warning forms, radio sign out forms, and on-duty meal agreements, to prove that class members were on-call during breaks.  Defendants filed a motion in limine to exclude the declarations and depositions on the ground that they are inadmissible hearsay.  See Doc. No. 279.  Additionally, Defendants argue that Plaintiffs failed to explain how the employee warning forms, radio sign out forms, and on-duty meal agreements can be used as common proof to

1   questions because each witness's testimony regarding work responsibilities during breaks will

2   differ based on how each supervisor implemented the policies.  Furthermore, Defendants argue

3   that Plaintiffs' survey cannot be used as representative evidence because its content consists of so

4   many varying experiences of class members that no one individual class member could use the

5   survey to establish liability for his or her claim.  Defendants further assert that if the Court treats

6   Plaintiffs' witnesses and expert survey as representative without allowing Defendants to present

7   testimony from all their witnesses, then Defendants will be deprived of their due process right to

8   present all their available defenses.

9           *Plaintiffs' Arguments*

10          Plaintiffs argue that Defendants' renewed motion for decertification should be denied

11  because there is no compelling reason to decertify the class, such as discovery of new facts,

12  changes in the parties, or changes in the substantive or procedural law.  According to Plaintiffs,

13  Defendants' renewed motion presents many of the same arguments that the Court rejected in its

14  previous orders, and the cases Defendants cite for the first time in support of decertification are

15  distinguishable.  Plaintiffs also assert that Defendants' renewed motion should be denied because

16  it attempts to trick the Court into weighing evidence and making a merits determination, which is

17  improper in the class certification context.  Furthermore, Plaintiffs argue that the "individualized

18  inquiries" allegedly involved in the parties' witness testimony are irrelevant compared to the

19  central question of whether Defendants' common policies placed class members on call during

20  breaks.  According to Plaintiffs, the mere fact that some class members had compliant breaks does

21  not show that individual issues will predominate in the litigation.  Plaintiffs further argue that they

22  are relying on not just live witness testimony but also on common proof in the form of Plaintiffs'

23  expert survey, declarations and depositions from class members, and Leprino's guidebooks,

24  employee warning records, radio sign out forms, pounds per labor hour documents, good

25  _____

26  show that all class members were required to be on-call during breaks.  Furthermore, Defendants filed a motion in limine to exclude Plaintiffs' expert report on the ground that his findings are unreliable.  See Doc. No. 272.

27  According to Defendants, if all the above evidence and testimony get excluded, then "the case necessarily comes down to each class member coming into court to give testimony" regarding whether the written policies on quality, communication, and responsiveness effectively put them on-call during breaks.  Doc. No. 293 at 15.  Defendants

28  argue that such an approach to proving Plaintiffs' on-call break claim is unmanageable.  Id.

manufacturing practice agreements, on-duty meal period agreements, break relief logs, personnel files, time clock data, and discovery responses.  Plaintiffs also argue that disallowing Defendants from calling all 1,389 witnesses in support of their position would not violate Defendants' due process rights because many of those testimonies will be cumulative, and because Defendant is not categorically entitled to litigate an affirmative defense individually as to each class member in this case.

_Discussion_

In light of the parties' arguments, the central issue before the Court is whether the evidence Plaintiffs intend to use at trial is sufficiently "common" for each class member to make a prima facie showing, or overly "individualized" such that any common question among the class members consists of an unmanageable variety of individual legal and factual issues.  The Court previously reviewed this question in Plaintiffs' motion for class certification.  Doc. No. 163.  The evidence at that time consisted of (1) Leprino's written policies on product quality, communication, and responsiveness, (2) an alleged unwritten policy and practice requiring and pressuring employees to carry and respond to their radios at all times, (3) Leprino not telling its employees they need not respond to work-related matters during breaks, (4) several declarations and depositions from class members indicating that they were subjected to the foregoing policies and practices, and (5) several declarations and depositions from Defendants' witnesses.  Id. at 24-25.  Based on this evidence, the Court found that the alleged policies and practices were "sufficiently facility-wide" and that the question of whether they put class members on call during their breaks was "capable of class-wide resolution."  Id. at 25, 28.  The Court further found that answering this question did not require a great deal of individualized proof because Plaintiffs' on-call theory was "not focused on the reason for each interruption to each employee's many breaks" but rather on the "facility-wide policies and practices: namely, did those policies and practices effectively place all putative class members on call during all breaks?"  Id. at 28.  The Court also noted that a "finding of predominance will generally not be 'defeat[ed]' merely because there is a need to make individualized damage determinations."  Id. at 29 (citing Just Film, Inc. v. Buono, 847 F.3d 1108, 1121 (9th Cir. 2017)).

The Court again reviewed the predominance issue in Defendant's motion for summary judgment or, in the alternative, decertification.  Doc. No. 243.  The additional evidence submitted to the Court after the original class certification date included a survey from Plaintiffs' expert Jeffery Petersen and a declaration from Steve Schmidt, Leprino's Senior Director of Production Human Resources & Safety, which stated that class members did not have production goals per shift and that Leprino has no record of issuing disciple to any class member for not responding to a supervisor about a work-related matter during a break.  Id. at 14 (citing Doc. No. 243-2).  With respect to Plaintiffs' expert survey, the Court found that its results were consistent with Plaintiffs' previously submitted declarations and deposition documents indicating that class members were "regularly contacted during their breaks about work-related matters, be it via radio, intercom, breakroom phone, or in person."  Doc. No. 243 at 14 (citing Doc. No. 163 at 25:17-20).  The survey results did not establish that the class should be decertified because the question of whether Leprino's policies and practices put class members on call during their breaks was still capable of class-wide resolution.  Id. at 14-15.  Furthermore, with respect to the Schmidt declaration, the Court stated that evidence in the record contradicted Schmidt's statements regarding production quotas and discipline.  Id. at 15-16.   The Court thereafter concluded that common questions—i.e., "in light of Leprino's foregoing facility-wide policies and practices, are the class members actually 'on call' during breaks? Or, in other words, are the class members not truly freed from Leprino's control during their breaks?"—still predominated over individualized inquiries based on the evidence at that time.  Id. at 16.  The question was "not how many class members actually experienced meal and rest break violations but instead whether Defendants had an unofficial policy of not providing breaks in violation of the law."  Id.

In light of the Court's previous findings and the body of evidence Plaintiffs intend to use at trial, the Court is not persuaded that the class should be decertified.  As previously stated, Plaintiffs intend to use Leprino's written policies concerning product quality, communication, and responsiveness, Plaintiffs' expert survey, several declarations and depositions of class members,

and live testimony from approximately 20 class members.[6]  According to Defendants, the above evidence is insufficient because (1) Leprino's written policies do not expressly require class members to be on-call during breaks, Doc. No. 271 at 10-11; (2) the declaration and deposition materials are inadmissible hearsay, Doc. No. 293 at 8; (3) Plaintiff's expert survey is unreliable and not representative of the class, Doc. Nos. 271 at 17-20 and 293 at 13-14; and (4) as a result of the evidentiary flaws above, Plaintiffs cannot establish their on-call break claim using only live testimony of 20 class members at trial.  Doc. Nos. 271 at 20-21 and 293 at 14-15.  In other words, Defendants argue that the only way Plaintiffs can establish their on-call break claim is by using an unmanageable method of having all class members testify at trial, which would flood the courtroom with individualized inquiries.  Doc. No. 293 at 15.

        As an initial matter, the Court agrees with Defendants that Leprino's official policies on product quality, communication, and responsiveness—which the parties agree were "common" to the class—did not expressly state that class members must be on-call during breaks, and that these policies alone are not sufficient to show that class members were effectively on-call during breaks. This is reflected in the Court's previous finding that Plaintiff's additional evidence in the form of "several witness declarations and depositions" at the certification stage "presented sufficient proof" to show that class members "were regularly contacted during their breaks about work-related matters, be it via radio, intercom, breakroom phone, or in person."  Doc. No. 163 at 25. The Court also found in its summary judgment order that Plaintiffs' expert survey was additional evidence showing that the question of whether Leprino's policies and practices effectively put class members on-call during breaks was still capable of class-wide resolution.  Doc. No. 258 at 16.  Defendants have now submitted additional arguments in their renewed motion for decertification as to why the above expert survey, declarations, and depositions should be excluded.[7]  In light of these new arguments, the issue before the Court is whether Plaintiffs may

---

[6] Plaintiffs state they also intend to use Leprino's guidebooks, employee warning records, radio sign out forms, pounds per labor hour documents, good manufacturing practice agreements, on-duty meal period agreements, break relief logs, personnel files, time clock data, Defendants' discovery responses, and declarations and depositions from class members.

[7] In their motion and reply, Defendants argue that they are "separately moving to exclude Plaintiffs' expert under Fed. R. Civ. Pro. 702 and *Daubert*," Doc. No. 271 at 20 n.6, and that Plaintiffs' witness "declarations and depositions are

1   still use these pieces of evidence to support their on-call break claim at trial, and if not, whether

2   the class should be decertified.

3       **1. Plaintiffs' Expert Survey**

4           As an initial matter, the Court notes that "[i]nadmissibility alone is not a proper basis to

5   reject evidence submitted in support of class certification." Sali v. Corona Reg'l Med. Ctr., 909

6   F.3d 996, 1006 (9th Cir. 2018).  However, the Court recognizes that "in evaluating challenged

7   expert testimony in support of class certification, a district court should evaluate admissibility

8   under the standard set forth in Daubert." Id.  Because Defendants also filed a motion in limine to

9   exclude Plaintiffs' expert survey (Doc. No. 272), the Court will review the survey's admissibility

10  under the *Daubert* standard in addition to the arguments set forth in Defendants' renewed motion

11  to decertify (Doc. No. 271).

12          Under Daubert, the Court has a duty to act as a "gatekeeper" for expert testimony by

13  assessing its admissibility.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993);

14  see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 145, 147 (1999).  This inquiry is

15  governed in part by Fed. R. Evid. 702 which provides:

16          A witness who is qualified as an expert by knowledge, skill, experience, training, or
            education may testify in the form of an opinion or otherwise if:
17

18          (a) the expert's scientific, technical, or other specialized knowledge will help the
            trier of fact to understand the evidence or to determine a fact in issue;

19          (b) the testimony is based on sufficient facts or data;

20          (c) the testimony is the product of reliable principles and methods; and

21          (d) the expert has reliably applied the principles and methods to the facts of the
            case.
22

23  Fed. R. Evid. 702.  The Supreme Court set forth the following, non-exhaustive factors for

    reviewing the reliability of an expert opinion: (1) whether the particular scientific theory has been
24

    or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the
25

    known or potential rate of error; (4) whether there are standards controlling the method; and (5)
26

27  ─────────────────────────────

    hearsay, and Leprino has filed a motion in limine to exclude them."  Doc. No. 293 at 8 (citing Doc. No. 279).
28  Defendants have since filed Motion in Limine No. 1 to exclude Plaintiffs' expert survey, Doc. No. 272, and Motion in
    Limine No. 8 to exclude Plaintiffs' witness declarations and depositions.  Doc. No. 279.

1    whether the technique has gained general acceptance in the relevant scientific community.

2    Daubert, 509 U.S. at 593-94.  Furthermore, an expert's survey evidence should be admitted "as

3    long as [it is] conducted according to accepted principles and [is] relevant."  Fortune Dynamic,

4    Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1036 (9th Cir. 2010) (citing Wendt

5    v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997)).  "[T]echnical inadequacies" in a survey,

6    "including the format of the questions or the manner in which it was taken, bear on the weight of

7    the evidence, not its admissibility."  Id. (citing Keith v. Volpe, 858 F.2d 467, 480 (9th Cir. 1988)).

8         Here, Defendants argue that the survey findings are not representative of the class because

9    a significant portion of respondents (33.3%) answered that class members were not required to be

10   responsive to work-related requests and instructions from managers or supervisors that were made

11   during breaks.  Additionally, Defendants assert that the content of the survey consists of so many

12   varying experiences of class members that no one individual member can use the survey to

13   establish liability for his or her claim.  Based on these reasons, Defendants argue that the survey is

14   unreliable.  Defendants rely primarily on In re Autozone, Inc. to support their above arguments.

15        In In re Autozone, Inc., which involved claims against Autozone for allegedly failing to

16   provide timely and sufficiently long rest breaks, the court excluded the plaintiffs' proffered survey

17   under Rule 702 and Daubert because the survey was "an unreliable means of measuring

18   Autozone's potential liability to individual employees."  In re Autozone, Inc., 2016 U.S. Dist.

19   LEXIS 105746, *67 (N.D. Cal. Aug. 10, 2016).  The fundamental problem was that the survey

20   was not representative of the class for several reasons.  First, the court found that the survey was

21   more like the representational evidence that was rejected in Dukes than the representational

22   evidence that was allowed in Tyson Foods.[8]  Id. at *52.  Second, the court found that the survey's

23

24   ─────────────────
     [8] In Dukes, the Supreme Court rejected a "Trial by Formula" approach in which the parties would collect responses
     from a sample set of class members, determine what percentage of the sample set's claims was valid, and then apply

25   the percentage to the entire class of some 1.5 million to arrive at the entire class recovery.  Wal-Mart Stores, Inc. v.
     Dukes, 564 U.S. 338, 367 (2011).  The Supreme Court held that this approach was contrary to the Rules Enabling Act

26   because it "enlarge[d]" the class members' "substantive right[s]" and deprived defendants of their right to litigate
     statutory defenses to individual claims.  Id.  By contrast, in Tyson Foods, the Supreme Court allowed representational

27   evidence consisting of findings from a sample set of the class because unlike the sample set in Dukes, the sample set
     in Tyson Foods consisted of members who "worked in the same facility, did similar work, and was paid under the

28   same policy" as the remaining class members, and the results of the sample set could be "used to establish liability in
     an individual action."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 459 (2016).

"woefully low response rate" of no more than 6% made it inadequate to generalize or extrapolate the results to the wider population.  Id. at *56 (citing Duran v. U.S. Bank Nat. Ass'n, 59 Cal. 4th 1, 42 (2014)).  Third, the court found that the survey's low response rate "suggest[ed] that there [was] nonresponse bias, which is a form of bias that can occur when particular systematic segments of the target population or sample do not provide responses to a survey."  Id. at *59-*60.  The court further noted that the expert "did not adequately account for the possibility of nonresponse bias."  Id. at *60.  Fourth, the court found a problem of "self-interest bias" in that the respondents may have been more interested than non-respondents in participating in the survey to provide answers suggesting labor violations.  Id. at *62-*63.  Fifth, the court found that the survey relied on the respondents' memories of "very specific events that occurred between three and a half and eleven years ago," which posed a "real problem" to the survey's reliability.  Id. at *64-*65.  Finally, the court found that the survey was imprecise in that at least one respondent should not have been included in the survey, the term "employee handbook" was not defined, and the survey did not adequately address those employees who stated they voluntarily chose not to take rest breaks.  Id. at *66-*67.  Taken together, the above problems led the court to conclude that the survey was unreliable and inadmissible.  Id. at *67.

While the Court appreciates Defendants' references to *Autozone*, that case is not binding and the Court is not persuaded that a similar outcome should be reached here.  First, *Dukes* and *Tyson Foods* do not mandate that Plaintiffs' survey should be excluded.  In *Tyson Foods*, the Supreme Court stated that "[*Dukes*] does not stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 457 (2016).  The Supreme Court further declined to announce a "broad rule" against the use of "representative evidence" in class actions.  Id. at 454.  As the Supreme Court explained,

> [a] categorical exclusion of that sort . . . would make little sense.  A representative or statistical sample, like all evidence, is a means to establish or defend against liability.  Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action.

Id. at 454-55.

1   Instead of adopting a broad categorical rule, the Supreme Court stated that "[w]hether a

2   representative sample may be used to establish classwide liability will depend on the purpose for

3   which the sample is being introduced and on the underlying cause of action."  Id. at 460.

4   Additionally, "[t]he fairness and utility of statistical methods in contexts other than those

5   presented here will depend on facts and circumstances particular to those cases."  Id.  In accord

6   with these principles, the Supreme Court allowed the sample set of evidence to be used in *Tyson*

7   *Foods* because, unlike the sample set in *Dukes*, it derived from members who "worked in the same

8   facility, did similar work, and was paid under the same policy" as the remaining class members,

9   and because the results of the sample set, unlike those in *Dukes*, could be "used to establish

10  liability in an individual action."  Id. at 458-59.  Under these circumstances, the experiences of the

11  sample set could be "probative as to the experiences of all of them."  Id. at 459.

12          Here, as in *Tyson Foods*, Plaintiffs' survey consists of responses from a sample set of class

13  members who were similarly situated with the remaining class members.  They worked in the

14  same Lemoore West facility and were subject to the same policies and practices regarding quality,

15  communication, and responsiveness.  Although Defendants contend that the experiences and job

16  requirements of class members varied by department and supervisor, this contention is unavailing

17  because Defendants again have not persuasively shown that the above policies and practices

18  affected only some of the departments.  Furthermore, a jury in an individual action could

19  reasonably interpret the results of the survey as Leprino having an on-call break policy, which in

20  turn would establish liability and open the door to calculate damages.  Just because one class

21  member consented to being "on-call" or was not actually "called" during a break does not mean

22  that Leprino lacked an unofficial on-call policy.  See Ruiz v. XPO Last Mile, Inc., 2016 U.S. Dist.

23  LEXIS 152095, *30-31 (S.D. Cal. Feb. 1, 2016); see also Williams v. Superior Court, 221 Cal.

24  App. 4th 1353, 1370 (2013) ("[C]lass treatment does not require that all class members have been

25  equally affected by the challenged practices—it suffices that the issue of whether the practice itself

26  was unlawful is common to all.").  As in *Tyson Foods*, the experiences of the subset of class

27  members in the survey "can be probative as to the experiences of all of them."  Tyson Foods, Inc.,

28  577 U.S. at 459.

1    Defendants' argument that *Dukes* calls for the exclusion of Plaintiffs' survey is

2  unconvincing.  The sample set of evidence in *Dukes* is distinguishable because the some 1.5

3  million class members in that case "were not similarly situated" because they worked in different

4  facilities spread out across the nation, "none of them could have prevailed in an individual suit" by

5  relying on the sample set's experiences, and the underlying cause of action was sex discrimination

6  under Title VII.  Tyson Foods, 577 U.S. at 458-59.  In other words, a class member outside the

7  sample set in *Dukes* could not rely on the instances of sex discrimination experienced by those in

8  the sample set because the sex discrimination found in the sample set was not reliable in proving

9  that the class member outside the sample set was actually sexually discriminated against.

10  While Defendants contend there are individual class members who likewise cannot use the survey

11  respondents' varying experiences to establish liability for his or her own claim, the Court

12  disagrees.  The relevant question is not whether the sample set is completely representative of the

13  class;[9] rather, the question is whether the sample set is sufficiently "reliable in proving or

14  disproving the elements of the relevant cause of action."  Tyson Foods, 577 U.S. at 454-55; Olean

15  Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 685 (9th Cir. 2022).

16  The sample set of evidence in *Dukes* was not, but here as explained below, Plaintiffs' survey is

17  sufficiently reliable and Defendants' reliance on *Autozone* does not show otherwise.

18    Plaintiffs' expert Jeffrey Petersen, Ph.D., conducted the survey to evaluate the (1)

19  "frequency of [class members] departing the work premises during meal and rest breaks," and the

20  (2) "requirements, expectations, and requests to work during meal and rest breaks."  Doc. No. 243-

21  1 at 11.  Petersen's report states that "[t]he survey and statistical analysis of the survey data were

22  performed in accord with peer-reviewed science regarding class action wage and hour cases."  Id.

23  at 11.  Among the approximately 1,551 class members, 246 valid responses were obtained.  Id.

24

25  [9] Even the sample set of evidence that the Supreme Court allowed in *Tyson Foods* was not completely representative
   of the class.  There, the Rule 23 class consisted of 3,344 members, and the sample set of evidence consisted of 744
   videotaped observations that showed how long various donning and doffing activities took.  Tyson Foods, 577 U.S. at

26  449-50.  The video tapes did not include footage of every class member.  Id. at 470.  Based on this sample set of video
   footage, the analyzing expert concluded that the average time to complete the donning and doffing activities was 18

27  minutes a day for the cut and retrim departments and 21.25 minutes for the kill department.  Id. at 450.  Although
   several class members attested to spending less time on donning and doffing than these averages suggested, Id. at 478,

28  the Supreme Court still allowed the plaintiffs to extrapolate the time averages from the sample set and apply them to
   the entire class.  Id. at 456-57.

1  According to Defendants, this response rate of approximately 16% makes the survey unreliable in

2  light of *Autozone*.  See Doc. No. 272 at 8.  Although the *Autozone* court noted that surveys with

3  response rates below 50% should be regarded with "significant caution," *In re Autozone, Inc.*,

4  2016 U.S. Dist. LEXIS 105746, at \*59 n.27, this finding was based on references to the second

5  edition of Reference Guide on Survey Research,[10] which has since been updated to a third edition

6  that removed that language and added a statement that "[c]ontrary to earlier assumptions,

7  surprisingly comparable results have been obtained in many surveys with varying response rates,

8  suggesting that surveys may achieve reasonable estimates even with relatively low response

9  rates."  Shari Seidman Diamond, Reference Guide on Survey Research, in Reference Manual on

10 Scientific Evidence 385 (3d ed. 2011).  Additionally, the survey's response rate of 3.5-to-6% in

11 *Autozone* was significantly less than 16%, and at least one other court allowed a survey conducted

12 by Plaintiffs' expert that had a response rate less than 16%.  See Nucci v. Rite Aid Corp., 2020

13 U.S. Dist. LEXIS 104164, \*20 (N.D. Cal. June 14, 2020).

14        Furthermore, the class members were called at random, and each person had an equal

15 chance of being called.  Doc. No. 243-1 at 85.  Although some calls did not go through because

16 either the telephone numbers were no longer in service or the individuals opted not to participate,

17 Petersen noted that "[a]ccording to peer-reviewed research on wage and hours survey, . . . there is

18 no reason an individual without a working telephone number should be any different than any of

19 the other class members," id. at 30, and "[t]here is no indication that individuals that refused to

20 take the survey would have provided responses that favored defendants" based on "statistical

21 analysis of call attempts and a review of the responses to reasons for refusals."  Id. at 66.

22 Petersen further noted that "[t]he survey methodology textbook *Designing and Conducting Survey*

23 *Research* states that the introduction of the survey instrument should build trust in the survey

24 participants so they will be willing to be forthcoming with information . . . . It is important to

25 inform potential respondents about the purpose of the study in order to convey its importance and

26 alleviate any concerns that potential respondents are likely to have."  Id. at 30-31.

27

28

---

[10] Shari Seidman Diamond, Reference Guide on Survey Research, in Reference Manual on Scientific Evidence 245
(2d ed. 2000) ("If the response rate drops below 50%, the survey should be regarded with significant caution as a basis
for precise quantitative statements about the population from which the sample was drawn.").

While Defendants and their rebuttal expert argue that the survey responses are unreliable due to various biases and deficiencies, "at bottom, Defendants are merely arguing that [their rebuttal expert's] methodology is better than Dr. Peterson's, but at best, such contentions go to weight and not admissibility." Nucci, 2020 U.S. Dist. LEXIS 104164, at *25 (citing Fortune Dynamic, 618 F.3d at 1036 ("[T]echnical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.")); see also Wendt, 125 F.3d at 814 ("Challenges to survey methodology go to the weight given the survey, not its admissibility."); Medlock v. Taco Bell Corp., 2015 U.S. Dist. LEXIS 165235, *21-22 (E.D. Cal. Dec. 9, 2015) (ruling that defendant's arguments regarding non-response, self-interest, and recall biases "are more appropriate for the weight of [expert's] survey and report").  The Court is also unconvinced that the survey findings are inadmissible hearsay because "experts are entitled to rely on hearsay in forming their opinions." Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 873-74 (9th Cir. 2001) (citing Fed. R. Evid. 703) ("If [the underlying facts or data are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); see also Ecoservices, LLC v. Certified Aviation Servs., LLC, 312 F. Supp. 3d 830, 839 (C.D. Cal. 2018).

Accordingly, the Court finds that Plaintiffs' survey is sufficiently reliable and Defendants' challenges go to the weight of the survey, not its admissibility.  Therefore, Defendants' motion in limine to exclude Plaintiffs' survey (Doc. No. 272) will be denied.

**2. Plaintiffs' Witness Declarations and Deposition Testimonies**

Defendants argue that the declarations and depositions that Plaintiffs intend to use at trial "are hearsay, and Leprino has filed a motion in limine to exclude them (Doc. 279)." Doc. No. 293 at 8.  In their motion in limine, Defendants contend that 25 class member declarations and 23 class member deposition testimonies consist of out-of-court statements offered for their truths and they do not fall under any hearsay exception.  Doc. No. 279 at 3.  In response, Plaintiffs argue that a wholesale exclusion of all these documents before trial would be premature because specific analysis is needed for each document to determine whether it is hearsay, non-hearsay, or qualifies

1  for a hearsay exception.

2          As noted earlier, the "evidentiary proof" a plaintiff must submit in support of class

3  certification "need not be admissible," and "[i]nadmissibility alone is not a proper basis to reject

4  evidence submitted in support of class certification." <u>Sali</u>, 909 F.3d at 1004; <u>Fite v. Sonendo, Inc.</u>,

5  2020 U.S. Dist. LEXIS 246380, *7 (C.D. Cal. Nov. 25, 2020) ("[T]he Ninth Circuit held that

6  evidence need not be admissible for it to be considered in support of class certification.").

7  Therefore, it would be improper for the Court to reject the challenged declarations and depositions

8  at this stage based on Defendants' hearsay argument alone.  Nevertheless, the Court recognizes

9  that it "need not dispense with the standards of admissibility entirely." <u>Sali</u>, 909 F.3d at 1006.

10 "The court may consider whether the plaintiff's proof is, or will likely lead to, admissible

11 evidence," especially as the trial date draws near. <u>Sali</u>, 909 F.3d at 1006.  Given the practical

12 realities of this case, the Court will address Defendants' motion in limine to exclude the

13 challenged declarations and depositions (Doc. No. 279) in this order.

14         Having reviewed the briefings, Defendants' motion in limine will be denied without

15 prejudice.  The Court is unable to determine whether to grant Defendants' broad request without

16 additional information about the specific content of each challenged document and the context in

17 which it is introduced.  For example, the parties dispute whether the deposition transcripts of

18 Leprino's managers and group leaders may be admitted under Fed. R. Civ. Pro. 32(a)(3), which

19 provides that "[a]n adverse party may use for any purpose the deposition of a party or anyone who,

20 when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6)

21 or 31(a)(4)."  The parties specifically dispute whether Leprino's managers and group leaders

22 qualify as "managing agents."  Because additional information is needed about the specific

23 individuals in question, the Court cannot determine at this stage whether any of the deposition

24 testimonies were made by a "managing agent."  <u>See</u> <u>Carpenter v. Forest Meadows Owners Ass'n</u>,

25 2011 U.S. Dist. LEXIS 82295, *11-12 (E.D. Cal. July 26, 2011) ("The term 'managing agent'

26 within the context of Rule 32(a)(3) must be interpreted in light of the person's duties, and in

27 comparison to the other people listed in Rule 32(a)(3)."); <u>Hynix Semiconductor Inc. v. Rambus</u>

28 <u>Inc.</u>, 2008 U.S. Dist. LEXIS 11767, *16-17 (N.D. Cal. Feb. 2, 2008) ("Courts have interpreted

1   'managing agent' flexibly, emphasizing what the employee actually did, rather than what title or

2   position she held."); see also Nutrition Distribution, LLC v. Enhanced Athlete, Inc., 2018 U.S.

3   Dist. LEXIS 24515, at *8 (E.D. Cal. Feb. 14, 2018) ("[V]irtually all courts and commentators

4   agree that the question of whether a particular person is a 'managing agent' is to be answered

5   pragmatically, on an ad hoc basis, considering the facts of the particular case.").  If there is "at

6   least a 'close question' as to the managing agent status of a potential witness, doubts should be

7   resolved in favor of allowing the deposition, with the final determination of whether the agent has

8   the ability to bind the corporation to be left for trial."  Elasticsearch, Inc. v. floragunn GmbH, 2021

9   U.S. Dist. LEXIS 85310, *4 (N.D. Cal. May 4, 2021) (citing Calderon v. Experian Info. Sols.,

10  Inc., 287 F.R.D. 629, 633 (D. Idaho 2012)).  Furthermore, a wholesale exclusion of all the

11  challenged declarations and depositions at this stage would be premature because the materials

12  might be proffered for non-hearsay purposes.  While the Court is inclined to agree with

13  Defendants that some of the challenged statements are hearsay, at this stage the Court will decline

14  to impose a blanket exclusion of all the challenged declarations and depositions, but Defendants

15  may renew their objections at trial as Plaintiffs move to introduce any of these challenged

16  materials.  For purposes of Defendants' current motion for decertification, the challenged

17  declarations and depositions support certification because they are sufficiently material at this

18  stage to form a reasonable judgment that class members "were regularly contacted during their

19  breaks about work-related matters, be it via radio, intercom, breakroom phone, or in person."  See

20  Doc. No. 163 at 25; see also Sali, 909 F.3d at 1005 ("[I]n evaluating a motion for class

21  certification, a district court need only consider 'material sufficient to form a reasonable judgment

22  on each Rule 23(a) requirement.'") (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).

23      **3.  Predominance and Superiority**

24          In light of the Court's rulings above, Plaintiffs will not be relying solely on live testimony

25  from 20 class members to show that Leprino's official policies and practices effectively put class

26  members on-call during breaks.  Rather, Plaintiffs may also rely on their expert's survey and class

27  member declarations and depositions to the extent they are admissible.  Therefore, as the Court

28  found in previous orders, Plaintiffs' evidence is sufficient to satisfy the predominance and

1    superiority requirements of Rule 23(b)(3).  See Doc. Nos. 163 at 28-29 and 258 at 14-17.  For

2    example, Plaintiffs' survey provides reliable common proof that the fact-finder can use to evaluate

3    whether class members interpreted Leprino's policies and practices as requiring them to respond

4    to work-related matters during their breaks.  The mere fact that some class members may have or

5    may have not taken code-compliant breaks "does not show that individual issues will predominate

6    in the litigation."  Benton v. Telecom Network Specialists, Inc., 220 Cal. App. 4th 701, 730

7    (2013); Alberts v. Aurora Behavioral Health Care, 241 Cal. App. 4th 388, 409 (2015); see also

8    Hoffman v. Blattner Energy, Inc., 315 F.R.D. 324, 340 (C.D. Cal. 2016) ("The fact that 'an

9    employee may have actually taken a break or was able to eat food during the work day does not

10   show that individual issues will predominate in the litigation.'") (citing Bradley v. Networkers

11   Internat., LLC, 211 Cal. App. 4th 1129, 1151 (2012)).  While individual damages issues may

12   exist, the Court cannot deny class certification on the basis that it must later calculate individual

13   damages.  Leyva, 716 F.3d at 515.

14        Defendants' reliance on *Marlo v. UPS* is inapposite because the plaintiffs there only had

15   "individual testimony" to serve as their "common evidence" after the court excluded their

16   representational survey.  Marlo v. UPS, 251 F.R.D. 476, 486-87 (C.D. Cal. 2008).  The *Marlo*

17   court also noted that "[t]he result in this case could have been different" if the plaintiffs "offer[ed]

18   reliable common evidence."  Marlo, 251 F.R.D. at 487.  Here, as the Court stated above, Plaintiffs

19   provided sufficiently reliable common evidence through their expert survey.  Therefore, *Marlo* is

20   distinguishable.

21        Defendants' other cited case *Christensen v. Carter's Retail, Inc.* is also distinguishable

22   because the court's basis for denying certification there was that the plaintiffs' proffered evidence

23   consisted primarily of class member testimony and declarations that were internally inconsistent

24   and contradicted by the defendants' witness declarations.  Christensen v. Carter's Retail, Inc.,

25   2021 U.S. Dist. LEXIS 204050, *36-*40 (C.D. Cal. Oct. 21, 2021).  Here, the Court previously

26   found that Defendants' declarations did not undermine the conclusion that Plaintiffs' declarations

27   and depositions "provided sufficient proof . . . showing for class certification purposes that the

28   alleged policies . . . affected most, if not all, of the class members."  Doc. No. 177 at 8 (citing Doc.

No. 163 at 26).  Furthermore, unlike Leprino's rest policy, the rest policy in *Christensen* expressly required that "[e]mployees should ask management for permission to leave the store during a rest period," meaning that the "rest break policy function[ed] as a policy of discretion" that engendered "substantial variation in how managers and employees operated under the rest break policy." Christensen, 2021 U.S. Dist. LEXIS 204050, at *34-*36.  Such a written "policy of discretion" is not present in this case.

Furthermore, the Court disagrees with Defendants' contention that there is no manageable method to try the case without depriving Leprino of its due process rights.  As discussed above, Plaintiffs' survey is sufficiently reliable representational evidence in light of *Tyson Foods* and *Daubert*.  Permitting the use of this evidence will not violate Defendants' due process rights because Defendants can argue to the jury that the survey should be given less weight due to issues of reliability.  Whether the survey is representative of the class is a merits dispute, and the jury might agree with Defendants' interpretation of the survey and determine that Plaintiffs' theory is incorrect.  Such a finding by the jury would not mean that individual issues predominate; rather, it would mean that Plaintiffs could not prove their case.

Furthermore, denying Defendants from calling every member of the class to rebut Plaintiffs' on-call claim will not violate Leprino's due process rights.  Defendants have not identified any authority stating that a party in a class action has a due process right to call every class member to testify at trial.  Such a right would obliterate the use of representative evidence and defy the class action device's purpose to "save the resources of both the courts and the parties 'by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.'"  Cummings v. Connell, 402 F.3d 936, 944 (9th Cir. 2005) (citing Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).  Further, such a right could violate the Rules Enabling Act by improperly "enlarg[ing]" the class action defendant's "substantive right[s]."  28 U.S.C.S. § 2072(b); see also Dukes, 564 U.S. at 367 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to . . . 'enlarge . . . any substantive right.'").  Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of undue delay, wasting time, or needlessly presenting cumulative evidence.  Therefore, the Court

will not allow Defendants to call 1,389 class member witnesses to testify at trial.  See Doc. No. 269.   One hundred Leprino witnesses for every one of Plaintiffs' witnesses, or a ratio of 100:1, is not needed to rebut Plaintiffs' 13 prospective class member witnesses.  However, the Court will allow Defendants to submit a revised prospective class member witness list with proffers of their expected testimony.  Any failure to substantially curtail the witness list in a workable fashion will be viewed by the Court as a sign of bad faith and will result in the Court setting the total number of class member witnesses that Defendants may call at trial.

### 4.  Conclusion

Decertification of the class is inappropriate because there is sufficiently reliable evidence to establish the elements for class certification.[11]  Specifically, based on Plaintiffs' expert survey and class member testimonies, the jury could reasonably conclude that Leprino's official policies and practices effectively put class members on-call during their breaks.  Allowing Plaintiffs to offer representational evidence at trial will not violate Defendants' due process rights because Defendants can rebut that evidence with their own rebuttal expert and representational testimony. Whether Plaintiffs' evidence is factually representative of the class is a merits dispute for the jury to decide.

//
//
//
//
//
//
//
//
//

---

[11] The Court recognizes that it may decertify the class at any time.  Rodriguez, 563 F.3d at 966.  However, the Court has now addressed multiple motions by Defendants that challenge the certification of the class.  The Court will not accept any new argument for decertification without Defendants first making a proffer of new material developments in the case that the Court has not already reviewed.

1

**<u>ORDER</u>**

2

Accordingly, IT IS HEREBY ORDERED that:

3

1. Defendants' Renewed Motion for Class Decertification (Doc. No. 271) is denied;

4

2. Defendants' Motion in Limine No. 1 (Doc. No. 272) is denied;

5

3. Defendants' Motion in Limine No. 8 (Doc. No. 279) is denied without prejudice;

6

4. Defendants are ordered to submit a revised prospective class member witness list with their

7

expected proffers within seven (7) days of the date of this order.  Plaintiffs shall thereafter

8

submit their revised rebuttal prospective class member witness list with their expected

9

proffers within seven (7) days of the filing of Defendants' revised list.

10

11

IT IS SO ORDERED.

12

Dated:   February 8, 2023   _____

SENIOR  DISTRICT  JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28