1

2                          **UNITED STATES DISTRICT COURT**

3                          **EASTERN DISTRICT OF CALIFORNIA**

4

5    **ISAIAS VASQUEZ and LINDA HEFKE,**          **CASE NO. 1:17-cv-00796-AWI-BAM**
     **on behalf of all other similarly situated**
6    **individuals,**

7                        **Plaintiffs,**                          **ORDER ON MOTIONS IN LIMINE**

8                        **v.**                                   (Doc. Nos. 273-291)

9    **LEPRINO FOODS COMPANY, a**
     **Colorado Corporation; LEPRINO FOODS**
10   **DAIRY PRODUCTS COMPANY, a**
     **Colorado Corporation; and DOES 1–50,**
11   **inclusive,**

12                       **Defendants.**

13

14

15          This class action lawsuit, brought before the Court pursuant to 28 U.S.C. § 1332(d)(2),

16   involves an employment dispute between Plaintiff class representatives Isaias Vasquez and Linda

17   Hefke ("Plaintiffs") and Defendants Leprino Foods Company and Leprino Foods Dairy Products

18   Company (collectively, "Leprino" or "Defendants").[1]  On March 30, 2020, the Court certified

19   Plaintiffs' claim that Defendants required their non-exempt workers to remain "on-call" during

20   their meal and rest breaks in violation of California law.[2]  Pending before the Court are 10 motions

21   in limine filed by Defendants and 9 motions in limine filed by Plaintiffs.[3]  Doc. Nos. 273-291.

22   This order resolves the parties' respective motions.

23   _____

24   [1] The parties are familiar with the facts of this case. A thorough recitation of the underlying facts can be found on the
     Court's order on Defendant's motion for summary judgment.  Doc. No. 258.

25   [2] The class is defined as follows: "All non-exempt hourly workers who are currently employed, or formerly have been
     employed, as nonexempt hourly employees at Leprino's Lemoore West facilities in Lemoore, California, at any time
26   within four years prior to the filing of the original complaint until March 31, 2020."

27   [3] The Court addressed Defendants' Motion in Limine No. 1 (Doc. No. 272) and a portion of Motion in Limine No. 8
     (Doc. No. 279) in its Order on Defendant Renewed Motion for Class Decertification.  See Doc. No. 341.  The parties'
28   remaining motions in limine and the remaining portion of Defendants' Motion in Limine No. 8 are addressed in this
     order.

**LEGAL STANDARD**

**1. Motions in limine**

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Stevenson v. Holland, 504 F. Supp. 3d 1107, 1114 (E.D. Cal. 2020) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984)). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Id. (citing Luce, 469 U.S. at 41 n.4); see also City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1070 (9th Cir. 2017) (explaining motions in limine "are useful tools to resolve issues which would otherwise clutter up the trial" (quoted source omitted)).

In *Hana Financial, Inc. v. Hana Bank*, the Ninth Circuit cited with approval the following "standards applicable to motions in limine":

> Judges have broad discretion when ruling on motions in limine. However, a motion in limine should not be used to resolve factual disputes or weigh evidence. To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence.

735 F.3d 1158, 1162 fn. 4 (9th Cir. 2013) (citations omitted).

By resolving a motion in limine, the court may prevent the presentation of potentially prejudicial evidence to the jury, which also eliminates the need to try to neutralize a prejudicial taint after the evidence has already been presented. Stevenson, 504 F. Supp. 3d at 1114 (citing Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003)). Notwithstanding a motion in limine ruling, a court may change course at trial in the event that testimony or other evidence "bring[s] facts to the district court's attention that it did not anticipate at the time of its initial ruling." Id. at 1114-15 (citing United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir. 1999)).

### 2. Admissibility generally

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Irrelevant evidence is not admissible. Fed. R. Evid. 402.  "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."  Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387 (2008) (quoting Fed. R. Evid. 401 advisory committee notes).  Even if relevance is established, the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Additionally, hearsay statements are inadmissible unless they are defined as non-hearsay or fall within an exception to the hearsay rule.  Calmat Co. v. United States DOL, 364 F.3d 1117, 1123 (9th Cir. 2004).  "Hearsay" is a statement, other than one made by the declarant while testifying at the hearing, offered in evidence to prove the truth of the matter asserted by the out-of-court declarant.  Id.

## DEFENDANTS' MOTIONS IN LIMINE

### I. Motion 2 – Individualized Testimony of Plaintiffs and Prospective Class Member Witnesses

#### *Defendants' Argument*

Defendants move to exclude testimony by Plaintiffs and their class member witnesses regarding their individualized experiences and interpretations of Leprino's policies and practices.  According to Defendants, such individualized testimony should be excluded because it is not common proof and thus not helpful to the jury.  While individual testimony may be probative as to that particular class member's claim, it does not prove that the class was subject to on-call breaks because each individual's experience was different.  Furthermore, Defendants assert that such evidence is needlessly cumulative, confusing to the jury, and unfairly prejudicial because it would take the focus away from the common policies and practices at issue.

1    *Plaintiffs' Argument*

2        Plaintiffs oppose Defendants' motion on the ground that the challenged witness testimony

3    relates not to the witnesses' individualized experiences but rather to their common experience of

4    being on-call during breaks.  According to Plaintiffs, the mere fact that some employees had

5    uninterrupted breaks or that Leprino's official policies affected some class members differently

6    than others does not mean that individualized issues will predominate in the case.  Furthermore,

7    Plaintiffs assert that the trial will not devolve into numerous individual mini-trials because each

8    witness's testimony will provide relevant examples and instances of the effects of Leprino's

9    common policies on class members.

10       *Discussion*

11       Plaintiffs' prospective class member witness list names 13 class member witnesses and 7

12   class member rebuttal witnesses.  See Doc. Nos. 268 & 270.  Defendants argue that the testimony

13   of these witnesses regarding their meal and rest break experiences will be overly individualized

14   such that "jurors will not be able to extrapolate these class member witnesses' claims to the entire

15   class."  Although Defendants point to several statements from class members suggesting they each

16   had different experiences regarding breaks, Defendants' argument ultimately goes to the weight of

17   the witnesses' testimonies, not their admissibility.

18       The jury will determine whether an on-call policy existed at Leprino's Lemoore West

19   facility.  The testimony of Plaintiffs' class member witnesses will be relevant to that determination

20   because, like the rest of the class, they all worked at the same Lemoore West facility and were

21   subjected to the same policies and practices, even if their individual experiences were not

22   necessarily identical.  Defendants' references to select statements by Isaias Vasquez, Jeremy

23   Hernandez, Armindo Colouro, Fili Monzon, and Courtney Mateos do not establish that their

24   testimony will be overly individualized and irrelevant.  Other statements made by these same

25   individuals contradict Defendants' references, Doc. No. 305 at 6-8, and their overall testimony has

26   a tendency to make the existence of an on-call policy more or less probable than it would be

27   without their testimony.  Fed. R. Evid. 401.  How much weight to give the class member

28   witnesses' testimony is a question for the jury to decide.

Furthermore, the challenged testimony of Plaintiffs' class member witnesses will not be unduly prejudicial to Defendants because their testimony will not take the focus away from the common policies and practices at issue.  Rather, their testimony will be probative as to how Leprino's policies were implemented in practice and whether they effectively put class members on-call during their breaks.  Again, Plaintiffs contend that Leprino has an unwritten policy that effectively mandates that employees are "on-call" during breaks.  Individual instances in which an employee class-member was required to perform work related tasks during their break demonstrate not only that the employee class member did not receive a full meal or rest break, it can also show that all employees were subjected to an "on-call" policy, even if not all employees were actually interrupted.  Cf. Brinker Rest. Corp. v. Superior Ct., 53 Cal. 4th 1004, 1029, 1049 (2012) (recognizing employer's obligation to provide timely and sufficiently long rest and meal breaks), with Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257, 270 (2016) (recognizing an employer's obligation to provide breaks free from work duties and the employer's control).  To the extent Defendants take issue with this testimony, Defendant may attack it though cross examination and contrary evidence at trial.

*Ruling*

Defendant's second motion in limine is denied.

## II.   **Motion 3 – Late or Missed Break Evidence**

*Defendants' Argument*

Defendants move to exclude Plaintiffs, Plaintiffs' witnesses, and Plaintiffs' attorneys from introducing or referencing any evidence concerning any class members taking late meal or rest breaks or not taking meal and rest breaks at all.  According to Defendants, such evidence is irrelevant because Plaintiffs do not claim that Leprino failed to provide timely breaks or that Leprino failed to provide breaks altogether.  Additionally, Defendants assert that such evidence is irrelevant because not taking an entire meal period or rest break reveals nothing about what happens during a class member's actual meal period or rest break.  Furthermore, Defendants contend that the probative value of such evidence is substantially outweighed by a danger of

1 | confusing the issues, misleading the jury, wasting time, and unfair prejudice.  Defendants also
2 | move to exclude Plaintiffs' Exhibits titled "Written On-Duty Meal Agreement."  Doc. No. 274 at
3 | 3-4 n.2.  According to Defendants, these agreements are irrelevant because they were executed
4 | before the class period.

5 | *Plaintiffs' Argument*

6 | Plaintiffs oppose Defendants' motion on the ground that evidence of class members either
7 | taking late breaks or missing breaks altogether is relevant to the extent they were caused by
8 | Leprino's on-call policy.  Plaintiffs further assert that evidence of Leprino having class members
9 | sign written on-duty agreements constitutes business records that go right to the heart of the case
10 | and establish unequivocally that Leprino required class members to remain on-duty during breaks.

11 | *Discussion*

12 | The parties do not dispute that a claim for late or missed breaks under California law is not
13 | the same as a claim for being on-call during breaks.  Cf. Brinker Rest., 53 Cal. 4th at 1049 (stating
14 | employer's obligation is to provide timely and sufficiently long rest and meal breaks), with
15 | Augustus, 2 Cal. 5th at  270 (stating employer's obligation to provide breaks free from work
16 | duties and employer's control).  Neither do the parties dispute that Plaintiffs' only certified claim
17 | is an on-call break claim and derivative claims.[4]  While Plaintiffs argue that evidence of late or
18 | missed breaks may be relevant to their on-call break claim to the extent that the late or missed
19 | breaks were caused by an on-call policy, Plaintiffs do not sufficiently explain this causal
20 | connection nor address Defendants' argument that missing a break or receiving a late break does
21 | not necessarily mean that the employee was on-call.  Plaintiffs also do not address Defendants'
22 | contention that evidence of late or missed breaks would be unfairly prejudicial, confuse the issues,
23 | mislead the jury, and waste time.

24 | As an initial matter, the Court finds that evidence of late or missed breaks would provide
25 | limited probative value to Plaintiffs' on-call break claim.  The Court, however, agrees with
26 | Defendants that missing a break or receiving a late break is not necessarily tantamount to being

27 |
28 | [4] The Court certified certain derivative claims because they are premised on Plaintiffs' on-call break claim.  Doc. No. 163 at 29-30.  These derivative claims include claims for overtime, minimum wage, failure to compensate for all hours worked, accurate itemized wage statements, failure to pay wages when due, and unfair competition.

1    on-call.  For example, an employee who is provided a 30-minute lunch break 10 minutes late is

2    not necessarily on-call if the lunch break he eventually received is free of work duties and his

3    employer's control.  Such a 30-minute lunch break would simply be late, not on-call.

4         The Court further agrees with Defendants that the limited probative value of the challenged

5    evidence is substantially outweighed by dangers of unfair prejudice, confusion of the issues,

6    misleading the jury, and wasting time.  Fed. R. Evid. 403.  As stated above, Plaintiff's only

7    certified claim is their on-call break claim and derivative claims.  Requiring Defendants to defend

8    themselves against non-asserted claims would be prejudicial and may give the jury the impression

9    that Defendants are liable for matters unrelated to on-call breaks.  Furthermore, if testimony is

10   given, for example, that Leprino provided class members with late breaks, then the parties may

11   have to delve into stacks of time punch records and other evidence to determine if the breaks were

12   actually late.  Such a course would lead to separate mini-trials, confuse the issues, mislead the

13   jury, and waste time.[5]

14        However, with respect to the "Written On-Duty Meal Agreement" exhibits, the Court will

15   not exclude them because they are relevant to the issue of whether class members were subjected

16   to an on-call break policy.  Although the above agreements appear to have been executed in 2006,

17   2009, and 2010, which all precede the class period's beginning date in 2013, they are not so stale

18   so as to make them irrelevant.  There is also no evidence in the record that any signatory revoked

19   this agreement before the start of the class period.  For example, the agreements state "I

20   understand that I may, in writing, revoke this agreement at any time," but no such revocation "*in*

21   *writing*" has been presented to the Court, even though they should be in Defendants' possession,

22   custody, or control if they exist.  Moreover, as Plaintiffs argue, the fact that these agreements

23   existed supports the inference that an on-call policy existed and might still exist.  Any prejudice

24   _____

[5] To be clear, the Court is not holding that employees/class members cannot testify regarding the existence of an "on-
25   call" policy, including how such a policy was applied to them.  For example, an employee can testify that while he
was supposed to take a break, he instead had to spend the entirety of the break speaking with his supervisor regarding
26   work related matters; or that an employee's break was interrupted by a supervisor regarding work related matters.
Both of these examples may reflect the existence of an on-call policy.  Thus, employees can testify regarding
27   experiences that demonstrate an "on-call" policy.  They cannot simply testify that they missed breaks or took late
breaks.  To avoid potential confusion, a limiting instruction may be appropriate.  As an example only: "The testimony
28   you are about to hear is to be considered for the limited purpose of determining whether Leprino has an unwritten
policy that requires it employees to remain "on-call" or under Leprino's control during break periods."

7

these documents may bring to Defendants can be addressed through cross examination and contrary evidence.  Therefore, in light of the above, the Court will grant in part and deny in part Defendants' motion.

*Ruling*

As discussed above, Defendant's third motion in limine is granted in part and denied in part.

## III.   Motion 4 – References to Group Leaders as Supervisors

*Defendants' Argument*

Defendants move to exclude Plaintiffs, Plaintiffs' witnesses, and Plaintiffs' attorneys from introducing or referencing any evidence referring to "Group Leaders" as "Supervisors," as having "supervisory authority," or as having "supervised" other employees.  According to Defendant, referring to Group Leaders as Supervisors in any capacity likely would lead the jury to mistakenly conclude that Group Leaders exercise the same authority over hourly employees as Supervisors exercise, and that the actions and statements of Group Leaders are attributable to Leprino when in fact they do not.  Defendants assert that allowing such evidence would confuse the issues, mislead the jury, and be unfairly prejudicial under Fed. R. Evid. 403.

*Plaintiffs' Argument*

Plaintiffs oppose Defendants' motion on the ground that job titles do not determine an employee's status and that the appropriate focus should be on the employee's actual job duties.  According to Plaintiffs, employees with the title "Group Leader" had supervisory authority and job duties that made them functionally equivalent to Supervisors.  For example, like Supervisors, Group Leaders were issued radios and played a role in scheduling.  Plaintiffs further assert that Leprino authorized Group Leaders to perform supervisory duties in furtherance of Leprino's facility-wide on-call policy.

*Discussion*

The Court agrees with Defendants that referring to a Group Leader as having the job title "Supervisor" when he or she did not actually have that official title would be improper.  Such a

reference would be untrue and thus not probative to Plaintiffs' on-call break claim, and it would confuse the issues, mislead the jury, and be unfairly prejudicial to Leprino. Therefore, Plaintiffs may not ascribe the job title "Supervisor" to any individual who did not have that official title.

However, excluding all references to Group Leaders as having "supervisory authority" or as having "supervised" other employees is another matter because based on their job duties and functions, Group Leaders may still qualify as agents of Leprino who exercised sufficient control over the work of class members. While Defendants note that Leprino's Supervisors have distinct responsibilities from Group Leaders in that they "oversee Departments" and "have authority to issue discipline," Doc. No. 275 at 4, Group Leaders may still perform other work duties and responsibilities that amount to having supervisory authority.[6] Defendants also appear to acknowledge in their tenth motion in limine that Group Leaders have interests deriving from their work duties and responsibilities that are closer aligned with those of Supervisors than with ordinary class members. Therefore, the Court will not exclude testimony that Group Leaders had authority to "supervise" other class members in the common sense because that could have been the case. If Defendants believe that a Group Leader lacked this authority, then they may voice objections and present contrary evidence at trial.

*Ruling*

As discussed above, Defendant's fourth motion in limine is granted in part and denied in part.

**IV.   Motion 5 – Leprino's Operations at Any Facility Other Than Lemoore West**

*Defendants' Argument*

Defendants move to exclude any evidence concerning Leprino's operations at any other Leprino facility. According to Defendants, such evidence is irrelevant, unfairly prejudicial, and likely to confuse the jury and waste time.

---

[6] For example, Group Leaders might exercise control over class members' work schedules and inter- and intra-group communications.

1     *Plaintiffs' Argument*

2        Plaintiffs oppose Defendants' motion on the ground that evidence of Leprino's similar bad

3 acts at its Lemoore East and Tracy facilities is relevant to show that Leprino had a company-wide

4 on-call policy across all of its facilities in California.  Plaintiffs also argue that the challenged

5 evidence is relevant to establish Leprino's pattern and practice of violating California's wage-and-

6 hour laws.

7     *Discussion*

8        Under Fed. R. Evid. 404(b), evidence of prior crimes, acts, or wrongs is not admissible to

9 prove the character of the accused in order to show action in conformity therewith.  United States

10 v. Howell, 231 F.3d 615, 628 (9th Cir. 2000).  However, evidence of prior crimes, acts, or wrongs,

11 can be admitted if it is offered to prove motive, opportunity, intent, preparation, plan, knowledge,

12 identity, or absence of mistake or accidence.  Id.  For prior bad acts to be admissible under Fed. R.

13 Evid. 404(b), they must be "based on sufficient evidence."  Id. (citing United States v. Houser,

14 929 F.2d 1369, 1373 (9th Cir. 1990)).

15        Here, in addition to the present lawsuit involving Leprino's Lemoore West facility,

16 lawsuits have been filed against Leprino involving its Lemoore East and Tracy facilities in

17 California.  While Plaintiffs are correct that similar on-call break claims were certified in those

18 cases, the Court did not rule on the merits of those certified claims.  See Howell v. Leprino Foods

19 Co., 2022 U.S. Dist. LEXIS 52796, *36 (E.D. Cal. Mar. 22, 2022); Perez v. Leprino Foods Co.,

20 2021 U.S. Dist. LEXIS 2165, *50-51 (E.D. Cal. Jan. 6, 2021).  Therefore, the evidence offered to

21 show that Leprino committed prior bad acts is limited because the fact-finder in those cases might

22 still determine that no such on-call policy existed at those facilities.  The probative value of these

23 alleged bad acts by Leprino is therefore also limited.

24        Moreover, presenting such evidence to the jury would also cause unfair prejudice, confuse

25 the issues, mislead the jury, and waste time.  Such evidence is susceptible to being used to suggest

26 that Leprino acted at its Lemoore West facility consistently with the "bad acts" it allegedly did at

27 its Lemoore East and Tracy facilities when that may not be true.  If such evidence is presented,

28 Defendants would have to spend significant time explaining to the jury why certification of a

claim is not a ruling on the merits and why they should not consider the acts of Leprino at its other

facilities.  The risk of confusing the issues and misleading the jury is substantial.  Further,

accepting evidence of activities that occurred at two separate Leprino facilities would almost

certainly result in a mini-trial, particularly since the questions that the jury must answer relate only

to the Lemoore West facility.  Therefore, Defendants' fifth motion in limine will be granted.

*Ruling*

Defendant's fifth motion in limine is granted.

## V.    <u>Motion 6 – Other Litigation Involving Defendants</u>

*Defendants' Argument*

Defendants move to exclude Plaintiffs, Plaintiffs' witnesses, and Plaintiffs' attorneys from

introducing or referencing any evidence concerning any other litigation in which Leprino, or

Leprino's managing agents, have been or are involved.  According to Defendants, such evidence is

irrelevant, unfairly prejudicial, and likely to confuse the jury and waste time.

*Plaintiffs' Argument*

Plaintiffs oppose Defendants' motion on the ground that evidence of other litigation

involving Leprino is relevant to show that Leprino has a corporate-wide on-call policy of placing

employees on-call across all of its facilities in California.  Plaintiffs further assert that the

challenged evidence is relevant to establish Leprino's pattern and practice of violating California's

wage-and-hour laws.

*Discussion*

For the same reasons discussed in the Court's order on Defendants' fifth motion in limine

above, the Court will grant Defendants' sixth motion in limine.  No facts have been determined

with respect to other Leprino facilities, and to permit evidence of events at the other facilities

would be unduly confusing, misleading, and likely result in an unnecessary mini-trial related to

non-Lemoor West facilities.

*Ruling*

Defendant's sixth motion in limine is granted.

1

2     **VI.    Motion 7 – Defendants' Financial Condition**

3          *Defendants' Argument*

4          Defendants move to exclude Plaintiffs, Plaintiffs' witnesses, and Plaintiffs' attorneys from

5     introducing or referencing any evidence concerning the financial condition of Leprino, its

6     solvency or ability to pay a verdict or satisfy judgment, and evidence or references to "punishing"

7     Leprino or "sending a message."  According to Defendants, Leprino's financial condition is not

8     relevant to Plaintiffs' on-call break claim or claim for damages.  Additionally, statements to the

9     jury to "punish" or "send a message" to Defendants would be improper because punitive damages

10    are not recoverable in this case.  Furthermore, Defendants argue that evidence concerning

11    Leprino's financial condition would be unfairly prejudicial because it may lead jurors to think that

12    a large corporation is more culpable than a smaller one, or that Leprino likely put profit over

13    people.

14         *Plaintiffs' Argument*

15         Plaintiffs oppose Defendants' motion on the ground that Leprino's financial condition is

16    relevant to prove the motive behind the implementation of Leprino's on-call policy.  Specifically,

17    Plaintiffs argue that the challenged evidence is admissible under Fed. R. Evid. 404(b) because it

18    will show that Defendants were aware that they were profiting from the class members who had to

19    work during their breaks.  Further, Plaintiffs assert that the evidence is probative to Defendants'

20    intent and efforts to exceed their financial agenda.  According to Plaintiffs, evidence of

21    Defendants' financial condition will put into context the reasons why Leprino engaged in a pattern

22    and practice of putting class members on-call during breaks.

23         *Discussion*

24         Under Fed. R. Evid. 404(b), "[e]vidence of any other crime, wrong, or act" can be admitted

25    if it is offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or

26    absence of mistake or accidence.  Id.  For prior bad acts to be admissible under Fed. R. Evid.

27    404(b), they must be "based on sufficient evidence."  Id. (citing United States v. Houser, 929 F.2d

28    1369, 1373 (9th Cir. 1990)).

Here, Plaintiffs do not identify any "other crime, wrong, or act" when Leprino's financial condition was used to perform a "bad act."  Therefore, it is unclear how Leprino's financial condition solely in the abstract can establish that Leprino had a motive as Plaintiffs suggest. Additionally, Plaintiffs do not address Defendants' contention that while Leprino's financial condition might be relevant to a claim for punitive damages, Plaintiffs and the class cannot recover punitive damages in this matter.  See Brewer v. Premier Golf Props., LP, 168 Cal. App. 4th 1243, 1252-56 (2008); In re Wal-Mart Stores, Inc., 505 F. Supp. 2d 609, 621 (N.D. Cal. 2007). Therefore, the Court finds that evidence of Leprino's financial condition provides no probative value to Plaintiffs' on-call break claim.

Evidence of Leprino's financial condition would also present dangers of prejudicing Defendants and misleading the jury.  Leprino's financial condition might lead the jury to tilt toward finding Defendants liable not because they actually violated the law, but because they can presumably afford to pay damages.  Additionally, Leprino's financial condition could inflame the jury into improperly believing that Leprino unconditionally prioritizes big profits over the welfare of its employees.  Therefore, in light of the above, the Court will exclude Plaintiffs from presenting evidence of Leprino's financial condition.

Furthermore, the Court will grant Defendants' request to exclude statements to the jury that they should "punish" or "send a message" to Leprino.  Because Plaintiffs' claim is not eligible for punitive damages, it would be improper for Plaintiffs to express the above statements to the jury.  Escobar v. Nev. Helicopter Leasing LLC, 2016 U.S. Dist. LEXIS 95186, *4 (D. Haw. July 21, 2016).  Such testimony would be unfairly prejudicial to Defendants because it could inflame and bias the jury.  Therefore, the Court will exclude statements to the jury that they should "punish" or "send a message" to Leprino.

*Ruling*

As discussed above, Defendant's seventh motion in limine is granted.

**VII.   Motion 8 – Hearsay Evidence in Witness Declarations, Deposition Transcripts, Text Messages, and Counseling Forms**

1    *Defendants' Argument*

2        Defendants move to exclude all hearsay statements in the text message screen shot photos

3    and counseling forms that Plaintiffs are expected to present at trial.  Defendants assert that these

4    materials are out-of-court statements offered to show the truth of the statements received by class

5    members, and that no hearsay exception applies.

6    *Plaintiffs' Argument*

7        Plaintiffs oppose Defendants' motion on the ground that the counseling forms are

8    admissible business records and that the text message screen shot photos are admissible present

9    sense impressions, recorded recollections, and admissions of a party opponent.

10    *Discussion*

11        Defendants' eight motion in limine requests exclusion of the declaration and deposition

12    materials that Plaintiffs intend to present at trial.  Because the Court previously addressed this

13    portion of Defendants' motion in a prior order, see Doc. No. 341, the Court will limit its review of

14    Defendants' motion in limine to the abovementioned text message screen shot photos and

15    counseling forms.

16        With respect to the text message screen shot photos, there is no dispute that these materials

17    are relevant to Plaintiffs' on-call break claim.  Defendants also do not argue that these materials

18    should be excluded under Fed. R. Evid. 403.  Instead, Defendants argue that these materials are

19    hearsay with no applicable hearsay exception.  Although the Court agrees with Defendants that

20    some of the text messages are hearsay if they are offered to prove the truth of what is stated in the

21    text messages, a wholesale exclusion of the text message screen shot photos would be premature

22    because they might be offered for non-hearsay purposes and a hearsay exception might apply

23    depending on the context in which the evidence is introduced.  Therefore, the Court will decline to

24    exclude the text message screen shot photos, but Defendants may renew their objections if

25    Plaintiffs seek to introduce these materials at trial.

26        Finally, with respect to the counseling forms, there is no dispute that these materials are

27    relevant to Plaintiffs' on-call break claim, and Defendants do not argue that these materials should

28    be excluded under Fed. R. Evid. 403.  The parties appear to agree that these materials are hearsay,

but they dispute whether the business records hearsay exception applies under Fed. R. Evid.

803(6).  Defendants specifically argue that this exception does not apply because Plaintiffs have

not established that these materials were made by, or from information transmitted by, someone

with knowledge of the events described in the counseling forms at or near the time of the events

described.  Doc. No. 322 at 5.  The Court disagrees.  Plaintiffs specifically provide that the

counseling form was made at or near the time of the work incident by Plaintiff Hefke's supervisor.

Therefore, the Court will allow Plaintiffs to present the counseling form at trial so long as they lay

the proper foundation that Plaintiff Hefke's supervisor made the document.  If Plaintiffs fail to lay

this foundation, then Defendants may renew their objections.

*Ruling*

As discussed above and in the Court's order on Defendants' renewed motion for class

decertification (Doc. No. 341), Defendant's eighth motion in limine is denied without prejudice.

**VIII.**    **Motion 9 – Bifurcation into Liability Phase and Damages Phase**

*Defendants' Argument*

Defendants move the Court to bifurcate the trial into a liability phase and damages phase

under Fed. R. Civ. Pro. 42(b).  According to Defendants, such a bifurcation would make the trial

more efficient because resolution of Plaintiffs' liability theory could be dispositive of the entire

case and eliminate the need to try damages issues.  Bifurcation would also preserve Leprino's due

process rights by allowing it to assert individualized defenses to damages claims.  Furthermore,

Defendants argue that bifurcation would not require replication of testimony or evidence because

the liability phase would focus on common proof and evidence while the damages phase would

focus on individualized testimony and evidence.  Plaintiffs' expert reports are also well suited for

bifurcation because one report concerns liability while the other report concerns damages.

*Plaintiffs' Argument*

Plaintiffs oppose Defendants' motion on the ground that bifurcation will not expedite or

economize the resolution of the case but will rather prolong the case because all the evidence

presented in the liability phase will have to be presented again in the damages phase.

1  Additionally, if the jury is different in each phase, then bifurcation risks creating inconsistent jury

2  findings.  Moreover, Plaintiffs argue that Defendants' motion is an improper attempt to separate

3  the damages portion of the case into a separate phase so that Defendants can undermine the

4  manageability of the trial by calling every single class member to the stand.

5       *Discussion*

6       Fed. R. Civ. Pro. 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite

7  and economize, the court may order a separate trial of one or more separate issues, claims,

8  crossclaims, counterclaims, or third-party claims."  A district court has "broad discretion" to

9  bifurcate a case under Rule 42(b), thereby deferring costly and possibly unnecessary proceedings.

10  Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004).  "Rule 42(b)

11  merely *allows*, but does not require, a trial court to bifurcate cases 'in furtherance of convenience

12  or to avoid prejudice.'"  Id. at 1021 (citing Fed. R. Civ. Pro. 42(b)) (emphasis in original).

13       Generally, courts bifurcate the issues of liability and damages in wage and hour Labor

14  Code cases.  E.g. Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1167 (9th Cir. 2014); Ruiz v. XPO

15  Last Mile, Inc., 2016 U.S. Dist. LEXIS 152095, *33 (S.D. Cal. Feb. 1, 2016); Campbell v. Best

16  Buy Stores, L.P., 2014 U.S. Dist. LEXIS 190308, *38 (C.D. Cal. Aug. 15, 2014).  In this case,

17  Plaintiffs' theory of liability is that the class was exposed to a policy that did not provide any

18  employee with a break that was free of Leprino's control, irrespective of whether an employee was

19  actually interrupted.  On this theory, the amount of individualized damages would appear to be

20  limited in terms of issues for the jury to decide.  If the jury determines that Leprino did in fact

21  have an unwritten "on-call" policy throughout the entire class period or only a portion of it, then

22  the only damages related question for Plaintiffs would appear to be how many improper break

23  periods the class-members were subjected to during that period.  Plaintiffs expert Brian Kriegler's

24  damages report provides a method that calculates, for example, principal damages and pre-

25  judgment interest by having the fact finder determine what percent of shifts over 6 hours during

26  the class period failed to provide compliant rest periods, and then multiply that percentage with the

27  principal damage and pre-judgment interest figures provided in his report.  See Doc. No. 291-2 at

28  213-14.  For example, if the fact finder determines that "Class Members were not authorized and

permitted to take a compliant rest period in 70 percent of shifts over 6 hours" during the class period, then according to Kreigler, the principal damage and pre-judgment interest total would amount to $30,569,668.31.  Doc. No. 291-2 at 214.  This amount would change depending on the percentage multiplier found by the fact finder.[7]

With respect to Leprino, however, other damages issues exist in the form of affirmative defenses.  Kriegler's damages report acknowledges Leprino's potential affirmative defenses in his damages calculation model.  Specifically, his report states "all break premium payments that the employee already received" for a given weekly pay period will be subtracted from the principal damages figures for meal period and rest period violations.  Doc. No. 291-2 at 212, 250. Defendants also represented at oral argument that they intend to challenge Kriegler's damages calculation model through cross examination, testimony of their rebuttal expert Stefan Boedeker, presentation of contrary evidence such as witness testimony, and presentation of evidence that some class members are entitled to no damages.  For example, Boedeker's report opines that Kriegler failed to offer any opinions about what the percentage multiplier is and how the fact finder can reach it.  Doc. No. 291-2 at 66.  Additionally, Boedeker asserts that even if Kriegler's method was applicable, the percentage multiplier should be zero—i.e., no portion of the class period failed to provide compliant break periods for shifts over 6 hours—when Leprino's premium pay policy is fully taken into account.  With these considerations in mind, the Court will follow

---

[7] Although the parties have not briefed this issue, the Court's understanding of the "percentage multiplier" used in Kreigler's expert report is that if an on-call policy is found to have existed during a portion of the class period, then every break period during that portion of time was an on-call break period.  Thus, for example, if the fact finder determines that an on-call policy existed during only the first three years of the seven-year class period, then the percentage multiplier would be approximately 43% and every break during that three-year period would be considered an on-call break.  The 43% figure would *not* mean that some breaks were on-call and some were not on-call during the same year for each year throughout the seven-year class period.  In other words, at any given time there was either a facility-wide on-call policy or no facility-wide on-call policy at all.  This approach makes sense and is consistent with the law.  Just because one class member consented to being "on-call" or was not actually "called" during a break does not mean that an on-call policy and no on-call policy existed throughout the facility at the same time.  A facility-wide on-call policy may still exist even if a class member's experiences during breaks were different than those of others. See Ruiz v. XPO Last Mile, Inc., 2016 U.S. Dist. LEXIS 152095, *30-31 (S.D. Cal. Feb. 1, 2016); see also Williams v. Superior Court, 221 Cal. App. 4th 1353, 1370 (2013) ("[C]lass treatment does not require that all class members have been equally affected by the challenged practices—it suffices that the issue of whether the practice itself was unlawful is common to all.").  On the other hand, if the experiences of class members demonstrate to the jury that no facility-wide on-call policy existed during a period of time, then a class member's instance of being on-call during that time period would not mean that a facility-wide on-call policy existed.  Therefore, the purpose of the jury in the damages phase, according to Plaintiffs' damages model, would be to determine what portion of the class period had a facility-wide on-call policy.

1  the general rule and bifurcate liability from damages so that the above damages issues may be

2  addressed in a separate phase.[8] <u>Jimenez</u>, 765 F.3d at 1167; <u>Ruiz</u>, 2016 U.S. Dist. LEXIS 152095,

3  at *33; <u>Campbell</u>, 2014 U.S. Dist. LEXIS 190308, at *38.

4      *Ruling*

5      Defendants' ninth motion in limine is granted.

6

7  **IX.**    **Motion 10 – Exclusion of Supervisors and Group Leaders from Class**

8      *Defendants' Argument*

9      Defendants move to exclude all individuals from the class who held the position of

10  Supervisor or Group Leader at Leprino's Lemoore West facility at any time during the class

11  period.  According to Defendants, some of the class members had a team leader position called

12  "Group Leader" or stopped being hourly, non-exempt employees after they were promoted to

13  salaried, supervisory positions.  Defendants assert that these individuals should be excluded from

14  the class because they participated in the challenged behavior by Leprino and thus their interests

15  may be in conflict with the other class members.

16      *Plaintiffs' Argument*

17      Plaintiffs oppose Defendants' motion on the ground that being promoted does not mean

18  that a class member's past hourly-employee time should be eliminated or that they no longer have

19  a claim in this case.  Plaintiffs also argue that Defendants' motion is an attempt to deflect liability

20  onto the Supervisors and Group Leaders, even though Leprino was ultimately responsible for the

21  on-call policy.  Moreover, Plaintiffs assert that some of the class members merely "covered" as a

22  Group Leader on a temporary basis and, therefore, were not actually Group Leaders.

23      *Discussion*

24      Defendants previously argued that the defined class was improper because "the inclusion

25  in the proposed class of individuals to whom the plaintiffs assign blame for allegedly unlawful

26  conduct creates a potential conflict of interest."  Doc. No. 120 at  58.  Specifically, Defendants

27

28  [8] The Court notes that an instruction, stipulation, or **limited** read backs of testimony may be used to highlight specific liability evidence that may be relevant to damages.

asserted that "Plaintiffs in the instant case assign responsibility for much of the alleged unlawful activity to group leaders, who are hourly employees in the proposed class," and that "Plaintiffs cite to multiple putative class member declarations allegedly evidencing unlawful conduct by group leaders pertaining to meal and rest break violations."  According to Defendants, this created "a direct conflict of interest" because "Plaintiffs have assigned partial responsibility for wage and hour violations to them. Yet they simultaneously seek to represent those group leaders as members of the putative class."  Id. at 58-59.  The Court rejected this argument and stated:

> [Plaintiffs'] primary interests are, first, proving that Leprino's policies—and not the team managers—violated California's wage-and-hour laws and, second, recovering restitution and penalties from Leprino—not from the team managers. Despite Leprino's contention to the contrary, Plaintiffs' primary interests do not conflict with the interests of the team managers, who are putative members of the class. Simply because the team managers implemented Leprino's allegedly unlawful policies does not mean, as Leprino contends, that Plaintiffs "have assigned partial responsibility for wage and hour violations to [the team managers]." There is no indication that Plaintiffs are placing legal blame on the team managers' shoulders. This is not surprising because there is no indication that the team managers were responsible for creating Leprino's facility-wide policies. Plaintiffs are advancing claims that attack Leprino's facility-wide policies, and those policies allegedly violated the team managers' employment rights in the same way that they affected the rights of Plaintiffs and the rest of the class. Thus, it is not evident to the Court that Plaintiffs are conflicted with the team managers.

Doc. No. 163 at 18-19 (internal citations omitted).

Defendants acknowledge that "the Court considered [this] conflict issue" and still certified the class.  Doc. No. 324 at 2.  In their current motion, however, they argue that a conflict between the class members exists because supervisors—and again group leaders—are included in the defined class even though Plaintiffs have assigned partial responsibility for much of the alleged unlawful activity to supervisors—and again group leaders.  Although the Court agrees with Defendants that any class member who was promoted to a salaried, supervisory position no longer falls under the definition of the class, these individuals may still qualify as class members if the time they spent as hourly, non-exempt employees fell within the class period.  Furthermore, the inclusion of these individuals in the class does not necessarily create a conflict that warrants their wholesale exclusion from the class.  Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 606 (C.D. Cal. 2015) ("There is no per se rule that the presence of supervisory and nonsupervisory employees in a proposed class creates a conflict of interest.") (citing Staton v.

19

_Boeing Co._, 327 F.3d 938, 958 (9th Cir. 2003)).  Under the circumstances of this case, it is not evident to the Court that Plaintiffs are conflicted with the team managers or supervisors, given that Plaintiffs' "primary interests are, first, proving that Leprino's policies," and not the supervisors or team managers, "violated California's wage-and-hour laws," and "second, recovering restitution and penalties from Leprino," not from the supervisors or team managers.  See Doc. No. 163 at 18; see also Pena v. Taylor Farms Pac., Inc., 305 F.R.D. 197, 215 (E.D. Cal. 2015) (finding no adequacy-conflict where the employer's policies universally affected all members of the class, including supervisors who implemented the policies but were also putative members of the class).  The challenged policies allegedly violated the employment rights of all non-exempt hourly employees during the class period regardless of whether some individuals were later promoted to salaried supervisory positions.  Any concern that shifts worked as supervisors will be included in the damages calculations is also unfounded because Plaintiffs will only include the shifts they worked as hourly employees during the class period.  Doc. No. 313 at 10.  Accordingly, the Court need not exclude from the class all individuals who held the position of Supervisor or Group Leader at any time during the class period.

_Ruling_

Defendant's tenth motion in limine is denied.


**X.   Evidence Lacking Foundation and Personal Knowledge or Consisting of Improper Opinions and Speculation**

_Defendants' Argument_

Defendants move to exclude all testimony and documentary evidence that lack foundation and personal knowledge.  Some examples of this challenged testimony and evidence include statements by witnesses that they heard workers in the breakroom called and instructed to call their supervisors.  Defendants argue these statements and testimony should be excluded because those witnesses lack knowledge of what was actually said, who said them, whether those in the breakroom were actually on break, and how long they were in the breakroom.  Other example evidence lacking in foundation include certain screen shot photos of text messages because they

do not include the date and/or time of the texts, identify the sender, or reflect the entire text exchange.  Furthermore, Defendants contend that all testimony and documentary evidence that consist of subjective opinions and speculation should be excluded.  Some examples of the challenged testimony and evidence include statements by class members that they could be disciplined if they did not meet production targets or respond to work-related questions during breaks.  Defendants argue that all the above testimony and evidence should be excluded because they are irrelevant and would confuse the jury and be unfairly prejudicial.

*Plaintiffs' Argument*

Plaintiffs oppose Defendants' motion on the ground that it fails to specify what it is trying to exclude.  Additionally, Plaintiffs oppose Defendants' attempt to characterize certain class member testimony as inadmissible speculation.  According to Plaintiffs, certain class member testimony regarding Leprino's disciplinary measures and retaliation for not responding to work-related inquires during breaks is not speculative but rather helpful to determining Leprino's on-call policy.  Plaintiffs further argue that some of the challenged evidence is admissible as an opposing party's statement, a declarant's prior statement, and a recorded recollection.  Furthermore, Plaintiffs assert that their class member witnesses may describe what they saw or heard and what they observed their fellow co-workers do in the breakroom.  Plaintiffs also argue that the challenged text message evidence was sufficiently authenticated.

*Discussion*

Defendants identify three categories of testimony that they seek to exclude: (1) testimony that lacks foundation and personal knowledge, (2) testimony that is speculative, and (3) testimony that lacks proper foundation and authentication.  The Court will address each category below.

1.  Testimony that Lacks Foundation and Personal Knowledge

Defendants argue that Plaintiffs' class member witnesses should be excluded from testifying about their fellow class members' on-call experiences.  Doc. No. 282 at 4.  Defendants provide three examples statements that fall within this category: (1) Ray Lopez's declaration that "[w]hile taking meal breaks in [the main break room] I have heard workers called over the intercom system and instructed to call their supervisor," Doc. No. 282 at 3 (citing Doc. No. 116-7

at 39, ¶ 11); (2) Alburt Alvarez's declaration that "I have seen many Leprino workers called over the intercom system and I will hear a Supervisor's voice that I have recognized instructing the worker to call them at an extension. I then see the workers immediately go to the phone and make a call," id. at 3-4 (citing Doc. No. 116-7 at 5, ¶ 5); and (3) Sergio de la Torre's declaration that "I take my meal and rest breaks in the break room . . . Sometimes the phone rings when I am in the break room and I will hear a person pick it up and announce that, for example, Group Leader on the phone. I will observe the worker called go over and start discussing work with the person calling them." Id. at 4 (citing Doc. No. 116-7 at 17, ¶ 6).

Defendants argue that all statements like the above lack foundation and personal knowledge because they do not (a) declare what was actually said over the intercom; (b) identify anyone who they heard call any employee in the break room over the intercom; (c) identify any employee whom they heard called over the intercom; (d) declare that any employee who was called over the intercom while in the break room was actually on a meal or rest break; or (e) declare how long any employee had been in the break room before they heard them being called over the intercom.  In response, Plaintiffs assert that these statements were made based on what the witnesses saw, heard, and otherwise experienced through their own senses.  Fed. R. Evid. 602. Plaintiffs further argue that the above statements are admissible as opposing party statements, prior witness statements, former testimony, and recorded recollections.

A class member witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony," id., and personal knowledge "may consist of what the witness thinks he knows from personal perception." Id. advisory committee's note.  A witness who testifies to a fact which can be perceived by the senses "must have had an opportunity to observe, and must have actually observed the fact."  Id. Personal knowledge may also be "inferred from a declarant's position."  Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1075 (9th Cir. 2000) (citing Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (CEO's personal knowledge of various corporate activities could be presumed)).

1    Rule 602 "does not govern the situation of a witness who testifies to a hearsay statement as

2    such, if he has personal knowledge of the making of the statement." Id.  In other words, "Rule

3    602 requires that a witness have personal knowledge of what he is testifying to (i.e., that he heard

4    Mr. X make the hearsay statement)." Gatx/Airlog Co. v. Evergreen Int'l Airlines, 2001 U.S. Dist.

5    LEXIS 27950, *24 n.9 (N.D. Cal. Jan. 3, 2001).  However, this rule would "prevent him from

6    testifying to the subject matter of the hearsay statement, as he has no personal knowledge of it."

7    Fed. R. Evid. 602 advisory committee's note.  If the witness merely has personal knowledge of an

8    out-of-court statement offered to prove the fact asserted in that statement—but not the underlying

9    fact—then his or her testimony must comply with the hearsay rule.  United States v. Gutierrez de

10   Lopez, 761 F.3d 1123, 1132 (10th Cir. 2014).

11   Here, under Rule 602, Plaintiffs' class member witnesses may testify that they were in the

12   break room and that they heard calls made over the intercom system, phone, or radio if they

13   actually observed/heard those facts.  They may also testify that they heard those calls instructing a

14   class member to call a supervisor if they actually observed/heard those facts.  Such testimony

15   would not be hearsay because they qualify as an opposing party's statement under Fed. R. Evid.

16   801(d)(2).  Specifically, they are statements "offered against [Leprino]" and "was made by

17   [Leprino's] agent or employee on a matter within the scope of that relationship and while it

18   existed." Id.  Although the class member might not have personal knowledge of the identity of the

19   specific caller, it is reasonable to infer that the caller was authorized by Leprino to use the speaker

20   and make the statements.  There is no evidence that non-employees could make calls over

21   Leprino's communication devices or that those calls were not made within the scope of their

22   employment relationship while it existed.  Therefore, Plaintiffs' class member witnesses may

23   testify regarding their firsthand observations of calls being made over Leprino's communications

24   systems instructing a class member to call a supervisor during a break.[9]

25

26   _____

27   [9] The specific points made by Leprino about what the class members did not describe, e.g., who was on the intercom
     or how long the employees were in the breakroom, may be the subject of cross-examination.  That a class member
     may not know the answer to those specific points affects the weight of the testimony, but it does not affect personal

28   knowledge or foundation for those instructions.  The fact remains that the class member actually heard the instructions
     on the speaker system and saw fellow class-members respond to the instructions.

1      2.  <u>Testimony that is Speculative</u>

2      Defendants identify two statements as being speculative opinion testimony: (1) Angel

3  Olivarez's answer "yes" to the question "could you be disciplined [for not making a production

4  target]," Doc. No. 282 at 5 (citing Doc. No. 117-1 at 305); and (2) Fili Monzon's declaration that

5  "I too have been contacted with work related questions during my meal and rest breaks and have

6  always answered them. This is because there is a lot of retaliation at Leprino, and I never felt that I

7  could without fear of getting retaliated against by supervisory personnel, ignore a work related

8  question, or refuse to discuss work on my meal and rest breaks." <u>Id.</u> at 6 (citing Doc. No. 116-7 at

9  51, ¶ 9).

10      "Rule 701 allows a lay witness to offer opinions that are (a) 'rationally based on the

11  witness's perception,' (b) 'helpful' to the jury, and (c) 'not based on scientific, technical or other

12  specialized knowledge within the scope of' expert testimony." <u>United States v. Holguin</u>, 51 F.4th

13  841, 865 (9th Cir. 2022) (citing <u>United States v. Gadson</u>, 763 F.3d 1189, 1206 (9th Cir. 2014)).

14  Under Rule 701, a witness "may not 'testify based on speculation, rely on hearsay, or interpret

15  unambiguous, clear statements.'" <u>Id.</u> (citing <u>United States v. Perez</u>, 962 F.3d 420, 435 (9th Cir.

16  2020)). Lay opinion testimony is admissible only if a foundation is laid indicating that the opinion

17  was "rationally based on the witness's perception." <u>Id.</u>

18      Here, with respect to Olivarez, the Court finds that his testimony regarding his fear of

19  getting disciplined for not meeting a production target is not speculative. The record indicates that

20  Olivarez worked in Leprino's processing department between 2013 and 2017. Doc. No. 117-1 at

21  305. He testified that he had production targets to produce "roughly, 32 to 38,000 pounds an

22  hour," and if he did not meet that target, he would "hear about it" and could be disciplined and

23  fired. <u>Id.</u> at 304-305. This testimony was rationally based on his perception and experiences as a

24  Leprino employee. Therefore, Olivarez's testimony regarding his fear of getting disciplined for not

25  meeting a production target is not unduly speculative. However, the Court has concerns regarding

26  the relevance of this testimony. Given that it is not uncommon for factory workers to have

27  obligations to meet production quotas, it is unclear how having to satisfy a production quota in

28  itself is probative to whether class members were on-call at Leprino's Lemoore West facility. If

24

Plaintiffs move to introduce this testimony at trial, they should be prepared to explain its relevance.

With respect to Monzon, the Court finds that his testimony regarding his fear of getting disciplined for not responding to work related questions during breaks was speculative.  The record indicates that Monzon has worked in Leprino's block packaging department since 2003.  Doc. No. 116-7 at 51.  He testified that he is responsible for the proper operation of his machine throughout his shift and that if anything goes wrong with his machine, he will be held accountable.  Id. at 51-52.  Monzon further testified that he was contacted with work related questions during his breaks in the breakroom, and that he always answered those questions due to fear of getting disciplined for not responding.  Id.  However, aside from conclusory statements that "there is a lot of retaliation at Leprino" and that he never felt he could ignore a work-related question during breaks "without fear of getting retaliated against by supervisory personnel," id., Monzon does not explain any basis for his fear of getting disciplined.  For example, he does not provide any examples of him observing other class members or himself get disciplined for not responding to work-related questions during breaks.  He also does not provide any examples of him observing other class members or himself getting told that they are to follow instructions from supervisors upon pain of punishment even during their breaks.  While the Court agrees with Plaintiffs that Monzon may testify that he was contacted with work related questions during breaks and always answered them, he may not simply state that he did so due to fears of getting disciplined because that would be speculative.  In order for Monzon to testify that he was in fear of getting punished, Plaintiffs must lay a foundation that explains the basis for his fear.  Further, Monzon may not state that "there is a lot of retaliation at Leprino" because there are no facts indicating that the opinion is based on his perception of others getting disciplined, Doc. No. 282 at 6, and because use of the term "retaliation" represents an opinion of law.  See United States v. Crawford, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not . . . testify as to a legal conclusion[.]").

In conclusion, Plaintiffs' witnesses may testify about their experiences of receiving calls during their breaks regarding work-related questions or instructions, and about their manner of responding to those calls.  However, they may not state that the reason why they responded to

1 those calls was that they feared getting disciplined, unless they first provide an objective basis for

2 that fear, such as (but not limited to) firsthand accounts of getting disciplined or witnessing others

3 get disciplined, or being told or witnessing others being told that they would be disciplined, for not

4 responding to work-related questions or instructions during breaks.

5        3.  <u>Testimony that Lacks Proper Foundation and Authentication</u>

6       Defendants identify Exhibit 36 on Plaintiffs' Exhibit List as lacking proper foundation and

7 authentication.  Doc. No. 282 at 7-8 (citing Doc. No. 282-1 at 53-59).  Exhibit 36 consists of a

8 series of screen shot text messages received by Armindo Calouro.  This is the same Exhibit the

9 Court reviewed in Defendants' eighth motion in limine.  Doc. No. 279.

10       To satisfy the requirement of authenticating or identifying an item of evidence, the

11 proponent must produce evidence sufficient to support a finding that the item is what the

12 proponent claims it is.  Fed. R. Evid. 901(a).  "Testimony of a witness with knowledge" that the

13 item "is what it is claimed to be" will suffice.  Fed. R. Evid. 901(b).  Here, Exhibit 36 consists of

14 text message communications that identify the time and dates when some of the messages were

15 sent or received.  Doc. No. 282-1 at 53-59.  Some names are also included in the text messages,

16 such as "Armindo," "Brett," "Manuel," "Mindo," and "Pedro."  <u>Id.</u> at 53-57.  At his deposition,

17 Colouro testified that Exhibit 36 (which was marked as Exhibit 9 in his deposition) "is a series of

18 text messages that I have received while either on break or at home concerning work issues, work

19 questions."  Doc. No. 314-1 at 6.  This testimony by Calouro is sufficient to meet the requirement

20 of authenticating or identifying an item of evidence under Fed. R. Evid. 901(a).  Calouro also has

21 personal knowledge of sending and receiving these messages.  However, the issue of whether

22 some of the messages are hearsay, non-hearsay, or exempt from the rule against hearsay will be

23 reserved for determination at trial, as the Court stated above in its review of Defendants' eighth

24 motion in limine.

25       <u>*Ruling*</u>

26       As discussed above, Defendants' eleventh motion in limine is granted in part and denied in

27 part.

28

**PLAINTIFFS' MOTIONS IN LIMINE**

I. **Motion 1 – Trial Exhibits and Evidence Not Produced During Discovery**

*Plaintiffs' Argument*

Plaintiffs move to exclude Defendants' Expected Trial Exhibit Nos. 17, 25, 26, and any other evidence Defendants attempt to offer at trial that were not produced during discovery. According to Plaintiffs, Fed. R. Civ. Pro. 26 and 37 preclude Defendants from offering this evidence at trial because Defendants failed to produce them during discovery and that failure was not substantially justified or harmless.  Additionally, Plaintiffs argue they specifically requested and compelled production of these materials in discovery, but Defendants refused to produce them on the grounds that they were irrelevant and nonexistent.  Furthermore, Plaintiffs assert that these materials should be excluded because their probative value is substantially outweighed by unfair prejudice to Plaintiffs.  Plaintiffs also request exclusion of evidence regarding the personnel and disciplinary records of class members who will not be testifying at trial, because such evidence is irrelevant and cumulative.

*Defendants' Argument*

Defendants argue they did not fail to produce the challenged trial exhibits because they were not required to produce them in the first instance.  Specifically, at no time during pre- or post-certification discovery were Defendants ever required to produce the documents identified as Expected Trial Exhibit Nos. 17, 25, and 26.  Defendants further assert that they never conceded that Exhibit Nos. 17, 25, and 26 were irrelevant but rather objected to certain discovery requests by Plaintiffs that were worded too broadly.  Furthermore, Defendants argue that the probative value of Exhibit Nos. 17, 25, and 26 is not substantially outweighed by a risk of unfair prejudice because Defendants' discovery responses before and after certification were not unfair to Plaintiffs.

*Discussion*

Fed. R. Evid. 26(e)(1)(A) provides that a party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response "in a timely manner if the party

learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  If a party fails to provide information or identify a witness as required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This aspect of Rule 37(c) is "automatic" in that a district court may properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless.  Merchant v. Corizon Health, Inc., 993 F.3d 733, 740 (9th Cir. 2021).  "[T]he burden is on the party facing the sanction to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless."  Torres v. City of L.A., 548 F.3d 1197, 1213 (9th Cir. 2008).

Here, Plaintiffs argue that Defendants failed to disclose Exhibit Nos. 17, 25, and 26 as required by Rule 26(e) and, therefore, are barred from using those exhibits at trial.  The Court will address each Exhibit in turn below.

A.  Trial Exhibit No. 17 – Evidence of Class Member Personnel Records

Trial Exhibit No. 17 consists of individual class member personnel records including, but not limited to, all wage statements, W-2s, pay stubs, promotions, reassignments, discipline records, write-ups, memorandums about verbal warnings, and performance evaluations.  Plaintiffs claim they requested production of these materials in their Request for Production No. 90.  Doc. No. 283-2 at 42-43.  Defendants objected to this request on the grounds that it (1) was untimely as pre-certification discovery had already closed; (2) sought private information protected from disclosure by third-party privacy rights; and (3) was "overly broad and seeks documents that are not relevant to any party's claim or defense."  Id. at 43.  Plaintiffs filed a motion to compel, and on September 25, 2019, the Magistrate Judge denied Plaintiffs' motion on the ground that it was "not timely" because the discovery deadline for class certification issues had already passed.  Doc. No. 136 at 8.

Here, the Court will deny Plaintiffs' motion because they have not shown that supplementation was necessary.  Defendants' duty to supplement Plaintiffs' Request for

28

1   Production No. 90 was extinguished when the Magistrate Judge denied Plaintiffs' motion to

2   compel and in effect sustained one of Leprino's objections to the request.  Additionally, given the

3   personal nature of these items, some of them, e.g., W-2s, pay stubs, performance reviews, could

4   have "otherwise been made known" to class members and, therefore, Defendants may have had no

5   duty to produce them under Fed. R. Evid. 26(e)(1)(A).  Accordingly, the Court will deny

6   Plaintiffs' motion with respect to Defendants' Trial Exhibit No. 17.

7          B.   Trial Exhibit No. 25 – Evidence of Class Member Disciplinary Records

8          Trial Exhibit No. 25 consists of all written disciplinary records for the class members

9   during the class period relating to insubordination and/or failure to communicate with superiors

10   and failure to communicate on radio/walkie talkie during meal breaks and/or rest breaks.

11   Plaintiffs claim they requested production of these materials in their Requests for Production Nos.

12   24 and 27.  Doc. No. 283-1 at 2.  On May 21, 2018, Defendants objected to these requests on the

13   grounds that they were vague and ambiguous, overly broad, not proportional to the needs of the

14   pre-certification stage, violative of privacy rights and attorney-client privilege, and unduly

15   burdensome in that they would require review of individual employee files.  Doc. No.  283-2 at

16   18-21.  On December 7, 2018, the parties met and conferred and, thereafter, agreed that Request

17   No. 24 sought all documented discipline against putative class members for insubordination with

18   managers or supervisors, except for those records only available through review of individual

19   employee personnel files.  Doc. No. 295-1 at 3.  The parties also agreed that Request No. 27

20   sought all documented discipline against putative class members for a failure to communicate on

21   radio/walkie talking during meal or rest periods, except for those records only available through

22   review of individual employee personnel files.  Id.

23          On December 7, 2018, Plaintiffs filed a motion to compel production of the above

24   documents. Doc. No. 32.  On February 1, 2019, Defendants provided supplemental responses to

25   Plaintiffs' Request Nos. 27 and 24, stating that no responsive documents existed for Request Nos.

26   24 and 27.  Doc. No 295-1 at 123-25; Doc. No. 225 at 4.  After several informal discovery dispute

27   conferences, the Magistrate Judge denied Plaintiff motion to compel on the grounds that the

28   responsive documents did not exist.  Doc. No. 74.

Plaintiffs thereafter filed another motion to compel supplemental responses to Requests No. 24 and 27.  Doc. No. 223 at 2.  The Magistrate Judge denied this motion, noting that given the parties' agreement over the scope of Request No. 24 ("all documented discipline against putative class members for insubordination with managers or supervisors, except for those records only available through review of individual employee personnel files.") and Request No. 27 ("all documented discipline against putative class members for a failure to communicate on radio/walkie talkie during meal or rest periods, except for those records only available through review of individual employee personnel files."), Defendants' response that they found no non-privileged responsive documents after conducting a diligent search precluded the Court from compelling Defendants under Rule 26(e) to supplement their responses.  Doc. No. 229 at 5.

Given the Magistrate Judge's order and the parties' agreement over the scope of Request Nos. 24 and 27, the Court will not bar Defendants from using Exhibit 25 at trial to the extent that its documents fall outside the agreed scope of Request Nos. 24 and 27.  Fed. R. Civ. P. 37(c)(1); see also  La Terminals, Inc. v. United Nat'l Ins. Co., 340 F.R.D. 390, 396 (C.D. Cal. 2022) ("[I]t is axiomatic that the duty to supplement is triggered only if the materials requested would have been responsive to a discovery request in the first instance.").  This would include records of documented discipline that were "only available through review of individual employee personal files."  Id.  ("Rule 26(e) does not impose a duty to supplement discovery responses where the discovery sought is not responsive to timely propounded discovery requests.").  Furthermore, although these documents might be prejudicial to Plaintiffs, they are not unfairly prejudicial because Plaintiffs themselves agreed to the carve outs in Request Nos. 24 and 27.

C.  Trial Exhibit No. 26 – Evidence of Video Footage at Lemoore West Facility

Trial Exhibit No. 26 consists of "video footage of each area of the plant where class members worked during the class period."  Plaintiffs claim they requested production of these materials in their Request for Production No. 84, which requested "[c]opies of all video surveillance film used in investigations and/or for purposes of disciplinary action."  Doc. No. 295-1 at 429.  Defendants objected to this request on the grounds that it is vague and ambiguous, unduly burdensome, overly broad, not proportional to the needs at the pre-certification stage, and

violative of privacy rights and attorney-client privilege.  Doc. No. 283-2 at 49.  On May 3, 2019, Plaintiffs moved to compel production of this video evidence.  Doc. No. 89.   At the discovery dispute hearing, Defendants represented to the Magistrate Judge that no surveillance footage exists because Defendants do not keep the videos for more than thirty (30) days.  Doc. No. 283-2 at 3.  On May 24, 2019, Defendants supplemented its discovery response stating "it has no responsive video surveillance film in its possession, custody, or control."  Doc. No. 283-2 at 60.

The Court will deny Plaintiffs' motion to exclude Defendants' Trial Exhibit No. 26 to the extent that Defendants are seeking to introduce video evidence that were not used in investigations or for purposes of disciplinary action.  Defendants represented at oral argument that they intend to present video footage of each area of the plant where class members worked during the class period in order to help the jury visualize the spatial layout of the worksite.  Such video footage is permissible so long as it is not submitted to the jury for reasons related to investigations or discipline.

*Ruling*

Plaintiffs' first motion in limine to exclude Defendant's Trial Exhibit Nos. 17, 25, and 26 is denied as discussed above.[10]


## II.   **Motion 2 – Evidence that Having Written Meal and Rest Break Policies Alone is Sufficient**

*Plaintiffs' Argument*

Plaintiffs move to exclude evidence or argument that simply having a written meal and rest break policy alone is sufficient to prove that Defendants provided Plaintiffs with legally compliant breaks.  According to Plaintiffs, the law obligates Defendants to do more than show the jury a written policy, and any argument that Defendants may avoid liability by simply maintaining a written policy would cause unfair prejudice, confuse the issues, and mislead the jury.

---

[10] At oral argument, Defendants represented to the Court that if Plaintiffs' first motion in limine is denied, they would share the challenged materials with Plaintiffs as soon as possible so that Plaintiffs may adequately review them and prepare for trial.  The Court expects Defendants to honor their representation and promptly share the materials with Plaintiffs following the issuance of this Order.

1    *Defendants' Argument*

2         Defendants oppose Plaintiffs' motion on the ground that it is unnecessary and speculative.

3    According to Defendants, Plaintiffs have the burden to prove that despite Leprino's facially

4    compliant written break policies, Leprino had an unwritten facility-wide policy or practice that

5    effectively required all class members to remain on-call during breaks throughout the class period.

6    Because the jury instructions in this case will inform the jury what law applies to Plaintiffs' on-

7    call break claim, Defendants cannot be foreclosed from presenting arguments that are consistent

8    with the law.

9         *Discussion*

10        The issue in this case is not whether Leprino's written meal and rest break policies were

11   facially compliant.  Rather, the issue is whether an unwritten on-call break policy existed despite

12   the existence of Leprino's written break policies.  Therefore, any argument that the existence of

13   Leprino's written break policies alone automatically means that Defendants provided Plaintiffs

14   with legally compliant breaks would be improper.

15        *Ruling*

16        Plaintiffs' second motion in limine is granted.

17

18   **III.    Evidence Concerning Class Certification and Decertification**

19        *Plaintiffs' Argument*

20        Plaintiffs move to preclude Defendants from presenting or eliciting any evidence or

21   testimony concerning the propriety of class certification or decertification.  According to

22   Plaintiffs, class certification and decertification determinations rest solely within the province of

23   the Court.  Therefore, any evidence or argument by Defendants that challenge any certification

24   element would be improper and irrelevant.  Plaintiffs further argue that such evidence or argument

25   would confuse the issues, mislead the jury, waste time, and be unfairly prejudicial.

26        *Defendants' Argument*

27        Defendants argue that Plaintiffs' motion is unfounded because Defendant did not list as a

28   factual dispute for trial whether or not Plaintiffs have established the elements for certification

under Rule 23.  Defendants also argue that Plaintiffs' motion should be denied to the extent the motion seeks to preclude Defendants from presenting evidence or argument attacking the "commonality" of Defendants' alleged policies and practices.  According to Defendants, they must be permitted to present evidence and argument that Plaintiffs have not presented common proof that supports class-wide liability.

### *Discussion*

The issue of certification under Rule 23 is an issue appropriately reserved for the Court's review.  See Fed. R. Civ. Proc. 23(c)(1)(A) ("[T]he court must determine by order whether to certify the action as a class action."); see also Gomez v. Tyson Foods, Inc., 2013 U.S. Dist. LEXIS 188822, *7 (D. Neb. Mar. 13, 2013) ("The court finds that [defendant] should not be allowed to raise issues regarding Rule 23 certification [to the jury] that have been determined as a matter of law [by the court].").  Therefore, the Court will exclude any evidence or argument regarding Rule 23 certification to the jury.  However, such an exclusion does not mean that Defendants are barred from arguing that Plaintiffs' survey and class member witness testimony are unrepresentative of the class.  Arguing that this evidence is unrepresentative is not tantamount to arguing that individualized issues predominate over common questions; rather, it is an argument going to the merits of whether a facility-wide on-call break policy existed during the class period.  See Doc. No. 341 at 20.

### *Ruling*

Plaintiffs' third motion in limine is granted.


### IV.    **Motion 4 – Cumulative Class Member Testimony**

### *Plaintiffs' Argument*

Plaintiffs move to preclude Defendants from calling all class members to testify at trial and from arguing that all class members must testify at trial.  According to Plaintiffs, Defendants do not have a right to call all class members to the stand to litigate affirmative defenses as to each individual.  Therefore, testimony by all class members at trial would be improper, needlessly cumulative, cause undue delay, and waste time under Fed. R. Evid. 403.  Plaintiffs further assert

that class member testimony may be used on a representative basis to try the case, and that this principle has been effectuated and affirmed by courts.

*Defendants' Argument*

Defendants argue that their proffered class member witness testimony is not unnecessary or cumulative.  According to Defendants, the jury can determine if class members were on-call during their breaks only by hearing the class members testify about how their supervisors implemented Leprino's break policies.  Defendants also argue that Plaintiffs' proffered evidence is not representative because the class members were subject to different implementations of Leprino's policies, and any one class member cannot rely on the experiences of others to establish his or her own claim.

*Discussion*

In its prior order on Defendants' renewed motion for class decertification and witness list, the Court ruled that it "will not allow Defendants to call 1,389 class member witnesses to testify at trial," and ordered Defendants to "submit a revised prospective class member witness list with proffers of their expected testimony."  Doc. No. 341 at 20-21.  That ruling and reasoning address Plaintiffs' current motion to preclude Defendants from calling all class members to testify at trial.  Therefore, Plaintiffs' fourth motion in limine will be granted in accordance with the Court's prior order.  Doc. No. 341 at 20-21.  If Defendants' revised witness list presents any further evidentiary concerns, they will be addressed at an appropriate time before or during the trial.

*Ruling*

Plaintiffs' fourth motion in limine is granted as discussed above.

**V.   Motion 5 – Evidence that Absent Class Members Not Testifying at Trial Shows Plaintiffs Did Not Prove Their Case**

*Plaintiffs' Argument*

Plaintiffs move to exclude any argument or reference that absent class members not testifying at trial shows that Plaintiffs did not prove their case.  According to Plaintiffs, not all class members are required to testify at trial for Plaintiffs to prevail or for Defendants to litigate

1    their affirmative defenses.  Therefore, any evidence or argument that such testimony is required is

2    improper and would waste time and be cumulative.  Furthermore, Plaintiffs assert that such

3    evidence should be excluded because Defendants unlawfully thwarted Plaintiffs' ability to call

4    absent class members by having their them sign agreements not to partake in class actions against

5    Leprino.  Plaintiffs contend that this arrangement amounts to spoliation of evidence.

6              *Defendants' Argument*

7              Defendants argue that Plaintiffs' motion is meritless because it provides no credible

8    evidence that Leprino forced class members to sign agreements prohibiting them from

9    participating in any class action against it.  Defendants also oppose Plaintiffs' request for sanctions

10   on the ground that there is no evidence that Defendants spoliated evidence.  Furthermore,

11   Defendants assert that because Plaintiffs bear the burden of presenting common proof that would

12   allow the jury to determine the extent of liability on a class-wide basis, Defendants are allowed to

13   present evidence challenging the sufficiency of that evidence, such as by noting that Plaintiffs'

14   class member witnesses do not represent the class.

15             *Discussion*

16             The Court previously stated that Defendants do not have a right to call all class members to

17   testify at trial.  Doc. No. 341 at 20-21.  It logically follows from that ruling then that Plaintiffs are

18   not required to call all class members to testify at trial to prove their on-call break claim.  Such a

19   requirement would "obliterate the use of representative evidence and defy the class action device's

20   purpose to 'save the resources of both the courts and the parties by permitting an issue potentially

21   affecting every class member to be litigated in an economical fashion under Rule 23.'"  Id. at 20

22   (citing Cummings v. Connell, 402 F.3d 936, 944 (9th Cir. 2005) and Califano v. Yamasaki, 442

23   U.S. 682, 701 (1979)).  Further, such a right could violate the Rules Enabling Act by improperly

24   "abridg[ing]" Plaintiffs' right to rely on representative evidence.  See Tyson Foods, Inc. v.

25   Bouaphakeo, 577 U.S. 442, 455 (2016) (stating that to deny plaintiffs from using relevant

26   representative evidence in a class action "would ignore the Rules Enabling Act's pellucid

27   instruction that use of the class device cannot 'abridge . . . any substantive right'") (citing 28 U. S.

28   C. §2072(b)).  Therefore, Defendants may not argue that Plaintiffs cannot prove their case solely

due to an absence of all class members' testimony.  However, Defendants are not barred from arguing that Plaintiffs' proffered evidence is unrepresentative of the class.  For example, Defendants may argue that Plaintiffs' survey is unrepresentative because it does not contain the answers of all class members.

*Ruling*

As discussed above, Plaintiffs' fifth motion in limine is granted in part.

## VI.   <u>Motion 6 – Adverse Evidentiary Inference</u>

*Plaintiffs' Argument*

Plaintiffs' sixth motion in limine seeks an adverse evidentiary inference against Defendants for spoliating evidence.  According to Plaintiffs, Defendants unlawfully thwarted Plaintiffs' ability to call absent class member witnesses to testify at trial by forcing supervisors and class members to sign agreements not to partake in class actions against Leprino in exchange for severance pay.  Plaintiffs contend that this arrangement amounts to spoliation of evidence that warrants the imposition of a jury instruction stating that evidence was destroyed and that the evidence would have been adverse to Defendants.

*Defendants' Argument*

Defendants oppose Plaintiffs' request for spoliation sanctions on the ground that there is no evidence that Defendants spoliated evidence.  Specifically, Defendants assert that the only evidence of spoliation that Plaintiffs presented is a photograph of page two of an unidentified eight-page document.  According to Defendants, this evidence is insufficient because it lacks authentication.  Furthermore, Defendants argue that a spoliation sanction is not warranted under federal law because Plaintiffs failed to establish that Defendants destroyed evidence with a culpable mind or failed to preserve evidence they were obliged to preserve.

*Discussion*

Sanctions for spoliation of evidence may be imposed under the court's inherent powers to manage its own affairs.  <u>Leon v. IDX Sys. Corp.</u>, 464 F.3d 951, 958 (9th Cir. 2006).  Sanctions under the court's "inherent powers must be exercised with restraint" and should be appropriate to

1  the conduct that triggered the sanction.  America Unites for Kids v. Rousseau, 985 F.3d 1075,

2  1088 (9th Cir. 2021) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)).  Among the

3  sanctions available to a court are default or dismissal of claims or defenses, preclusion of

4  evidence, an adverse inference instruction, and monetary sanctions.  Leon, 464 F.3d at 958-59;

5  Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); In re Napster, Inc. Copyright Litig., 462

6  F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); see also Caruso v. Solorio, 2021 U.S. Dist. LEXIS

7  150231, *28 (E.D. Cal. Aug. 9, 2021).  To decide which specific spoliation sanction to impose,

8  courts generally consider three factors: (1) the degree of fault of the party who altered or destroyed

9  the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a

10  lesser sanction that will avoid substantial unfairness to the opposing party.  See Reinsdorf v.

11  Skechers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (citing Apple Inc. v. Samsung Elecs.

12  Co., 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012)); see also Continental Cas. Co. v. St. Paul Surplus

13  Lines Ins. Co., 265 F.R.D. 510, 533 (E.D. Cal. 2010).  A party alleging spoliation has the burden

14  of establishing spoliation by demonstrating that its opponent destroyed documents and had some

15  notice that the documents were potentially relevant to the litigation before they were destroyed.

16  Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 766 (9th Cir. 2015).

17        Here, the evidence of spoliation proffered by Plaintiffs is a copy of a Separation, General

18  Release and Waiver Agreement between Leprino and a redacted class member signed on or

19  around October 12, 2022.  Doc. No. 331-1 at 4-11.  Plaintiffs state they "recently learned" that

20  Defendants have been "unlawfully forcing" supervisors and class members to sign this agreement

21  to prohibit them from participating in any class action against Leprino in exchange for a severance

22  payment.  Doc. No. 288-1 at 2.  Aside from the single copy of this agreement, Plaintiffs do not

23  provide any additional information about the total number of class members who entered into this

24  agreement or the total number of class members who refused to cooperate with or partake in this

25  case around the time this agreement was signed in October 2022.  Without this information, the

26  Court is unable to evaluate the "*degree* of fault" of Defendants or the "*degree* of prejudice"

27  suffered by Plaintiffs.  Reinsdorf, 296 F.R.D. at 626; Apple Inc., 888 F. Supp. 2d at 992;

28  Continental Cas. Co., 265 F.R.D. at 533.  Although Plaintiffs argue that "[t]hese agreements are

exclusively in Defendants' possession, custody, and control," Doc. No. 331 at 2, Plaintiffs still had control over their efforts to engage class members and note in their briefing any broad or abrupt trends of uncooperative behavior.  The single copy of the agreement alone "does not necessarily mean that [Leprino] has engaged in sanction-worthy spoliation."  Reinsdorf, 296 F.R.D. at 626. Therefore, under its "inherent powers" that "must be exercised with restraint," the Court will decline to impose a spoliation sanction.[11]  America Unites for Kids, 985 F.3d at 1088; Chambers, 501 U.S. at 44-45 (1991).

*Ruling*

Plaintiffs' sixth motion in limine is denied.

**VII.**   **Motion 7 – Presence of Non-Testifying Witnesses in the Courtroom**

*Plaintiffs' Argument*

Plaintiffs move to exclude non-testifying witnesses from the courtroom pursuant to Fed. R. Evid. 615.  According to Plaintiffs, non-testifying witnesses should not hear other witnesses' testimony while they are on the stand to reduce the danger of a witness being influenced by what other witnesses say.  Additionally, Plaintiffs move to exclude all supervisors, managers, group leaders, and fellow co-workers from the courtroom, regardless of whether they will testify as a witness, during a class member's testimony to prevent that class member from feeling intimidated, coerced, or otherwise influenced to give biased testimony in favor of Leprino.

*Defendants' Argument*

Defendants do not oppose Plaintiffs' motion to exclude all non-testifying witnesses from the courtroom, including Plaintiffs' witnesses, until after those witnesses have testified.  However, Defendants object to the extent that Plaintiffs seek to also exclude from the courtroom Leprino's

---

[11] The Court is very troubled by Plaintiffs' allegations.  The gist of the allegation is that Leprino is buying the silence of former employees/current class members to not testify without notifying class counsel.  The parties have not cited any cases that are directly on point, but spoliation concerns are implicated.  Ultimately, however, as discussed above, there is an insufficient showing regarding the degree of now "unavailable" class members and, as a result, the degree of prejudice to Plaintiffs.  The class in this case is substantial and the potential witness pool is large.  Plaintiffs do not allege that they are now unable to have key witnesses testify, or are unable to present key evidence, and instead have to use somehow "lesser" witnesses or sources of information following the revelation of Leprino's severance deal. For this reason, the Court will not impose spoliation sanctions.

1   "supervisors," "managers," and other individuals who are not witnesses.  According to

2   Defendants, Fed. R. Evid. 615 does not authorize the Court to exclude non-witnesses or

3   designated party representatives.  Defendants further assert that these individuals in any event

4   cannot communicate with class members about this litigation unless through Plaintiffs' counsel or

5   in open court.

6        *Discussion*

7        Fed. R. Evid. 615 provides that "[a]t a party's request, the court *must* order witnesses

8   excluded so that they cannot hear other witnesses' testimony."  Fed. R. Evid. 615 (emphasis

9   added).  Therefore, in light of Plaintiffs' motion, the Court will exclude all witnesses from the

10  courtroom while another witness gives testimony.[12]  While Defendants argue that witnesses who

11  have already testified should be allowed to be in the courtroom during another witness's

12  testimony, Defendants have not identified any authority stating that Rule 615 exempts from

13  exclusion those witnesses who have already given their testimony.  Rather, several courts,

14  including the Ninth Circuit, have ruled that Rule 615 applies equally to rebuttal witnesses and

15  witnesses who have already testified.  See United States v. Ell, 718 F.2d 291, 293 (9th Cir. 1983)

16  (finding that Rule 615 is applicable to rebuttal witnesses who have already given testimony);

17  United States v. Shaver, 607 F. Supp. 2d 1168, 1175 (S.D. Cal. 2009) ("Rule 615 applies equally

18  to rebuttal witnesses and to witnesses who have already testified.").  The Court will follow *Ell* and

19  *Shaver* and order that rebuttal witnesses are to be excluded from Court while other witnesses are

20  testifying.  See Fed. R. Evid. 615; Ell, 718 F.2d at 293; Shaver, 607 F.Supp.2d at 1175.

21       However, at this time the Court will decline to exclude Leprino's non-witnesses from the

22  courtroom, including Leprino's non-witness supervisors, managers, group leaders, and coworkers,

23  while another witness testifies.  Rule 615 applies to exclude "witnesses," not non-witnesses, and

24  Plaintiffs have not identified any authority that requires the exclusion of these non-witnesses.  This

25

26  [12] The Court notes that Rule 615 "does not authorize excluding: (a) a party who is a natural person; (b) an officer or
    employee of a party that is not a natural person, after being designated as the party's representative by its attorney; (c)
27  a person whose presence a party shows to be essential to presenting the party's claim or defense; or (d) a person
    authorized by statute to be present."  Therefore, the Court's exclusion order applies to the extent that none of these
28  exceptions apply.  Defendants' opposition to Plaintiffs' seventh motion in limine does not argue that any of the above
    exceptions apply.

is not a situation in which an employer is pressuring its employees to write and sign a declaration away from the courtroom and during work hours in the employer's facility.  Plaintiffs have not sufficiently established that the presence of these non-witnesses in the courtroom will coerce or otherwise cause the witnesses to give biased testimony.  Therefore, the Court will deny the portion of Plaintiffs' motion that seeks the exclusion of Leprino's non-witnesses from the courtroom while another witness testifies.

*Ruling*

As discussed above, Plaintiffs' seventh motion in limine will be granted in part and denied in part.

## VIII.   **Motion 8 – Evidence of Plaintiffs' Other Claims Against Leprino**

*Plaintiffs' Argument*

Plaintiffs move to exclude any evidence, argument, reference, statement, cross-examination, or comment about Plaintiff Isaias Vasquez's application and receipt of unemployment insurance benefits prior to his employment with Leprino and Plaintiff Linda Hefke's worker's compensation claims, claims for state disability benefits, complaint through the Occupational Safety and Health Administration ("OSHA"), harassment claim with the United States Equal Employment Opportunity Commission ("EEOC"), unfair wage garnishment claim with the Labor Commissioner, and application and receipt of unemployment insurance benefits (collectively "Other Claims").  Plaintiffs argue that these Other Claims are irrelevant to their on-call break claims, and any attempt by Defendants to reference them would be unduly prejudicial, confuse the issues, mislead the jury, waste time, and be needlessly cumulative.  Additionally, Plaintiffs argue that such evidence should be excluded because it is improper character evidence under Fed. R. Evid. 404.

*Defendants' Argument*

Defendants argue that evidence of the above Other Claims by Plaintiffs is relevant in that they have a tendency to show that Plaintiffs' on-call break claim is less likely to have a genuine basis and that Plaintiffs have a motive to "get back" at Leprino by filing the present suit.

1 Defendants also argue that Plaintiffs' Other Claims bear on their credibility and potential bias.

2 Furthermore, Defendants assert that Plaintiffs failed to show how this evidence would create a

3 danger of unfair prejudice, confusion of issues, misleading the jury, or wasting time that would

4 substantially outweigh the evidence's probative value.

5          *Discussion*

6          Evidence of Plaintiffs' Other Claims has marginal probative value to Plaintiffs' on-call

7 break claim at issue in this case.  The mere fact that Plaintiffs did not assert their on-call break

8 claim in an earlier case does not mean that their current claim is baseless.  See Oyarzo v.

9 Tuolumne Fire Dist., 2013 U.S. Dist. LEXIS 150367, *23 (E.D. Cal. Oct. 18, 2013).  Evidence of

10 Plaintiffs' prior claims also has marginal probative value to proving that Plaintiffs are motivated to

11 "get back" at Leprino.  Although Fed. R. Evid. 404(b) allows evidence of prior crimes, wrongs, or

12 acts to prove "motive," "Rule 404(b) contemplates admission of evidence to show the motive for

13 the underlying act committed, rather than a motive for bringing suit."  Taylor v. Lemus, 2015 U.S.

14 Dist. LEXIS 186790, *27 (C.D. Cal. June 17, 2015) (citing Brooks v. Haggett, 2010 U.S. Dist.

15 LEXIS 115472, *33 (N.D. Cal. Oct. 21, 2010)); see also Yates v. Sweet Potato Enter., Inc., 2014

16 U.S. Dist. LEXIS 155418, *47 (N.D. Cal. Nov. 3, 2014) ("As a general matter, prior lawsuits are

17 inadmissible to show that the plaintiff is litigious.").  As such, Plaintiffs' prior claims are not

18 admissible to establish their motive to "get back at Leprino by filing the current lawsuit."  Doc.

19 No. 302 at 2.

20          Furthermore, there is no evidence in the record showing that Plaintiffs' prior claims bear

21 on their credibility and potential bias.  For example, there is no evidence showing that Plaintiffs'

22 prior claims were fraudulent.  In the absence of such evidence, the probative value of Defendants

23 presenting evidence or argument concerning Plaintiffs' Other Claims to the jury would be

24 "substantially outweighed by the danger of jury bias."[13]  See Feezor v. Golden Bear Rest. Grp.,

25 Inc., 2012 U.S. Dist. LEXIS 97074, *3 (E.D. Cal. July 11, 2012) ("As a general matter, unless . . .

26 prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a

27

28 [13] The Court notes that Vasquez's claim for unemployment benefits *prior* to his employment with Leprino appears to have no probative value at all as that claim by definition had nothing to do with Leprino.  Therefore, exclusion of this evidence as irrelevant under Rules of Evidence 401 and 402 is appropriate.

1  plaintiff's litigation history is substantially outweighed by the danger of jury bias."); <u>Henderson v.</u>

2  <u>Peterson</u>, 2011 U.S. Dist. LEXIS 76799, *15 (N.D. Cal. July 15, 2011).  Therefore, the Court will

3  exclude evidence or argument concerning Plaintiffs' Other Claims.

4        *Ruling*

5        Plaintiffs' eighth motion in limine is granted.

6

7  **IX.    Motion 9 – _Daubert_ Motion to Exclude Expert Stefan Boedeker**

8        *Plaintiffs' Argument*

9        Plaintiffs move to exclude the testimony of Defendants' expert Stefan Boedeker and his

10  report for several reasons.  First, Plaintiffs argue that Boedeker is not qualified to provide his

11  intended testimony because he never designed, conducted, studied, or presented on wage and hour

12  surveys, and because courts have found his past analysis of surveys to be "highly deficient" and

13  "deeply flawed."  Second, Plaintiffs assert that Boedeker's testimony and report are neither

14  reliable nor relevant because his opinions are speculative, invade the province of the jury, are not

15  based on a firm understanding of the case, and are self-contradictory.  Third, Plaintiffs contend

16  that Boedeker's testimony and report consist of improper opinions on an ultimate issue of law.

17  Fourth, Plaintiffs argue that some of Boedeker's opinions are not rebuttal opinions at all but are

18  rather new arguments that go beyond the scope of rebutting Defendant's expert report.  Finally,

19  Plaintiffs assert that the probative value of Boedeker's testimony and report are substantially

20  outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

21        *Defendants' Argument*

22        Defendants argue that Boedeker's report should not be excluded because he is a qualified

23  economist and statistician and his report is reliable.  According to Defendants, the report bears

24  directly on what weight should be given to Plaintiffs' expert report, and Plaintiffs' attacks on

25  Boedeker's experience, reputation, and conclusions go to the weight of his testimony and report,

26  not their admissibility.  Defendants further assert that Boedeker did not have to conduct his own

27  research to evaluate and respond to Plaintiffs' expert report because he based his opinions on

28  existing research literature and on his many years of experience as a statistician.  Moreover,

Defendants contend that Boedeker's opinions are proper rebuttal opinions and not legal conclusions that usurp the jury's role.

### *Legal Standard*

Under *Daubert*, the Court has a duty to act as a "gatekeeper" for expert testimony by assessing its admissibility.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 145, 147 (1999).  This inquiry is governed in part by Fed. R. Evid. 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The expert must be qualified by "knowledge, skill, experience, training, or education," and may testify if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  Once the proposed witness qualifies as an expert, it is the responsibility of the trial court to ensure thereafter that the expert testimony admitted is both relevant and reliable.  Daubert, 509 U.S. at 589.  The court "must determine whether the testimony has a reliable basis in the knowledge and experience of the [relevant] discipline."  Kumho Tire, 526 U.S. at 149.  The Supreme Court set forth the following, non-exhaustive factors for reviewing the reliability of an expert opinion: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community.  Daubert, 509 U.S. at 593-94.  The court has "broad latitude" in

1  deciding how to measure reliability, as well as in making the ultimate reliability determination.

2  Kumho Tire, 526 U.S. at 142.

3    *Discussion*

4    With respect to Boedeker's qualifications, the Court finds that he is qualified based on his

5  knowledge, skill, experience, training, and education.  See Fed. R. Evid. 702, Adv. Comm. Note

6  (2000) ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the

7  basis of experience.").  Boedeker is currently a Managing Director at the Berkeley Research

8  Group ("BRG").  He holds master's degrees in statistics and economics and has completed Ph.D.

9  requirements except dissertation.  According to Boedeker's expert report, his work focuses on the

10  application of economic, statistical, and financial models to a variety of areas, such as providing

11  solutions to business problems, supporting complex litigation, and conducting economic impact

12  studies.  Doc. No. 291-2 at 13.  Throughout his career he has taught training classes in the

13  application of statistical methodology to large complex data bases, theory and application of

14  statistical sampling, and statistical modeling techniques.  Id.  He has extensive experience

15  applying economic and statistical theories and methodologies to employment related matters, such

16  as discrimination, wrongful termination, and wage and hour class action cases.  Id.  At the time he

17  completed his report, Boedeker had been retained in over 200 wage and hour class action cases

18  covering a broad range of issues.  Id. at 14.  He has been deposed and has testified in employment

19  wage and hour cases in State and Federal Courts throughout the United States.  Id.  Boedeker

20  expressly states in his report that his opinions are based on his education, professional experience,

21  and independent review and analysis of produced or publicly available documents and data.  Id. at

22  15.  In addition, his opinions were based on the statistical analysis of data that he performed or

23  that BRG personnel performed under his direct supervision.  Id.  Boedeker also relied on

24  publications from statistical literature pertaining to the theory and application of statistical

25  sampling and statistical surveys.  Id.

26    The Court further finds that Boedeker's rebuttal testimony is sufficiently relevant and

27  reliable.  Boedeker's report provides rebuttal opinions to the expert reports of Plaintiffs' class-

28

1   wide damages expert Brian Kriegler and employee survey expert Jeffrey Petersen.[14]   <u>Baker v.</u>

2   <u>SeaWorld Entm't, Inc.</u>, 423 F. Supp. 3d 878, 896 (S.D. Cal. 2019) ("Rebuttal disclosures of expert

3   testimony are 'intended solely to contradict or rebut evidence on the same subject matter identified

4   by another party' in its expert disclosures.'") (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)).  These

5   rebuttal opinions directly relate to the representative evidence Plaintiffs intend to use at trial, and

6   will "help the trier of fact to understand the evidence or to determine a fact in issue."  <u>United</u>

7   <u>States v. Diaz</u>, 876 F.3d 1194, 1196 (9th Cir. 2017).  Specifically, it will help the jury understand

8   whether class members believed they were required to be available to do work during breaks;

9   whether Leprino's emphasis on quality and production goals meant that class members had to be

10  available to do work during breaks to meet those goals; whether class members often heard work-

11  related requests from Leprino managers or supervisors over the intercom system, radio, or phone

12  during breaks; and if Defendants are found liable, how much damages Plaintiffs should receive.

13  Boedeker's opinions are not legal conclusions just because they embrace an ultimate issue in the

14  case.  <u>Id.</u> ("An opinion is not objectionable just because it embraces an ultimate issue.").

15       Furthermore, Boedeker's report sufficiently explains how he based his opinions on his

16  review of the facts set forth in the operative Third Amended Complaint ("TAC"), Kriegler's

17  expert report, Petersen's expert report, and published literature which he cites throughout his

18  report.  For example, Boedeker cites numerous published literature in support of his opinions

19  regarding the adequacy of the sample size used in Petersen's survey.  Additionally, Boedeker's

20  discussion regarding premium pay was used to support his conclusion that when Leprino's

21  premium pay policy is fully taken into account, the damages multipliers used in Kriegler's report

22  should be zero.  This argument is not a "new" argument as Plaintiffs contend.  Rather, it is a

23  rebuttal to Kriegler's proposed method of calculating damages.  For example, Kriegler notes that if

24  Leprino is found liable, then his damages calculation model will require the jury to determine what

25  percent of shifts over 6 hours failed to provide compliant break periods, and then multiply that

26

27  [14] As a rebuttal expert, the Court emphasizes that Boedeker's testimony will be limited to rebutting the expert
    testimony presented by Plaintiffs.  That is, Boedeker may not offer an opinion that does not actually rebut any expert
28  opinion that Plaintiffs have presented to the jury.  If an opinion is contained within Plaintiffs' experts' reports, but
    Plaintiffs do not actually disclose that opinion to the jury, Boedeker may not offer a rebuttal opinion on that subject.

percentage with the principal damage and pre-judgment interest figures provided in his report. See Doc. No. 291-2 at 213-14.  Boedeker directly addresses this proposed method by stating that Kriegler failed to offer any opinions about what the percentage multiplier is and how the jury can reach it.  Doc. No. 291-2 at 66.  Additionally, Boedeker asserts that even if Kriegler's method was applicable, the percentage multiplier should be zero—i.e., no portion of the class period failed to provide compliant break periods for shifts over 6 hours—when Leprino's premium pay policy is fully taken into account.  These opinions are not "new arguments" but rather are rebuttal opinions to Kriegler's damages calculation model.

 Ultimately, like Defendants' challenges to the reliability of Petersen's report, Plaintiffs' challenges to the reliability of Boedeker's report ultimately go to its weight and not its admissibility.  Baker , 423 F. Supp. 3d at 895).  If Plaintiffs take issue with Boedeker's testimony during trial, then they may cross-examine and present contrary evidence.  Therefore, the Court will deny Plaintiffs' ninth motion in limine.

*Ruling*

Plaintiffs' ninth motion in limine is denied.


**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' motions in limine are granted in part and denied in part as described above; and

2.  Plaintiffs' motions in limine are granted in part and denied in part as described above.


IT IS SO ORDERED.

Dated:   February 22, 2023     _____

                                                    SENIOR  DISTRICT  JUDGE