# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ISAIAS VASQUEZ and LINDA HEFKE,** on behalf of all other similarly situated individuals , <br><br> Plaintiffs, <br><br> v. <br><br> **LEPRINO FOODS COMPANY, a** Colorado Corporation, <br><br> Defendant. | CASE NO. 1:17-cv-00796-AWI-BAM <br><br> **ORDER ON PLAINTIFFS' TRIAL BRIEF REGARDING RULE 30(B)(6) TESTIMONY** <br><br> (Doc. Nos. 369 & 374) |

Pending before the Court is Plaintiff class representatives Isaias Vasquez and Linda Hefke's ("Plaintiffs") Trial Brief, which moves the Court to preclude Defendant Leprino Foods Company ("Leprino" or "Defendant") from presenting evidence or argument that does not align with the testimony of Leprino's Rule 30(b)(6) witness Robert Tuttrup. Doc. Nos. 369 & 374. For the reasons that follow, the Court will grant in part and deny in part Plaintiffs' Trial Brief.

## **Legal Standard**

"[A] corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." Snapp v. United Transp. Union, 889 F.3d 1088, 1103 (9th Cir. 2018). This proposition applies "where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, i.e., where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." Id. (citing MKB Constructors v. Am. Zurich Ins., 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014)

("[A] party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal.")). However, "the testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes." Id. at 1104; see also Enborg v. Ethicon, Inc., 2022 U.S. Dist. LEXIS 51601, *9-*10 (E.D. Cal. Mar. 21, 2022). Additionally, the Rule 30(b)(6) testimony is "not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not 'irrevocably' bound to what the fairly prepared and candid designated deponent happens to remember during the testimony." Snapp, 889 F.3d at 1104. Although an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization, such testimony "is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." Id. (citing A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001)); Enborg, 2022 U.S. Dist. LEXIS 51601, at *9-*10. "A Fed. R. Civ. P. 30(b)(6) witness's legal conclusions are not binding on the party who designated him, and a designee's testimony likely does not bind its employer in the sense of a judicial admission." Snapp, 889 F.3d at 1104 (quoting Southern Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control, 731 F.3d 799, 811 (8th Cir. 2013)).

**Discussion**

Plaintiffs argue that Defendant's Rule 30(b)(6) witness Robert Tuttrup made the following eight admissions and, therefore, Defendant should be precluded from presenting any evidence or argument that conflict with them:

1. Leprino required hourly employees to sign an On-Duty Meal Period Agreement.
2. Leprino always expected employees to be in open communication with the people that they work with at all times.
3. Class Members were prohibited from leaving the facility during rest breaks for the entirety of the Class Period.

4. Class Members were not trained or instructed not to respond to supervisors or radios during breaks.
5. Leprino admits Class Members were called back to work during meal and rest periods.
6. Leprino did not track when Class Member rest breaks were interrupted for work related matters.
7. Leprino does not pay premiums when meal breaks are interrupted.
8. Leprino does not know when signs were posted advising employees they are not required to answer their radio during breaks.

Doc. No. 374 at 2. Defendant denies that these admissions were made. The Court will address each of these eight alleged admissions below in turn.

**1. Whether Tuttrup admitted that Leprino had a policy and procedure requiring all hourly employees to sign an On-duty Meal Period Agreement.**

Plaintiffs argue that because Tuttrup denied any knowledge of an on-duty meal period agreement, Defendant must be precluded from arguing that Leprino did not have a policy and procedure requiring all hourly employees to sign such an agreement. Plaintiffs assert that this preclusion includes any argument that Leprino "revoked" an on-duty meal period agreement or when it was or was not effective. In response, Defendant contends that Tuttrup did not admit the above but rather simply testified that he had never seen the March 5, 2003 On-duty Meal Period Agreement that was shown to him during his deposition. According to Defendant, the agreement form was dated six years before Tuttrup was involved with Leprino.

Upon review, the Court finds that Tuttrup did not admit that Leprino had a policy and procedure requiring all hourly employees to sign an on-duty meal period agreement. Tuttrup's deposition testimony indicates that the agreement form that was shown to him at his deposition was dated six years before he was involved with Leprino, and Plaintiffs do not dispute this fact. Tuttrup's statements that "I don't recognize this form" and "I don't recall" are not admissions that Leprino required hourly employees to sign an on-duty meal period agreement. Snapp, 889 F.3d at 1103-04. Therefore, the Court will not preclude Defendant from arguing that Leprino did not have

a policy and procedure requiring all hourly employees to sign such an agreement, or that Leprino "revoked" an on-duty meal period agreement or when it was or was not effective. The jury will decide how much weight to give these arguments.

**2. Whether Tuttrup admitted that Leprino always expected employees to be in open communication with the people that they work with "at all times."**

Tuttrup stated at his deposition that "In a general sense, I would expect our employees at all times to be in open communication with the people that they work with." Based on this statement, Plaintiffs argue that Tuttrup admitted that Leprino always expected employees to be in open communication with the people that they work with "at all times." In response, Defendant contends that questions regarding Leprino's communication policies were beyond the scope of the 30(b)(6) deposition notice and, therefore, Tuttrup's testimony on this topic were given in his individual capacity. Additionally, Defendant asserts that Tuttrup's statement did not preempt his other testimony that during meal and rest breaks, hourly employees were relieved of duty, free to do and go about as they pleased, and not expected to respond to radios.

Upon review, the Court finds that Tuttrup did not admit that Leprino always expected employees to be in open communication with the people that they work with at all times. As an initial matter, Tuttrup's statement regarding open communication is qualified and preceded by the phrase "In a general sense." Thus, the plain language of Tuttrup's statement leaves room for an exception to apply. Tuttrup appears to suggest that his statement did not apply during meal and rest breaks. For example, Tuttrup testified that meal and rest breaks were "duty free." Doc. No. 376-1 at 30-31. Additionally, Tuttrup testified that if hourly workers were called on the radio during their meal or rest break, "they wouldn't have been required to answer." Id. at 28-29. This additional testimony by Tuttrup does not conflict with his statement regarding open communication. They rather provide additional explanation and supplementation. Snapp, 889 F.3d at 1104; A.I. Credit Corp., 265 F.3d at 637. Therefore, the Court will not preclude Defendant from arguing that Leprino did not always expect employees to be in open communication with the people that they work with at all times.

**3. Whether Tuttrup admitted that Leprino prohibited Class Members from leaving the facility during rest breaks for the entirety of the class period.**

In response to the question "So, as far as you're aware during the entirety of the Class period, hourly employees were required to remain on the facility during their rests breaks, correct," Tuttrup answered "That's what the policy says, yes." Based on this statement, Plaintiffs argue that Tuttrup admitted that Leprino prohibited Class Members from leaving the facility during rest breaks for the entirety of the class period. In response, Defendant asserts that Tuttrup's answer was merely confirming what was written in the policy and that it was not an admission as Plaintiffs contend.

Upon review, the Court finds that Tuttrup did not admit that Leprino prohibited Class Members from leaving the facility during rest breaks for the entirety of the class period. After Tuttrup provided the above answer, he later stated "I misspoke on that earlier. At some point when I started there, they were not allowed to leave. At some point I recall they were allowed to leave during their rest breaks. However, with a fifteen- or twenty-minute rest break and the need to change your shoes or whatever if you were going to leave the premises, it's doubtful that they could leave and come back, even though they were allowed if they were able to do that in the time that was allotted for their break." Doc. No. 376-1 at 12-13. In light of this additional testimony, the Court will not preclude Tuttrup from testifying about Leprino's policies that did not prohibit class members from leaving the facility during rest breaks.

**4. Whether Tuttrup admitted that Class Members were not trained or instructed to not respond to supervisors or radios during breaks.**

Plaintiffs point to several statements by Tuttrup in support of their contention that he admitted that Class Members were not trained or instructed to not respond to supervisors or radios during breaks. In response, Defendants argue that Tuttrup made no such admission and that Plaintiffs cite only to Tuttrup's testimony regarding his lack of knowledge about specific facility signage and specific training regarding answering radios.

5

1    Upon review, the Court finds that Tuttrup admitted that class members were not expressly
2 trained or instructed to not respond to radio communications made to them during breaks.  Tuttrup
3 answered that he did not know or that he was not aware to the following questions:  Was there
4 ever anything in writing issued to employees about not picking up their two-way radio when
5 they're on their rest breaks?  Is there any training that Leprino conducts for the hourly employees
6 who are issued radios on when they're required to have them on?  Other than this sign that has
7 been marked as Exhibit 17, are you aware of any training conducted by anyone at Leprino
8 instructing employees to turn off their radios during their meal and rest breaks?  Are you aware of
9 any specific instructions given by Leprino to employees who carry radios to turn them off during
10 meal and rest breaks?  Where is the written policy that says you will be called but you don't have
11 to answer during meal and rest breaks?  Doc. No. 374 at 7-8.  In light of these answers, Defendant
12 may not "present a theory of the facts that differs from that articulated by [Tuttrup]" regarding any
13 express training or instruction to not respond to radio communications made to them during
14 breaks.  Snapp, 889 F.3d at 1103.  However, Defendant may present evidence and argument that
15 Leprino's handbook "implied" that Leprino expected the meal period to be uninterrupted.  In
16 response to the question "Is there anything specific about not having to respond to your
17 supervisors if you are contacted by them through any method during your meal and rest breaks,"
18 Tuttrup answered "I believe in the handbook in Meal and Break section, it's implied that we
19 expect the meal and break period – the meal period to be uninterrupted."  Doc. No. 376-1 at 30.
20 This answer is not in conflict with his answers to the questions above.

**5. Whether Tuttrup admitted that Class Members were called back to work during meal and rest periods.**

24    Tuttrup stated that it was possible that there were times when certain operators were
25 interrupted with questions about their machines during their meal and rest break.  Tuttrup also
26 discussed some hypothetical situations when it was possible for an employee to be called
27 regarding work issues during his or her meal and rest break.  Based on this testimony, Plaintiffs
28 argue that Tuttrup admitted that Class Members were called back to work during meal and rest

6

periods. In response, Defendants contend that Tuttrup made no such admission and that he otherwise testified that even if some class members could have been called and asked if they could return to work before the completion of their break, Leprino's intent was to make sure that they got either another break within the timeframe or penalty pay.

Upon review, the Court finds that Tuttrup admitted that it was possible that class members were called back to work during meal and rest break periods. Accordingly, Defendant may not argue that it was impossible for class members to be called regarding work-related issues during these break periods. However, Defendant may present evidence or argument that Leprino did not intend to interrupt class members with work-related inquiries during their breaks without providing an additional break or penalty pay. Such evidence and argument do not conflict with Tuttrup's statements above. The jury will decide how much weight to give such evidence and argument.

### 6. **Whether Tuttrup admitted that Leprino did not track when Class Member rest breaks were interrupted.**

In response to the question "Did the controllers or anyone at Leprino track interrupted rest breaks," Tuttrup answered "Not that I'm aware of." Based on this answer, Plaintiffs argue that Tuttrup admitted that Leprino did not track when Class Members' rest breaks were interrupted. In response, Defendant asserts that Tuttrup made no such admission. Defendant further argues that because the word "interrupted" as used in Plaintiffs' question failed to differentiate between work-related interruptions and interruptions to which no response was required, Leprino must be allowed to clarify Tuttrup's testimony.

Upon review, the Court finds that Tuttrup admitted that he is unaware of anyone at Leprino who tracked interrupted rest breaks. However, Tuttrup did not admit that Leprino never provided another rest break or penalty pay if a class member's rest break was interrupted with work-related issues. Tuttrup testified that Leprino's intent was to make sure that such class members got either another break within the timeframe or penalty pay. Therefore, Defendant may argue that Leprino intended to provide additional rest breaks or penalty pay to class members who were interrupted

with work-related issues during their rest breaks, despite Tuttrup's lack of knowledge of anyone at Leprino who tracked interrupted rest breaks.

**7. <u>Whether Tuttrup admitted that Leprino does not pay premiums when meal periods are interrupted.</u>**

In response to the question "Did Leprino pay meal premium payments to hourly employees for interrupted meal breaks during the Class period," Tuttrup answered "I don't know." Based on this answer, Plaintiffs argue that Tuttrup admitted that Leprino does not pay premiums when meal periods are interrupted. In response, Defendant asserts that Tuttrup made no such admission. Defendant further argues that because the word "interrupted" as used in Plaintiffs' question failed to differentiate between work-related interruptions and interruptions to which no response was required, Leprino must be allowed to clarify and explain Tuttrup's testimony.

Upon review, the Court finds that Tuttrup did not admit that Leprino does not pay premiums when meal periods are interrupted. Tuttrup explicitly answered "I know that we have paid penalty pay to operators and our hourly employees," in response to Plaintiffs' question "Do you know if Leprino has paid any meal premium [pay] to employees who have had their meal breaks interrupted?" Doc. No. 376-1 at 36. Plaintiffs do not address this statement by Tuttrup. Additionally, Tuttrup did not admit that Leprino never provided penalty pay if a class member's meal break was interrupted with work-related issues. Tuttrup testified that Leprino's intent was to make sure that such class members got either another meal break within the timeframe or penalty pay. Therefore, the Court will not preclude Defendant from arguing that Leprino pays premiums when meal periods are interrupted.

**8. <u>Whether Tuttrup admitted that Leprino does not know when signs were posted advising employees they are not required to answer their radios during breaks.</u>**

In response to the question "Are you aware of any signs that were ever put up instructing employees they were not required to have their two-way radios on during meal and rest breaks," Tuttrup answered "No." Based on this answer, Plaintiffs argue that Tuttrup admitted that Leprino

1 does not know when signs were posted advising employees they are not required to answer their radios during breaks. In response, Defendant argues that Tuttrup made no such admission on behalf of Leprino because the deposition notice did not include a topic that included anything about facility signage.

Upon review, the Court finds that Tuttrup admitted that he was not aware of any signs that were put up instructing employees they were not required to have their two-way radios on during meal and rest breaks. This admission suggests that Tuttrup was also not aware of when any of these signs were put up. Nevertheless, the Pretrial Order indicates—and the parties listed as an undisputed fact in their Joint Pretrial Statement—that since January 2019, a sign posted next to the time clocks stated in part: "Employees are not required to have their 2-way radio on during meal or rest breaks." Doc. Nos. 264 at 3 & 267 at 2. Plaintiffs' own witnesses also stated that they saw signs regarding duty-free meal breaks throughout the facility for many years. Therefore, the Court will not preclude Defendant from presenting evidence or argument regarding the above undisputed fact and testimony by Plaintiffs' witnesses. The jury will decide how much weight to give the evidence and argument.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's Trial Brief is granted in part and denied in part as discussed above.

IT IS SO ORDERED.

Dated:   March 22, 2023                          _____
                                                 SENIOR DISTRICT JUDGE