R. Rex Parris (SBN 96567)
rrparris@parrislawyers.com
Alexander R. Wheeler (SBN 239541)
awheeler@parrislawyers.com
Kitty K. Szeto (SBN 258136)
kszeto@parrislawyers.com
Ryan A. Crist (SBN 316653)
rcrist@parrislawyers.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone: (661) 949-2595
Facsimile: (661) 949-7524

Philip A. Downey (admitted *Pro Hac Vice*)
Pa Bar No. 81603
downeyjustice@gmail.com
**THE DOWNEY LAW FIRM, LLC**
1500 Gabaldon Road NW
Albuquerque, NM 87104
Telephone: (610) 470-5111
Facsimile: (610) 813-4579

Attorneys for Plaintiffs and the Settlement Class

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISAIAS VASQUEZ and LINDA HEFKE on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 1:17-cv-00796-JLT-BAM<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' NOTICE OF <u>UNOPPOSED</u> MOTION AND <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 1, 2023<br>Time: 9:00 a.m.<br>Courtroom: 8 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 1, 2023, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Barbara A. McAuliffe in Courtroom 8 of the above-entitled court located at 2500 Tulare Street, Sixth Floor, Fresno, California, 93721, Plaintiffs will seek an order:

- Granting preliminary approval of the proposed all-in, non-reversionary **$3,500,000.00** class action settlement as described herein and as set forth in the parties' Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto filed concurrently herewith ("Szeto Decl.");
- Approving the Notice of Settlement ("Notice") attached as Exhibit "A" to the Settlement Agreement;
- Appointing Phoenix Class Action Administration Solutions ("Phoenix") as the Settlement Administrator and preliminarily approving Settlement Administration Costs in the amount of $25,375.94;
- Directing Phoenix to mail the Notice to the Class;
- Preliminarily approving Class Counsel's request for attorneys' fees in the amount of $1,400,000 and request for reimbursement of litigation costs and expenses in the amount of $800,000;
- Preliminarily approving the Plaintiff Enhancement Payments to Plaintiffs; and
- Scheduling a hearing on **March 8, 2024** to consider final approval of the proposed settlement.

////

////

////

////

////

////

This motion is based on the following memorandum of points and authorities; the Declarations of Kitty K. Szeto and Philip A. Downey; the [Proposed] Order lodged together with this motion, as well as upon the pleadings and other records on file with the Court in this matter, and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.

Date: October 16, 2023

**PARRIS LAW FIRM**

By: /s/ Kitty K. Szeto
Kitty K. Szeto
Attorneys for Plaintiffs
and the Settlement Class

# TABLE OF CONTENTS


PAGE

1. THE SEVEN LEPRINO CASES ..... 1
2. SUMMARY OF THE SETTLEMENT TERMS ..... 3
3. LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS ..... 4
   - A. The Strength of the Case and Associated Risks Favor Preliminary Approval of the Settlement. ..... 5
   - B. The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery. ..... 7
   - C. The Settlement Amount is Fair, Reasonable, and Adequate. ..... 7
4. LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT ..... 9
   - A. AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE ..... 11
     1. The Risks Assumed by Class Counsel Favor the Fee Award Sought ..... 12
     2. Class Counsel Obtained an Excellent Result for the Class ..... 13
     3. Class Counsel Obtained Swift and Efficient Relief for the Class ..... 14
     4. The Skill and Reputation of Class Counsel Justifies the Fee Requested ..... 15
5. THE PROPOSED SETTLEMENT CLASS SATISFIES THE ELEMENTS FOR CLASS CERTIFICATION ..... 16
6. THE PROPOSED NOTICE IS ADEQUATE ..... 20
7. APPOINTING PHOENIX CLASS ACTION ADMINISTRATION SOLUTIONS AS THE SETTLEMENT ADMINISTRATOR ..... 21
8. THE PLAINTIFF ENHANCEMENT PAYMENT IS FAIR AND REASONABLE ..... 21
9. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ............ 6

*Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006)............... 15

*Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007)..................... 16

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) ........................................................................ 20

*Blum v. Stenson* (1984) 465 U.S. 886 ........................................................................ 12, 14

*Boeing Co. v. Van Gernert* (1980) 444 U.S. 472 ........................................................ passim

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co*., No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014) .................................................................. 25

*Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001).................................... 26

*Brytus v. Spang & Co.* (3rd Cir. 2000) 203 F.3d 238 .............................................................. 13

*Cartt v. Superior Court* (1975) 50 Cal.App.3d 960 ........................................................... 22, 23

*City of Detroit v. Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448 ........................................... 5

*Crampton v. Takegoshi* (1993) 17 Cal.App.4th 308 .................................................................. 10

*Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968) .................................................. 14

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 .................................................. 4, 5, 6, 10

*Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013)........................................................................................................... 26

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008 (9th Cir. 2002) .. 20, 21

*Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010)........................................................................................................... 25

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007)........... 15

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026; *Class Plaintiffs v. City of Seattle* (9th Cir. 1982) 955 F.2d 1268 ..................................................................... 4, 6, 17

*Hensley v. Eckerhart* (1983) 461 U.S. 424 ..................................................................... 9

*Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) ........ 25

*In re Activision Securities Litigation* (9th Cir. 1989) 723 F.Supp. 1373 ........ 12, 14, 19

*In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418 ........ 8

*In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ........ 20

*In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) ........ 20

*In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) ........ 20

*In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ........ 14

*In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ........ 18

*In re Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2, 2004) ........ 20

*In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ........ 14, 19

*In re Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) ........ 20

*In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ........ 24

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) .... 16, 18, 21

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ........ 24, 25

*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 67 ........ 11, 12

*Ketchum v. Moses* (2001) 24 Cal. 4th 1122 ........ 9

*Laffitte v. Robert Half International, Inc.* (2014) 231 Cal.App.4th 860 ........ 13

*Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19 ........ 9, 13, 20

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San Corp.* (3rd Cir. 1973) 487 F.2d 161 11

*Lindy II* (1976) 540 F.2d 102 ........ 11

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006) .......................... 15
*Mendoza v. United States* (9th Cir. 1980) 623 F.2d 1338.......................................................... 22
*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .............................................................. 14
*Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005)........................................................................................................................ 20
*North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004)................................................................................................... 20
*Officers for Justice v. Civil Service Commission of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615 ................................................................................................... 5
*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)...................... 14, 16
*Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006) .................................................................................................................. 25
*Serrano v. Priest* (1977) 20 Cal.3d 25 ........................................................................................ 10
*Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010)........................................................................................................................ 26
*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). 13, 14, 15
*Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) ............................................................................................................ 26
*Trustees v. Greenough* (1881) 105 U.S. 527 ................................................................................ 11
*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) ....... 19, 25, 26
*Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759 ................................................. 10
*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)................................... passim
*Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) .......................... 19, 24
*Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)......... 15
*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ....................................... 4, 5, 6, 13
*Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27 (9th Cir. 1997)................. 15
*Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274................................................... 12
*Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007) .......................................... 15

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* § 11.24 (4th Ed) .......... passim

*Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007) .......... 11, 22

R. Pearle, California Attorney Fee Awards (CEB, 1993) §7A .......... 10

See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993 .......... 11

Weil and Brown, California Practice Guide, *Civil Procedure Before Trial*, Chapter 14, section 14:145 .......... 10

**Statutes**

CAL. CIV. CODE § 1781 .......... 4, 22

CAL. CIV. CODE § 1781 (f) .......... 4

**Rules**

CAL. R. CT. 3.769(g) .......... 5

FED. R. CIV. P. 23(c)(2) and 23(e) .......... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs seek preliminary approval of an all-in, non-reversionary class action settlement. Subject to court approval, Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Defendants" or "Leprino") have agreed to pay a total maximum settlement fund of **$3,500,000.00** ("Maximum Settlement Amount") to settle seven long-standing cases against Leprino. After deducting payment of attorneys' fees ($1,400,000) and costs ($800,000) to Class Counsel, Settlement Administration Costs ($25,375.94), the PAGA Settlement ($10,000), and the Plaintiff Enhancement Payment ($50,000), a Net Settlement Amount of approximately $1,214,624.06 prior to deducting payroll taxes will be automatically paid out to Settlement Class Members without the need to submit a claim form. These seven (7) hotly-contested Leprino Cases been actively litigated for the last ten (10) years and involved ongoing investigations, the exchange of hard-fought written discovery and the analysis of documents, taking and defending countless depositions, a month-long jury trial, pre-and-post trial appeals, attending three (3) arms-length mediation sessions, and strenuous post-mediation settlement negotiations. Accordingly, the **$3,500,000.00** Settlement is fair, reasonable, and adequate and the Court should grant preliminary approval.

### 1. THE SEVEN LEPRINO CASES

This Settlement will globally resolve the following seven (7) actions in their entirety: (1) *Finder v. Leprino Foods Company*, *et al.*; (2) *Talavera v. Leprino Foods Company*, *et al.*; (3) *Vasquez, et al. v. Leprino Foods Company*, *et al.*; (4) *Perez v. Leprino Foods Company*, *et al.*; (5) *Howell v. Leprino Foods Company*, *et al.*; (6) *Null v. Leprino Foods Company*, *et al.*; and (7) *Walter v. Leprino Foods Company*, *et al*. (collectively "Leprino Cases").

***Finder* and *Talavera***: Plaintiff Jerrod Finder filed the first of the Leprino Cases on November 15, 2013, alleging California Labor Code violations including failures to provide a second meal break or accurate itemized wage statements, waiting time violations, Unfair Business Practices Act violations, and Private Attorneys General Act ("PAGA") claims based on those substantive violations. On January 21, 2015, Plaintiff Jonathon Talavera filed a second wage-and-hour class action against Leprino which ultimately included substantively similar

claims as *Finder*. On November 21, 2016, the Honorable Anthony W. Ishii found significant overlap between *Finder* and *Talavera* and consolidated them into a single action. (*Finder*, 1:13-cv-02059, Doc. 63.) Thereafter, several other wage-and-hour class and representative actions were filed and certified against Leprino for similar, if not identical, theories of liability as summarized below at its three facilities in California: Lemoore West, Lemoore East, and Tracy.

***<u>Vasquez</u>***: On May 8, 2017, Plaintiffs Isaias Vasquez and Linda Hefke brought a similar class action on behalf of the hourly employees at Lemoore West. On March 31, 2020, Judge Ishii certified the on-call meal and rest break claim that proceeded through a jury trial to a verdict for Leprino. (Doc. 163.)

**<u>*Perez* and *Null*</u>**: On April 13, 2017, Plaintiff John Perez brought a similar class action on behalf of the hourly employees at Lemoore East. On March 18, 2019, Plaintiff Donald Null filed a PAGA action against Leprino for the same underlying Labor Code violations in *Perez*. On January 6, 2021, Judge Ishii granted class certification in *Perez*. Leprino's fully briefed motion for summary judgment and decertification is currently pending before Judge Thurston.

***<u>Howell</u>***: On April 24, 2018, Plaintiff Andrew Howell filed a class action on behalf of the hourly employees at the Tracy facility. On March 23, 2022, Judge Ishii granted class certification in *Howell* on the on-call meal and rest break claim.

***<u>Walter</u>***: On February 28, 2020, Charles Bates filed a nearly identical class action as *Howell*. On August 16, 2022, Judge Ishii granted leave to substitute Charles Bates with Plaintiff Fred Walter as the class representative. On April 25, 2023, the Court partially granted class certification in *Walter*.

All seven (7) Leprino Cases are substantially similar and there is overlap between the actions. On April 6, 2020, Leprino filed a Notice of Related Cases in *Finder* listing each of the seven pending Leprino Cases. (*Finder*, 1:13-cv-02059, Doc. 130.) It stated "the plaintiffs and putative classes are represented by the same counsel as represents the plaintiff [in each action except for a settled action] – set forth **substantially the same** California Labor Code claims for wage and hour violations, including, but not limited to, failure to provide legally compliant meal periods, failure to provide accurate wage statements, and failure to pay wages, against the same

defendants. The individuals whom the plaintiff in the [*Walter*] Action seeks to represent in his class action overlap with the putative classes in the other actions. As well, the claims overlap, and the defendants are identical, and **thus all actions involve similar questions of fact and the same or similar questions of law**." (*Id.*)

On March 14, 2023, the *Vasquez* matter proceeded to a jury trial. At issue was whether Leprino had a facility-wide practice at its Lemoore West facility between May 8, 2013 and March 31, 2020 that required class members to be on-call during their meal and rest breaks. On April 6, 2023, the jury rendered a verdict for Leprino, finding that Leprino did not have a facility-wide policy at its Lemoore West facility that required the class to be on-call during rest breaks or during meal breaks. (Doc. 430.) Plaintiffs appealed the verdict on May 5, 2023 and Leprino filed a conditional cross appeal in the event the Ninth Circuit does not affirm the verdict. (Docs. 436 and 439.)

During the pendency of the *Vasquez* appeal, the Parties participated in two (2) full-day, in-person mediation sessions with Ninth Circuit Mediator, Kyungah Kay Suk, on July 31, 2023 and September 18, 2023. The Parties had attempted to mediate the *Vasquez* case unsuccessfully back on January 31, 2020 with a private mediator before any of the Leprino Cases were certified. After ten (10) years of hard-fought litigation, the Parties finally agreed to settle all of the Leprino Cases according to the terms of the fully executed Settlement Agreement.

## 2. SUMMARY OF THE SETTLEMENT TERMS

Under the terms of the Settlement Agreement, Leprino agrees to pay a Maximum Settlement Amount of **$3,500,000.00** to resolve the claims of all individuals who currently or formerly worked at Leprino's Lemoore West, Lemoore East, or Tracy facilities in the State of California as hourly, non-exempt employees ("Class Members") at any time between November 15, 2009 through July 31, 2023 ("Class Period"). All funds remaining after deduction of the Plaintiff Enhancement Payment ($50,000), Attorneys' Fees ($1,400,000), Costs ($800,000), the PAGA Settlement ($10,000), and Settlement Administration Costs ($25,375.94) will result in a pre-tax Net Settlement Amount of $1,214,624.06 that will be paid out to all Class Members who do not Request for Exclusion, on a pro-rata basis based on the total number of Workweek(s)

employed by each Class Member as a non-exempt, hourly employee at any time during the Class Period.

**3. LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process when considering whether to approve the settlement of a class action. First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). At this stage, "the settlement need only be potentially fair." *Id*. In the second step of the process -- which occurs after preliminary approval, notification to class members and the compilation of information as to any objections by class members -- a court determines whether final approval of the settlement should be granted.

A court is to consider and evaluate several factors as part of its assessment of the appropriateness of a proposed settlement. The Ninth Circuit has identified the following non-exclusive ones that may be considered during both the preliminary and final approval processes:

1) the strength of the plaintiff's case;

2) the risk, expense, complexity and likely duration of further litigation;

3) the risk of maintaining class action status throughout the trial;

4) the amount offered in settlement;

5) the extent of discovery completed and the stage of the proceedings;

6) the experience and view of counsel;

7) the presence of a governmental participant; and

8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Each of these factors does not necessarily apply to every class action settlement. Further, other factors may apply in evaluating a proposed settlement in a particular case. For example, courts often consider whether the settlement is the product of arm's length negotiations. See

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

**A. The Strength of the Leprino Cases Weighed Against the Associated Risks Favor Preliminary Approval of the Settlement.**

Plaintiffs have vigorously and zealously litigated the Leprino Cases for almost ten (10) years since November 15, 2013, with Leprino fighting hard every step of the way. The majority of the cases are certified with the Parris Law Firm and The Downey Law Firm, LLC appointed as Class Counsel. The *Vasquez* case reached the dispositive motion phase and the Court denied Leprino's motion for summary judgment before the parties proceeded to trial. Leprino's dispositive summary judgment motion in the *Perez* case is fully briefed by both sides and is currently pending. Leprino has indicated that it intends to file dispositive motions in each of the other cases.

In certifying the cases, Judge Ishii found that the cases raise common questions of law and fact regarding Leprino's employment policies and practices at each of its three facilities. Plaintiffs provided ample evidence and certified claims that Leprino had on-call policies at all three facilities effectively depriving Class Members of compliant meal and rest breaks, had policies that required employees to don and doff equipment off-the-clock, and had timekeeping policies that rounded time punches resulting in late and short meal periods. By granting class certification, Judge Ishii agreed that Plaintiffs' claims at all three plants were amenable to be tried on a classwide basis. (Szeto Decl., Exs. 2–5.)

Indeed, after defeating a barrage of decertification motions and summary judgment, Plaintiffs took *Vasquez* all the way through a class action jury trial. Very few plaintiffs and their attorneys push class action cases all the way to trial. Plaintiffs and Class Counsel believed in the strength of their case and spent a month trying to convince the jury that Leprino had policies and practices that effectively placed Class Members on call during meal and rest breaks. The jury disagreed and rendered a verdict in favor of Leprino. Plaintiffs appealed the verdict, but agreed to stay the appeal to resolve the Leprino Cases.

/ / / /

While Plaintiffs and Class Counsel believe they could and would win their appeal and overturn the jury verdict, they are well aware of the inherent risks involved in any appeal and the consequences that flow from a ruling by the Ninth Circuit. Nevertheless, Class Counsel recognize the risk of potentially losing the *Vasquez* appeal and how that will very likely impact the remainder of the Leprino Cases. For instance, the *Vasquez* appeal may result in decertification with the cases proceeding on an individual basis. And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the Class Members' best interests. If Plaintiffs were to have rejected this multi-million dollar common fund settlement, to achieve any recovery for Plaintiffs the three certified cases would have to survive decertification, summary judgment, and proceed through more trials, and the *Finder* and *Talavera* cases would have to be certified and the move through those other phases. As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the cases involve thousands of Class Members.

Were Plaintiffs to succeed in prevailing at trial on the other cases, the resulting money judgment will most definitely be subject to many rounds of appeals by Leprino, where, again, both sides would face considerable risk – for Plaintiffs their hard-fought jury verdict could be overturned, as could another favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with class action trials and resulting appeals, Class Counsel stand ready and willing to do so again in the other cases. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interest of the Class.

/ / / /

/ / / /

**B. <u>The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery.</u>**

The parties have actively litigated the Leprino Cases since the first case was initially filed on November 15, 2013. There have been ongoing investigations and the exchange of discovery including numerous class member and expert depositions and numerous documents and time punch data analysis. Furthermore, the parties engaged in two (2) arm's length mediations with Ninth Circuit Mediator, Kyungah Kay Suk, a very well respected, experienced mediator who specializes in resolving cases on appeal before the Ninth Circuit.

During the mediation, the parties exchanged information and discussed all aspects of the Leprino Cases including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possible outcome of the *Vasquez* appeal and its effect on the other cases, among other things. During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture. Arriving at a settlement that was acceptable to both parties was not easy. Leprino and its counsel felt very strongly about Leprino's ability to prevail on the appeal and at trial in the other cases while Class Counsel adamantly felt that Plaintiffs would win the appeal and at trial in the other cases.

The parties heavily litigated the Leprino Cases for ten years, all the way up until the settlement was reached. After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation. The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how *Vasquez* might have concluded on appeal and the fate of the other cases. The proposed Settlement is based on this incredibly large volume of facts, evidence, and investigation.

**C. <u>The Settlement Amount is Fair, Reasonable, and Adequate.</u>**

The proposed Settlement of $3,500,000.00 represents an excellent resolution of this case given that the jury rendered a defense verdict in *Vasquez*. If the Ninth Circuit agrees with the jury, the result would be a zero-dollar recovery. And if Leprino succeeds in the same manner on

all of six remaining cases, none of the Class Members would recover a dime. Thus, recovering $3,500,000.00 now for all of the Class Members in the face of a defense verdict is an amazing result by all accounts.

The proposed Settlement provides for a Maximum Settlement Amount of $3,500,000.00, inclusive of attorneys' fees and all associated costs, that will be automatically paid out to Class Members who do not submit a Request for Exclusion. Leprino represents that there are approximately 3,300 Class Members in the Settlement. (Szeto Decl., Ex. 1 at ¶ 60.) This equates to a pre-tax recovery of approximately $1,060.61 based on the Maximum Settlement Amount ($3,500,000.00 / 3,300 = $1,060.61).

The $3,500,000.00 Maximum Settlement Amount represents the present value of the Leprino Cases collectively, in light of a defense verdict in *Vasquez*, the pending appeal, and the potential for decertification and/or a defense verdict in the remaining cases. The crux of the monetary value in the Leprino Cases has always been on the on-call meal and rest break claim because that theory allocated damages to every single shift for ten years across all three plants. Unfortunately, zero damages were awarded in *Vasquez* for the on-call meal and rest break claim given the defense verdict. If the result in *Vasquez* were applied to the remainder of the Leprino Cases, Class Members could potentially recover nothing in the other cases as well.

As for the potential exposure analysis of the remaining claims, potential damages for the off-the-clock claim in the Leprino Cases according to Plaintiffs' expert's calculations equate to $353,079. (Szeto Decl. at ¶ 7.) Damages for the late and short meal breaks resulting from Leprino's rounding policy extrapolate out to roughly $279,167.88 in unpaid wages based on the 2,089.58 hours of unpaid wages for the 25% sample Leprino provided for class certification, applying Plaintiff Walter's hourly rate of $33.40. (*Walter*, 2:20-cv-00700, Doc. 32-1 at 6:18-28.) Damages for the second meal break claim across all three plants for the entire ten-year Class Period are extrapolated to be approximately $1,279,350 based on Plaintiffs' expert's analysis that 8,529 workdays from 2011 to 2015 reflected no second meal break recorded. (*Talavera*, 1:15-cv-00105, Doc. 65 at p. 4.) PAGA penalties for the initial violation equate to $330,000 for one Labor Code violation. Thus, a $3,500,000.00 Maximum Settlement Amount

yielding a Net Settlement Amount of $1,214,624.06 represents a fair, reasonable, and adequate Settlement. There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds for purposes of preliminary approval. Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30.

In light of the potential risk of the *Vasquez* appeal and the possibility of a defense verdict in the remainder of the Leprino Cases, Class Counsel believes that the $3,500,000.00 Maximum Settlement Amount is within a reasonable range given the uncertainties of success as well as the costs in terms of both time and expense in litigating the rest of the Leprino Cases. Further, the $3,500,000.00 Maximum Settlement Amount was the result of arms' length negotiations with a Ninth Circuit Mediator. She was not someone hired and paid for by the parties. Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations of counsel into account, particularly where, as here, Class Counsel is competent, has experience with this type of litigation, and significant discovery and investigation has been completed. *Newberg* §11.47. Accordingly, the Court should approve the Settlement.

**4. LEGAL STANDARD FOR ATTORNEYS' FEES AND IN A CLASS ACTION SETTLEMENT**

Class Counsel seeks approval of an attorneys' fee award equal to 40% of the Maximum Settlement Amount. An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common

fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[1] Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Courts have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id* at *31.

The Ninth Circuit has made clear that when a fund is established which makes a pool of money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly calculated as a percentage of the entire fund. *See Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27 (9th Cir. 1997). In *Boeing*, the Court concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise

[1] The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. *Boeing*, 444 U.S. at 478.

would be returned to the defendants. *Boeing*, 444 U.S. at 480-81; *see also Six Mexican Workers*, 904 F.2d at 1311; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with federal laws. The continued viability of wage-and-hour laws, like the viability of other remedial statutes, depends on the ability of private litigants to seek redress through litigation. The success of these lawsuits depends in part on the availability and willingness of attorneys to bring them. Substantial fee awards also encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys general." Indeed, "[a]bsent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on behalf of their injured clients." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006).

### A. AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE

Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul,* 886 F.2d at 272. Given the results achieved and the difficulties attendant in litigating all of the Leprino Cases and the fact that Class Counsel took one all the way through a jury trial, an upward adjustment is warranted.

In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark." *See Vizcaino*, 290 F.3d at 1047-1050. These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); the quality of the results

obtained by Class Counsel; (ii) the risk taken on by Class Counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by Class Counsel; (v) Class Counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases; and, to a certain extent, the percentage fee award originally contracted for between Plaintiffs and Class Counsel. *Id* A consideration of the *Vizcaino* factors shows that Class Counsel's request for 40% the total value of the settlement is exceedingly reasonable.

**1. The Risks Assumed by Class Counsel Favor the Fee Award Sought**

Class Counsel assumed a very real risk in taking on the Leprino Cases. Plaintiffs took on a national corporation. Class Counsel took the case on a contingency basis and invested time, effort, and money with no guarantee of any recovery. In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate. *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Class Counsel proceeded knowing there was a chance that Leprino would prevail at trial and that even if Plaintiffs prevailed, each case would not be resolved without an appeal. The risk of no recovery in complex class actions of this type is very real. There are numerous cases where Class Counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever. *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important factor in approving the class action settlement.). From the outset, Leprino has adamantly denied any liability and continues to do so today.

These were complicated and uncertain cases in which Leprino vehemently contested liability. The Leprino Cases have been pending since 2013. There have been voluminous discovery and related disputes that have required substantial efforts by Class Counsel. Class Counsel has made a significant effort on behalf of the Class, including taking and defending over

80 depositions up and down the State of California, without assurance of any compensation. The risks of the case and litigation obstacles were great, but Class Counsel, nevertheless, achieved an extremely successful result, and thus, this *Vizcaino* factor militates in favor of the fee award sought by Class Counsel.

**2. Class Counsel Obtained an Excellent Result for the Class**

The result obtained by Class Counsel here is remarkable in light of the current status of the cases. The parties were in the midst of the *Vasquez* appeal when the settlement was obtained. But for Class Counsel taking the *Vasquez* case all the way to trial and continuing to persist at the appellate level, Leprino would not have been willing to come to the table and place any value on the Leprino Cases.

Class Counsel diligently and effectively investigated Plaintiffs' claims, drafted pleadings, interviewed witnesses, prepared and responded to discovery, reviewed and analyzed documents produced, filed countless motions to compel discovery, took and defended over 80 depositions, hired experts, successfully opposed several motions for decertification and a summary judgment motion, tried the *Vasquez* matter to a jury, and appealed the verdict. Class Counsel concluded that the Settlement is in the best interests of the Class in light of the last ten years of litigation and after evaluating the risk that further litigation might result in the Class Members not recovering anything at all was a very significant factor in determining that this settlement is fair, reasonable, and adequate. As a result of the settlement, all of the Class Members will be provided with an automatic recovery. Thus, this *Vizcaino* factor greatly favors Class Counsel's fee request.

The fairness of this fee request is further supported by the high quality of Class Counsel's legal representation as described above and in the declaration. Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

/ / / /

/ / / /

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.[2] Here, Leprino is represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases. The ability of Class Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Class Counsel's representation. Accordingly, this factor strongly supports the requested fee.

**3. Class Counsel Obtained Swift and Efficient Relief for the Class**

While the *Vizcaino* court considered the protracted litigation in that case, it stressed: "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino*, 290 F.3d at 1050, n. 5. In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement." *Id.* Here, Class Counsel achieved a substantial benefit for Class Members in a very timely fashion, providing Class Members with substantial and certain relief much sooner than if this matter had been extensively litigated. There is no doubt that either side would have appealed the trial verdict.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of the Leprino Cases. As discussed above, Class Counsel litigated these cases heavily, took and defended over 80 depositions up and down the state, and reviewed hundreds of thousands of pages of relevant documents produced by Leprino.[3] Additionally, Class Counsel spoke with numerous Class Members concerning their claims. Thus, Class Counsel's fee request is reasonable here.

/ / / /

---

[2] *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

[3] Szeto Decl. at ¶ 2.

**4. The Skill and Reputation of Class Counsel Justifies the Fee Requested**

As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiffs and the Class in this case.[4] As a result, these factors favor the fee award sought by Class Counsel. The Parris Law Firm has dedicated itself to this case. Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.[5] The goal achieved is the extraordinary result of obtaining $3,500,000.00 for the Class. Class counsel respectfully requests an award of attorneys' fees equal to 40% of that amount.

**5. Reasonable Expectations of Counsel and Customary Fees in Similar Cases**

Class Counsel knew this case would be an uphill battle, yet still took on Leprino on a contingency basis. And they were right. Leprino fought the Leprino Cases strenuously for ten years and at great expense including on discovery and defending against Plaintiffs' experts and Plaintiffs' class member declarants. Accordingly, there was a reasonable expectation based on the circumstances of the case and given the amount of work and hours Class Counsel devoted to this case that warrants an upward adjustment of the 25% benchmark to 40% of the Maximum Settlement Amount.

This adjusted fee request is commensurate with federal court -- and, in particular, Ninth Circuit -- precedent: case surveys reflect that awards of this amount, or more, are common. Newberg, Newberg on Class Actions, 4th Ed., 2002 §14.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) (citing cases awarding an award of 33%). Indeed, many courts have approved common fund fee awards equivalent to or greater than the percentage requested here, and even when the award results in a substantial multiplier. *See, e.g., In re Pacific Enterprises*, 47 F.3d at 379 (affirming an award equal to 33% of the common fund); *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund);

---

[4] *Id*. at ¶ 11.
[5] *Id.*

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (53% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was more than eight times counsel's lodestar) ("BuSpar"); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004), (multiplier was well over eight times counsel's lodestar); *In re Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) (multiplier of 4.88 awarded); *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) (approving multiplier of approximately 3.7); *Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2, 2004) (approving 2.66 multiplier). Accordingly, Class Counsel's 40% fee request is in line with the customary fees awarded in similar cases given the amount of work Class Counsel devoted on behalf of the Class, particularly in light of taking the *Vasquez* case to trial and appealing the verdict, something that most plaintiffs' counsel would not have done.

**5. THE PROPOSED SETTLEMENT CLASS SATISFIES THE ELEMENTS FOR CLASS CERTIFICATION.**

Plaintiffs seek to certify the following Class, which Leprino does not oppose or contest for settlement purposes only:

> All individuals who currently or formerly worked at Leprino's Lemoore West, Lemoore East, or Tracy facilities in the State of California as hourly, non-exempt employees at any time between November 15, 2009 and July 31, 2023.

Judge Ishii already certified subsets of this Class four times in *Vasquez*, *Perez*, *Howell*, and *Walter*. (Szeto Decl., Exs. 2–5.) Just as Judge Ishii previously found, the Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1) the Class is ascertainable and so numerous that joinder of all members of the Class is impracticable; (2) there are common questions of law and fact, and the questions of law and fact common to the Class predominate; (3) Plaintiffs' claims are typical of the claims of the

members of the Class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the Class; and (5) a class action is superior to other available methods for the efficient adjudication of the controversy.

**A. Ascertainability and Numerousity**

Rule 23 requires that the proposed class be ascertainable by reference to objective criteria and that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Class is ascertainable based on objective criteria, namely, whether someone was employed by Leprino as an hourly, non-exempt employee at either Lemoore West, Lemoore East, or Tracy during the Class Period. Leprino can ascertain the Class through its payroll records. Leprino estimates that there are 3,300 Class Members during the Class Period. (Szeto Decl., Ex. 1 at ¶ 60.) Accordingly, the Class is ascertainable and sufficiently numerous.

**B. Common Questions of Law and Fact Predominate**

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the common questions across the Class include the certified questions of whether Leprino had an on-call policy at its facilities that deprived Class Members of meal and rest breaks, whether Leprino failed to provide second meal breaks, whether Leprino had a timekeeping policy that rounded punches resulting in late and short meal breaks, whether Leprino's policies resulted in Class Members donning and doffing off the clock, and also include the questions on which Plaintiffs would still seek certification, including, whether Leprino failed to pay minimum wage, failed to pay overtime wages, failed to pay appropriate premium pay for meal or rest breaks not provided, failed to furnish accurate wage statements, or failed to pay earned wages at termination. These types of claims are the "sort routinely, and properly, found suitable for class treatment." *Brinker*, at 1033. "The theory of liability—that Defendant has a uniform policy and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." *Id.*; *see also In re Taco Bell Wage and*

*Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *5 (E.D.Cal. 2012) ("Numerous courts within the Ninth Circuit have held that commonality exists where a defendant's policy allegedly violates the meal requirements of California law."). In fact, Judge Ishii already certified many of these common questions. With respect to the second meal break claim, Plaintiffs have provided ample evidence for certification in their class certification brief in *Talavera*. Judge Ishii already consolidated *Finder* and *Talavera* on November 21, 2016. And, Leprino has taken the position that the claims in *Finder* should be reduced into the pending *Talavera* certification motion. (*Finder*, 1:13-cv-02059, Doc. 138.)

Plaintiffs contend that these common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). These issues of fact and law raised in the Leprino Cases are common to all members of the Class and predominate over individual questions. First, all of the Leprino policies and practices at issue apply uniformly across all Class Members at the three facilities. Thus, proving that the alleged Leprino policies and practices violate the law does not require any individualized proof. Common questions likely will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim," *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 334 F.R.D. 234, 256 (E.D. Cal. 2019) (citing *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)), or "when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced." (*Gomez*, 334 F.R.D. at 256 (citing Newberg on Class Actions § 4:50).) Second, there are no individualized inquiries that would somehow bar certification or recovery here. Instead, Plaintiffs' theories of liability are "sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)). Notably, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b) (3)," especially in a wage-and-hour case. *Levya v. Medline Indus., Inc.* 716 F.3d 510, 514 (9th Cir. 2013); *see also Wal-Mart*, 131 S.Ct. at 2558 ("[I]ndividualized monetary claims belong in Rule 23(b)(3)"). "[D]amages determinations are individual in nearly all wage-and-hour class actions," and

therefore any rule precluding certification " 'on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.' " *Levya*, 716 F.3d at 513–14 (quoting *Brinker*, 53 Cal. 4th at 354). For settlement purposes, whether Leprino had an on-call policy at its facilities that deprived Class Members of meal and rest breaks, whether Leprino failed to provide second meal breaks, whether Leprino had a timekeeping policy that rounded punches resulting in late and short meal breaks, whether Leprino's policies resulted in Class Members donning and doffing off the clock, and whether Leprino failed to provide minimum wage, overtime, premium pay, accurate wage statements and final wages at termination, are questions of law and fact subject to common proof that would predominate over individualized inquiries.

**C. <u>Typicality</u>**

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Here, Plaintiffs were employed as hourly, non-exempt employee at Leprino's facilities and were subjected to Leprino's uniform policies and practices, just like the rest of the Class Members. Plaintiffs suffered the same harms as the absent Class Members. Plaintiffs assert claims that are typical of the other Class Members because they arise from the same factual basis and are based on the same legal theory as those applicable to the other Class Members. (Szeto Decl., Exs. 2–5; *Talavera*, 1:15-cv-00105, Doc. 59; *Finder*, 1:13-cv-02059, Doc. 37.)

**D. <u>Adequacy</u>**

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs submits that no conflict exists between Plaintiffs and the Class because Plaintiffs allegedly has suffered the same violations as all Class Members and has fairly represented all Class Members. (Szeto Decl., Exs. 2–5; *Talavera*, 1:15-cv-00105, Doc. 59;

*Finder*, 1:13-cv-02059, Doc. 37.) Despite the settlement, Plaintiffs remain willing to vigorously prosecute the Leprino Cases to the benefit of the Class. Furthermore, Plaintiffs are represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in their declarations supported herewith. (Szeto Decl., Ex. 6.)

**E. Superiority**

Plaintiffs submit the requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, e.g. *Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis. Here, Judge Ishii found the superiority factors weigh in favor of certification. (Szeto Decl., Exs. 2–5.) Notably, Plaintiffs tried the *Vasquez* matter as a class action, which further proves that a class action is superior to other methods of adjudication.

**6. THE PROPOSED NOTICE IS ADEQUATE**

California statutory and case law vests the court with broad discretion in fashioning appropriate class notice. *See* CAL. CIV. CODE § 1781; *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 973-74. The proposed Notice attached as **Exhibit "A"** to the Settlement Agreement provide information on the meaning and nature of the Settlement; the terms and provisions of the proposed Settlement, the relief the proposed Settlement will provide to the Class Members; Class Counsel's request for reimbursement of costs and attorneys' fees; the date, time, and place of the final settlement approval hearing; and the procedure and deadlines for participating and submitting objections to the proposed Settlement. The proposed Notice is consistent with class certification notices approved by numerous state and federal courts.

The proposed Notice also fulfills the requirement of neutrality in class notices. *Newberg*, at § 8.39. "Sufficient information about the case should be provided to enable class members to make an informed decision about their participation." *Manual for Complex Litigation* § 21.311 at p. 413 (4th ed. 2007). The proposed Notice summarizes the proceedings to date and the terms and conditions of the proposed Settlement in an informative and coherent manner. The proposed

Notice is "accurate, objective, and understandable to class members . . . ." *Mendoza v. United States* (9th Cir. 1980) 623 F.2d 1338. The proposed Notice recognizes that the Court has not yet granted final approval and apprises the Class Members of how to object to the proposed Settlement. The proposed Notice satisfies all due process requirements and comply with the standards of fairness, completeness, and neutrality. FED. R. CIV. P. 23(c)(2) and 23(e); *Newberg*, at §§ 8.21, 8.39; *Manual*, at §§ 21.311, 21.312; *See Cartt*, *supra*, 50 Cal.App.3d at p. 960. Accordingly, the Court should approve the proposed Class Notice.

### 7. Appointing Phoenix Class Action Administration Solutions as the Settlement Administrator

The parties propose the appointment of Phoenix Class Action Administration Solutions ("Phoenix"), an experienced, reputable third party administrator, as the Settlement Administrator to administer the proposed Settlement. Neither party or their counsel own or is affiliated with Phoenix. Phoenix will print and distribute the Notice to the Class by First Class mail; establish a mailing address and toll-free telephone number to receive Class Members' inquiries about the proposed Settlement; will receive, review, and process all objections to the proposed Settlement; will receive and process any written disputes and supporting documentation submitted by the Class Members as to their number of work weeks; will handle inquiries from Class Members regarding the proposed Settlement; will calculate each Class Members' Individual Settlement Payment; will mail the settlement checks to the Settlement Class Members; and will perform any other usual and customary duties for administering a class action settlement. Phoenix's fees and expenses shall be paid out of the Maximum Settlement Amount, not to exceed $25,375.94. Accordingly, the Court should appoint Phoenix and direct Phoenix to administer the settlement as set forth in the Settlement Agreement.

### 8. The Plaintiff Enhancement Payments Are Fair and Reasonable

Plaintiffs request that the Court approve a Plaintiff Enhancement Payment in the total amount of $50,000, broken down as follows, for their efforts in filing and prosecuting the Leprino Cases: Jerrod Finder ($5,000.00), Jonathan Talavera ($5,000.00), Isaias Vasquez ($10,000.00), Linda Hefke ($10,000.00), John Perez ($5,000.00), Andrew Howell ($5,000.00),

Donald Null ($5,000.00), and Fred Walters ($5,000.00). It is within the Court's discretion to award to the Class Representatives for their efforts and work. *Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative). The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Id.*

Enhancement payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."). In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

Enhancement payments are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006). Plaintiffs spearheaded each of the seven Leprino Cases.[6] They committed time to the litigation by reviewing pleadings, communicating with Class Counsel

---

[6] Szeto Decl. at ¶ 12.

during the prosecution of this case, participated in written discovery, and sitting for deposition, warranting an enhancement payment.[7] *See Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a $20,000 award where plaintiff "made herself available for deposition on two separate occasions; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.")

The Plaintiffs Enhancement Payments are further justified because Plaintiffs have agreed to the full general release of their claims against Leprino, which is much broader than the release that applies to the class.[8] Broad releases of the named plaintiff's claims that go beyond what is required of the class members are taken into account when considering the reasonableness of the incentive award. *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co*., No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his service to the class and for his broad release of all claims, known or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving the incentive award in part because the plaintiff executed "a general release that will resolve her individual claims, as well the class claims").

Notably, the award is also well within the acceptable range awarded in similar cases. *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (holding that incentive awards of $15,000 for each of the three named representatives was "well within

---

[7] *Id*.
[8] Szeto Decl., Ex. 1 at ¶ 80.

the range awarded in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation"). Without the effort of Plaintiffs, these cases would not have been filed and a classwide settlement would not have been achieved. The proposed $50,000 Plaintiff Enhancement Payment to Plaintiffs is therefore appropriate and justified as part of the overall settlement.

**9. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed **$3,500,000.00** Settlement; preliminarily approve Class Counsel's request for attorneys' fees in the amount of $1,400,000 and reimbursement of litigation costs and expenses in the amount of $800,000; preliminarily approve a $50,000 Plaintiff Enhancement Payment to Plaintiffs; appoint Phoenix as the Settlement Administrator; approve the Class Notice; and set a final approval hearing on **March 8, 2024**.

DATED: October 16, 2023

**PARRIS LAW FIRM**

By: /s/ Kitty K. Szeto
Kitty K. Szeto
Attorneys for Plaintiffs and the Settlement Class