1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| ISAIAS VASQUEZ and LINDA HEFKE on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  1:17-cv-00796-JLT-BAM<br><br>**Member cases:**<br><br>**1:13-cv-02059-JLT-BAM**<br>**1:15-cv-00105-JLT-BAM**<br>**1:17-cv-00686-JLT-BAM**<br>**1:18-cv-01404-JLT-BAM**<br>**2:20-cv-00700-JLT-BAM**<br><br>**ORDER GRANTING PLAINTIFFS' MOTION (1) CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS; (2) PRELIMINARILY APPROVING THE CLASS ACTION SETTLEMENT; (3) APPOINTING PLAINTIFFS AS CLASS REPRESENTATIVES AND THEIR COUNSEL AS CLASS COUNSEL; (4) APPROVING THE NOTICE PACKET; AND (5) SETTING A HEARING FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**<br><br>(Doc. 443) |

26
27
28

Presently pending before the Court is Plaintiffs' unopposed motion for certification of a settlement class under Federal Rule of Civil Procedure 23 and preliminary approval of the parties' class action settlement. Plaintiffs Isaias Vazquez, Linda Hefke, Jerrod Finder, Jonathan Talavera,

1

John Perez, Andrew Howell, and Fred Walter (collectively "Plaintiffs") on behalf of themselves and others similarly situated filed the motion on October 16, 2023.  (Doc. 443.) Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Defendants" or "Leprino,") filed a statement of non-opposition to the motion on December 4, 2023.  (Doc. 452.)  The motion was referred to United States Magistrate Judge Barbara A. McAuliffe following consent by the parties for the motion to be heard and decided by the assigned Magistrate Judge. 28 U.S.C. § 636(b)(1)(B); 636(c)(1); (Doc. 450, 451.)  A hearing on the motion was held via Zoom video conference on January 22, 2024, before the Honorable Barbara A. McAuliffe.  Counsel Kitty Kit Szeto appeared via Zoom on behalf of Plaintiffs. Counsel Lisa Pooley appeared via Zoom on behalf of Defendants.

At the hearing, the Court requested supplemental briefing on several issues: (1) the requested enhancement payment to Donald Null, (2) appointment of class counsel, (3) a lodestar related to requested attorneys' fees; and (4) documentation of costs.  Plaintiffs filed supplemental briefing on February 4, 2024.  (Doc. 460.)

For the following reasons, the Court GRANTS the motion for preliminary settlement approval; CERTIFIES the proposed Settlement Class; APPOINTS Plaintiffs as Class Representatives; APPOINTS the Parris Law Firm and The Downey Law Firm, LLC as Class Counsel; and ORDERS dissemination of notice to the Class pursuant to the proposed notice plan.

## **BACKGROUND**

### A.      **Background of the Leprino Cases**

Beginning in 2013 and until 2020, Plaintiffs filed a series of proposed class actions against Leprino challenging various of Leprino's employment policies and practices.  After years of litigation, Plaintiffs now seek preliminary approval of the following cases pending in this Court: (1) *Finder v. Leprino Foods Company, et al*.; (2) *Talavera v. Leprino Foods Company, et al.*; (3) *Vasquez, et al. v. Leprino Foods Company, et al*.; (4) *Perez v. Leprino Foods Company, et al*.; (5) *Howell v. Leprino Foods Company, et al.*; and (6) *Walter v. Leprino Foods Company, et al*.

2

1  (collectively "Leprino Cases").[1]  The Leprino Cases challenge certain wage and hour policies and

2  practices, which allegedly resulted in denial of full compensation for employees, at some or all of

3  Leprino's three processing facilities in California:  Lemoore West, Lemoore East, and Tracy.  All

4  of the Leprino Cases were ultimately related to one another under this Court's Local Rule 123.

5       Following a long and convoluted procedural history, Plaintiffs in the Leprino Cases and

6  Leprino reached a settlement.  On October 16, 2023, ten years after filing the first of the Leprino

7  Cases, Plaintiffs filed this Motion for Preliminary Approval of Class Action Settlement to settle

8  all of the Leprino Cases.  Soon thereafter, the Leprino Cases were consolidated on December 7,

9  2023, for purposes of preliminary and final approval of the settlement.  (Doc. 454.)  The Leprino

10  Cases are described as follows:

11       ***Finder* and *Talavera* Cases**

12       Plaintiff Jerrod Finder filed a lawsuit entitled *Finder v. Leprino Foods Company, et al*.,

13  Case No. 1:13-cv-02059-JLT-BAM ("*Finder*"), on November 15, 2013, alleging California Labor

14  Code violations including failures to provide a second meal break or accurate itemized wage

15  statements, waiting time violations, Unfair Business Practices Act violations, and Private

16  Attorneys General Act ("PAGA") claims based on those substantive violations.  On January 21,

17  2015, Plaintiff Jonathon Talavera filed a second wage-and hour class action against Leprino

18  entitled *Talavera v. Leprino Foods Company*, et al., Case. No. 1:15-cv-00105-JLT-BAM

19  ("*Talavera*"), which ultimately included substantively similar claims as *Finder*.  On November

20  21, 2016, the Honorable Anthony W. Ishii, the then-assigned district judge, found significant

21  overlap between *Finder* and *Talavera* and consolidated them into a single action (*Finder*, 1:13-v-

22  02059, Doc. 63.)  Much of the litigation in *Finder* and *Talavera* was stayed pending an

23  interlocutory appeal and then while awaiting the *Vasquez* case, described below, to be resolved.

24  _____

25  [1] In their motion, Plaintiffs also requested preliminary approval of the settlement to resolve *Null v. Leprino Foods Company, et al*., Case No. 1:19-cv-00525-AWI-BAM.  (Doc. 443, p. 9.)

26  However, the *Null* case was remanded to Kings County Superior Court on January 22, 2020. (Doc. 34, Case No. 1:19-cv-00525-AWI-BAM).  Because the case was remanded, the Court lacks

27  jurisdiction to resolve any issue related to *Null*, including any request for an enhancement award. In supplemental briefing filed on February 5, 2024, Plaintiffs withdrew their request for an

28  enhancement payment to Donald Null.  (Doc. 460 p. 2.)

1    (*Finder,* 1:13-cv-02059, *see*, *e.g.,* Docs. 49, 81, 134, 146.)

2           *Perez* **Case**

3           On April 13, 2017, Plaintiff John Perez filed a similar wage-and-hour class action, which

4    Leprino removed to federal court, entitled *Perez v. Leprino Foods Company, et al*., Case No.

5    1:17-cv-00686-JLT-BAM ("*Perez*"), on behalf of the hourly employees at Leprino's Lemoore

6    East facility.  *Perez* challenged policies and practices of requiring non-exempt employees to work

7    substantial amounts of time without pay as a result of donning and doffing of sanitary gear off the

8    clock, and allegedly failing to provide their non-exempt employees with the meal and rest

9    periods.  The Court related *Perez* to *Finder/Talavera*.  On January 6, 2021, Judge Ishii granted

10   class certification of certain of *Perez's* off-the-clock, meal and rest period, and derivative claims.

11   (*Perez*, 1:17-cv-00686, Doc.74.)

12          *Vasquez* **Case**

13          On May 8, 2017, Plaintiffs Isaias Vasquez and Linda Hefke filed another wage-and-hour

14   class action, which Leprino removed to federal court, entitled *Vasquez, et al. v .Leprino Foods

15   Company, et al*., Case No. 1:17-cv-00796-JLT-BAM ("*Vasquez*"), on behalf of the hourly

16   employees at Leprino's Lemoore West facility. The Court related *Vasquez* to *Perez* and

17   *Finder/Talavera*.  On March 31, 2020, Judge Ishii granted class certification of claims for meal

18   and rest break; off-the-clock; overtime; minimum wage; failure to compensate for all hours

19   worked; accurate itemized wage statements; failure to pay wages when due; and unfair

20   competition claims.  (*Vasquez*, 1:17-cv-796, Doc. 163, p. 31.) [2]  Thereafter, Plaintiffs and

21   Defendants proceeded to a jury trial on March 14, 2023.  The jury returned a verdict in Leprino's

22   favor and against Plaintiffs on April 6, 2023. (*Vasquez*, 1:17-cv-796, Doc. 430.)   Following the

23   jury's verdict, Plaintiffs appealed.  During the pendency of the appeal, the parties settled the

24   Leprino Cases.

25          *Howell* **Case**

26          On April 24, 2018, Plaintiff Andrew Howell filed a class action on behalf of the hourly

27   _____

28   [2] All page numbers refer to the CM/ECF pagination number.

4

employees at the Tracy facility, entitled *Howell v. Leprino Foods Company, et al.*, Case No. 1:18-cv-01404-JLT-BAM ("*Howell*"). On March 23, 2022, Judge Ishii granted class certification in *Howell* on the on-call meal and rest break claims.  (*Howell*, 1:18-cv-1404, Doc. 108.)  The Court related *Howell* to *Finder*.

### *Walter* **Case**

On February 28, 2020, Charles Bates filed a nearly identical wage-and-hour class action as *Howell*, which Leprino removed to federal court. The Court related *Bates* to *Howell*.  Then, on August 16, 2022, Judge Ishii granted leave to substitute Charles Bates with Plaintiff Fred Walter as the class representative in the case now entitled *Walter v. Leprino Foods Company, et al.*, Case No. 2:20-cv-00700-JLT-BAM ("*Walter*"). On April 25, 2022, Judge Ishii granted class certification on claims for late and short meal breaks, on-call breaks, and on-duty meal period. (*Walter*, 2:20-cv-00700, Doc. 62.)

**B.**     **Events Leading to the Settlement in the Leprino Cases**

The Leprino Cases involve a decade-long sojourn through this Court. Only the relevant highlights to the motion currently pending are provided.

On March 14, 2023, the *Vasquez* case proceeded to a jury trial. At issue was whether Leprino had a facility-wide policy at its Lemoore West facility between May 8, 2013 and March 31, 2020 that required class members to be on-call during their meal and rest breaks. On April 6, 2023, the jury rendered a verdict for Leprino, finding that Leprino did not have a facility-wide policy at its Lemoore West facility and that the class was not required to be on-call during rest breaks or during meal breaks. (Doc. 430.) Plaintiffs appealed the verdict on May 5, 2023, and Leprino filed a conditional cross-appeal in the event the Ninth Circuit did not affirm the verdict.  (Docs. 436 and 439.)

During the pendency of the *Vasquez* appeal, the parties participated in two (2) full-day, in-person mediation sessions with Ninth Circuit Mediator, Kyungah Kay Suk, on July 31, 2023 and September 18, 2023.  (Doc. 443, p. 11.)  The parties had attempted previously to mediate the *Vasquez* case unsuccessfully on January 31, 2020 with a private mediator. After ten years of hard-fought litigation, the parties finally agreed to settle all of the Leprino Cases according to the terms

5

1  of the fully executed Settlement Agreement. *Id.*

2  **C.      Summary of the Proposed Settlement**

3  **1. Settlement Class**

4  Plaintiffs seek to certify the following Class, which Leprino does not oppose or contest for

5  settlement purposes only:

6
7  All individuals who currently or formerly worked at Leprino's Lemoore West, Lemoore East, or Tracy facilities in the State of California as hourly, non-exempt employees at any time between November 15, 2009 and July 31, 2023. ("Settlement
8  Class.")

9  Subsets of this class had been certified previously in the *Vasquez, Perez, Howell,* and *Walter*

10  matters. (Doc. 443-1, Szeto Decl. Exs. 2-5.)

11  **2. Monetary Value: Maximum Settlement Amount, Attorney's fees and Costs,**

12  **Incentive Award, Settlement Administrator's Fees**

13  Leprino has agreed to pay a total maximum settlement fund of $3,500,000.00 ("Maximum

14  Settlement Amount") to settle these long-standing cases against Leprino. (Doc. 443-1, Ex. 1

15  (Settlement Agreement) ¶ 28.)

16  The following amounts will be deducted from the Maximum Settlement Amount:

17  (1) payment of attorneys' fees ($1,400,000) and costs ($800,000) to Class Counsel (Doc.

18  443-1, Ex. 1 (Settlement Agreement) ¶ 5),

19  (2) Settlement Administration Costs ($25,375.94) (Doc. 443-1, Ex. 1 (Settlement

20  Agreement) ¶ 47),

21  (3) the PAGA Settlement ($10,000) (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶¶ 27,

22  35), and

23  (4) the Plaintiff Enhancement Payment ($45,000) (Doc. 443-1, Ex. 1 (Settlement

24  Agreement) ¶ 57; Doc. 460, pp. 2, 5.)[3]

25  ///

26

27  ───────────────
[3] The Settlement Agreement states a total Plaintiff Enhancement Payment of $50,000 for class representatives.  In supplemental briefing, Plaintiffs withdrew the $5,000 requested Enhancement
28  Payment for Ronald Null, leaving a total Plaintiff Enhancement Payment of $45,000.

### 3.      Net Settlement Amount

A Net Settlement Amount of approximately $1,219,624.06 prior to deducting payroll taxes, will be automatically paid out to Settlement Class Members without the need to submit a claim form. The entire Net Settlement Amount will be distributed to the Participating Class Members. A Participating Class member is any Class Member who does not submit a timely and valid request for exclusion.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 36.)

Each Individual Settlement Payment shall be calculated by dividing the Class Member's total number of Workweek(s) employed as an hourly, non-exempt employee of Leprino in the State of California during the Class Period as reflected in Defendants' records by the total number of Workweek(s) for all Class Members employed as hourly, non-exempt employees of Leprino in the State of California during the Class Period. Leprino estimates about 2,000,000 workweeks for the class.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 60.)  The resulting number shall be multiplied by the Net Settlement Amount to arrive at each Individual Settlement Payment.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 62.)

Following Final Approval and dismissal of the Leprino Cases, Defendants agree to waive their Bill of Costs totaling $65,297.26 awarded in *Vasquez, et al. v. Leprino Foods Company, et al.,* Case No. 1:17-cv-00796-JLT-BAM filed on April 21, 2023. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 79.)

### 4.      Scope of Release

"Released Class Claims" means all claims under state, federal or local law, whether statutory, common law or administrative law, alleged in the operative complaints in the Action,[4] or that could have been alleged based on the factual allegations in the operative complaints in the Action, including: (1) Failure to Pay Minimum Wage; (2) Failure to Pay Overtime Wages; (3) Failure To Provide Meal Periods and Failure to Pay One Hour of Pay at Regular Rate of

---

[4] The Settlement Agreement defines "Action" as the *Vasquez* Action, the *Perez* Action, the *Finder/Talavera* Action, the *Howell* Action, the *Null* Action, and the *Walter* Action.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 3.).  Thus, the Action is basically the Leprino Cases, and including the *Null* case, which was remanded to state court.

Compensation; (4) Failure To Provide Rest Periods and Failure to Pay One Hour of Pay at Regular Rate of Compensation; (5) Failure to Furnish Accurate Wage Statements; (6) Failure to Pay Earned Wages Upon Termination; (7) Conversion; and (8) Unfair Competition in Violation of California Business and Professions Code Section 17200, et seq., including, but not limited to, claims for injunctive relief; punitive damages; liquidated damages, penalties of any nature; interest; fees; costs; and all other claims and allegations made or which could have been made based on the allegations in the operative complaints in the Action, from November 15, 2009 through the Release Date. The released claims specifically include all claims for alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 218, 218.5, 218.6, 225.5, 226, 226.3, 226.6, 226.7, 510, 512, 558, 1174, 1194, 1194.2, 1197.1, 1198, and 2699; California Code of Civil Procedure sections 382 and 1021.5, and applicable Wage Order(s).  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 43.)

**5.  Notice**

The parties have designated Phoenix Class Action Administration Solutions as the settlement  administrator.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶¶ 68-72.)  Based upon the declaration of Michael Moore, President, Phoenix Class Action Administration Solutions has extensive experience in administering complex wage and hour, labor and employment, consumer/ product liability, TCPA, FLSA, FACTA, ERISA and PAGA class action matters, through final approval and distribution. Phoenix Class Action Administration Solutions has developed a system of quality assurance measures, to ensure the highest quality service is provided in our cases and to class members.  (Doc. 460-10.)

Phoenix Class Action Administration Solutions will notify Class Members as follows. Within five (5) calendar days after the Court's entry of an order granting preliminary approval of this Settlement Agreement, Defendants shall provide to Phoenix Class Action Administration Solutions as the Settlement Administrator a Class Member List which includes the first and last name, last known mailing address, telephone number, social security number, dates of employment as an hourly-paid, non-exempt employee in the State of California during the Class

Period, and Workweek(s) for every Class Member. Within five (5) calendar days after receipt of the Class Member List, the Settlement Administrator shall send the Notice to the Class Members. The Settlement Administrator will use the United States Postal Service National Change of Address ("NCOA") List to verify the accuracy of all addresses on the Class Member list before the initial mailing date. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶¶ 68-70.)

With respect to any returned envelopes, the Settlement Administrator will perform a routine skip trace procedure to obtain a current address. The Settlement Administrator will provide all counsel with a weekly report that certifies the number of Class Members who have submitted a valid Request for Exclusion, Objection, and whether any Class Member submitted a challenge to any information contained in the Class Notice. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶¶ 70-71.)

As stated above, Settlement Administration Costs are requested of $25,375.94.

**6.      Opt-Outs (Exclusions) and Objections**

There is no claim form for the Rule 23 class; and Class Members do not need to opt into the class. Class Members are given 45 days after mailing of the Notice to opt out in writing. Class members who wish to exclude themselves from the class action settlement must mail a written Request for Exclusion which must be postmarked not more than forty-five (45) calendar days after the date the Notice is mailed to the Class Members. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 75.) The Request for Exclusion must: (i) set forth the name, address, telephone number and last four digits of the Social Security Number of the Class Member requesting exclusion; (ii) be signed by the Class Member; (iii) be returned to the Settlement Administrator; (iv) clearly state that the Class Member does not wish to be included in the Settlement; and (v) be postmarked on or before the Response Deadline (forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator). (*Id.* at ¶¶ 45, 46.)

Class Members who wish to object to the class action settlement must mail objections to the Settlement Administrator and postmarked not more than forty-five (45) calendar days after the date the Notice is mailed to the Class Members (or not more than ten (10) calendar days after the

date the Notice is remailed). The Settlement Administrator shall promptly forward any Objections received to counsel for the parties. Class Counsel and Counsel for Defendants shall file any responses to Objections no later than fifteen (15) court days before the date of the final fairness and approval hearing. The Class Notice shall include specific instructions to Class Members for submitting Objections. A Class Member who wishes to object but who fails to comply with the instructions set forth in the Class Notice shall be deemed not to have objected. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 76.)

### 7.    Enhancement Awards

Plaintiffs request that the Court approve a Plaintiff Enhancement Payment in the total amount of $45,000, broken down as follows, for the individual Plaintiffs' efforts in filing and prosecuting the Leprino Cases: Jerrod Finder ($5,000.00), Jonathan Talavera ($5,000.00), Isaias Vasquez ($10,000.00), Linda Hefke ($10,000.00), John Perez ($5,000.00), Andrew Howell ($5,000.00), and Fred Walters ($5,000.00).[5]  (Doc. 443, p. 29-30; Doc. 460, p. 2.)

Plaintiffs' counsel represents that each of the listed Plaintiffs spearheaded their respective Leprino Case. They "committed time to the litigation by reviewing pleadings, communicating with Class Counsel during the prosecution of this case, participated in written discovery, and sitting for deposition.  Plaintiffs spent a substantial amount of time and effort in producing relevant documents and past employment records and providing the facts and evidence to prove the allegations in the complaint."  (Doc. 443-2, Szeto Decl. ¶ 12.)  Plaintiffs assert that they have "taken a substantial risk by electing to have their names as part of the public record in the Leprino Cases. Any time they attempt to seek new employment or is under investigation by a prospective employer, any search for lawsuits brought by them will be disclosed and they will have to deal with the possible stigma of bringing a lawsuit against their former employer." (*Id.*)

In addition, each Plaintiff has agreed to a full general release of their claims against

---

[5] As previously indicated, Plaintiffs are no longer requesting an enhancement payment to Donald Null. The $5,000.00 initially requested for Mr. Null as a Plaintiff Enhancement Payment has not been subtracted from the Net Settlement Amount, and instead, remains part of the Net Settlement Amount to be distributed to the Participating Class Members . (Doc. 460, p. 2; Doc. 443-1, Ex. 1 at ¶ 62).

Leprino, which is broader that the release that applies to the Class Members.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 80.)  The Plaintiffs release any claims related to their employment with Leprino.  (*Id.*)  The class release is not as broad; the Class Members release claims related to factual allegations in the operative complaints.  (Doc. 443-1Ex. 1 (Settlement Agreement) ¶¶ 43, 78.)

**8**.    **Attorney's Fees and Costs**

Class Counsel (identified below) seek preliminary approval of their request attorneys' fees in the amount of $1,400,000 and request reimbursement of litigation costs and expenses in the amount of $800,000.

**9.    Other Notable Terms of Settlement**

Leprino has the option to rescind the Settlement Agreement if more than five percent (5%) of the Class Members timely and validly submit a Request for Exclusion.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 74.)  There is no reversion of any portion of the Maximum Settlement Amount to Defendants.  (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶ 24.)

## LEGAL STANDARDS

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Fed. R. Civ. P. 23(e). However, the "settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original); *Gruber v. Grifols Shared Services North America, Inc*., No. 2:22-CV-02621-SPG-AS, 2023 WL 8610504, at *3 (C.D. Cal. Nov. 2, 2023).

11

1  **A.    Certification of the Class**

2        To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of

3  Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v.*

4  *Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-*

5  *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Under Rule 23(a), the four requirements that

6  must be met for class certification are: "(1) the class is so numerous that joinder of all members is

7  impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

8  defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

9  representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P.

10  23(a)(1)–(4).  These factors are known as "numerosity," "commonality," "typicality," and

11  "adequacy," respectively.  Assessing these requirements involves "rigorous analysis" of the

12  evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, (2011).

13        Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of

14  substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the

15  class as a whole would be appropriate; or (3) that common questions of law or fact predominate

16  and the class action is superior to other available methods of adjudication. Fed. R. Civ. P.

17  23(b)(1)– (3). Rule 23(b)(3) "requires only that the district court determine after rigorous analysis

18  whether the common question predominates over any individual questions, including

19  individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery*

20  *Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Rule 23(c)(1)

21  permits a court to make a conditional determination of whether an action should be maintained as

22  a class action, subject to final approval at a later date.  *Dukes v. Wal-Mart Stores, Inc*., No. C 01-

23  02252 CRB, 2012 WL 4329009, at *4 (N.D. Cal. Sept. 21, 2012).

24  **B.    Court Approval of Class Settlement Agreements**

25        Rule 23(e)(2) mandates that any settlement in a class action may only be approved by the

26  court after finding that the settlement is "fair, reasonable, and adequate" upon consideration of

27  whether:

28        (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole. *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012), reh'g denied, 709 F.3d 791 (9th Cir. 2013). In reviewing a proposed settlement, the court represents those class members who were not parties to the settlement negotiations and agreement. *In re Toys R Us-Delaware, Inc.— Fair & Accurate Credit Transactions Act Litig*., 295 F.R.D. 438, 448 (C.D. Cal. 2014). The Ninth Circuit has recognized a strong judicial policy favoring settlement, particularly of complex class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Nevertheless, even where a proposed settlement is unopposed, the court must fully examine whether the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Particularly when, as here in some of the Leprino Cases, the settlement occurs prior to class certification, courts must scrutinize the proposed settlement to ensure the propriety of class certification and the fairness of the proposed settlement. *Staton v Boeing*, 327 F.3d 938, 952 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (quotation and citation omitted).

1

**DISCUSSION-RULE 23 REQUIREMENTS**

2      This consolidated action comprises member cases which are at various stages.[6]  The lead

3   case, *Vasquez,* has been certified and tried to a jury, while some cases have been certified as class

4   actions, and another case has not been certified.  The Court shall consider whether preliminary

5   approval of the proposed settlement is appropriate, and whether the settlement class should be

6   certified for purposes of settlement only, in light of the mixed procedural posture of the Leprino

7   Cases. The Court now turns to determining whether certification of the Settlement Class is

8   appropriate for purposes of settlement.

9   **A.      Numerosity**

10      Numerosity is met if "the class is so numerous that joinder of all members is

11   impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining

12   numerosity, and the specific facts of each case may be examined. *Schwarm v. Craighead*, 233

13   F.R.D. 655, 660 (E.D. Cal. 2006); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal.

14   2008) ("Courts have not required evidence of specific class size or identity of class members to

15   satisfy the requirements of Rule 23(a)(1)."). "A reasonable estimate of the number of purported

16   class members satisfies the numerosity requirement of Rule 23(a)(1)." *In re Badger Mountain Irr.*

17   *Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

18      Here, the proposed class consisted of approximately 3,300 Class Members during the

19   Class Period.  (Doc. 443-1, Ex. 1 (Settlement Agreement), ¶ 60 ("Defendants represent that there

20   are approximately 3,300 Class Members during the Class Period who were employed as hourly,

21   non-exempt employees of Leprino in California for approximately 2,000,000 Workweeks.").)

22      In light of the foregoing authorities, the Court finds the proposed class of 3,300 members

23   satisfies the numerosity requirement as joinder of such members is impracticable. *See also*

24   *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (noting "courts generally find

25   that the numerosity factor is satisfied if the class comprises 40 or more members and will find that

26   it has not been satisfied when the class comprises 21 or fewer."); *Cervantez*, 253 F.R.D. at 569

27

28   _____
[6] The *Vasquez* case, the *Perez* case, the *Howell* case, and the *Walter* case have been certified.  The *Finder/Talavera* case has not been certified.  (Doc. 443-1, Exh. 1 ¶13-19.)

14

1    ("Courts have held that numerosity is satisfied when there are as few as 39 potential class

2    members.")

3    **B.      Commonality**

4          Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

5    23(a)(2). Parties seeking class certification must prove their claims depend on a common

6    contention of such a nature it is capable of class-wide resolution, meaning the determination of its

7    truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart*, 564

8    U.S. at 350. Class-wide proceedings must generate common answers to common questions of law

9    or fact apt to drive resolution of the litigation. *Id.* The parties must demonstrate class members

10   have suffered the same injury. *Id.* at 349-350.

11         The parties here identify common contentions and demonstrate class members suffered

12   the same injury. The common questions across the Settlement Class include the certified

13   questions of whether Leprino had an on-call policy at its facilities that deprived Class Members of

14   meal and rest breaks, whether Leprino failed to provide second meal breaks, whether Leprino had

15   a timekeeping policy that rounded punches resulting in late and short meal breaks, whether

16   Leprino's policies resulted in Class Members donning and doffing off the clock, and also include

17   the questions on which Plaintiffs would still seek certification, including, whether Leprino failed

18   to pay minimum wage, failed to pay overtime wages, failed to pay appropriate premium pay for

19   meal or rest breaks not provided, failed to furnish accurate wage statements, or failed to pay

20   earned wages at termination. Certification has already been granted in *Vasquez, Perez, Howell*,

21   and *Walter* cases on some of these common policies.  Certification of this Settlement Class is

22   appropriate because Leprino engaged in uniform practices with respect to the Class Members.

23   *Hanlon*, 150 F.3d at 1022.

24   **C.      Typicality**

25         Rule 23 also requires that "the claims or defenses of the representative parties are typical

26   of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's permissive

27   standard, claims "need not be substantially identical," but are typical if the representative's claims

28   are "reasonably co-extensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d

657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Typicality is based on the "nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon*, 976 F.2d at 508).  The requirements of commonality and typicality occasionally merge, and "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

As with the commonality requirement, the Court finds the typicality requirement is satisfied since Plaintiffs' claims arise from the same factual bases and are premised upon the same legal theories as those applicable to the purported class members. Plaintiffs, like every other class member, were employed by Leprino as non-exempt employees and, like every other class member, were allegedly subject to the same employment practices concerning on-call meal and rest breaks, second meal breaks, rounding of time punches, donning and doffing off the clock, wages, overtime and premium pay, accurate wage statements and final wages at termination.

**D.     Adequacy of Representation**

The Court must ensure "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)). Class

representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (internal quotations and citations omitted). This factor also tends to merge with the commonality and typicality criteria of Rule 23. *Id.* at 626 n.20.

Here, the Court finds the representative Plaintiffs and Class Counsel are adequate representatives of the class. As the Court has noted, Plaintiffs and the class share common injuries and possess the same interests. Plaintiffs and counsel have averred they have no conflicts of interest with the class and have prosecuted the action vigorously up to this point. (Doc. 460-1, Szeto Suppl. Decl. ¶¶ 3-4 (over 80 depositions, trial, discovery); Doc. 460-2, Downey Suppl. Decl. ¶ 3.)

Plaintiffs have no conflicts of interest with other class members, suffered the same alleged statutory injury as all other class members, and share with the class the common goal of protecting workers' rights. (*See*, *e.g.*, Doc. 460-3, Finder Decl. ¶ 10 ("My interests as a named plaintiff in the lawsuit are not adverse to the interests of the other employees."); Doc. 460-4, Talavera Decl. ¶ 10 ("I have always put the best interests of the other employees first while performing my duties as a potential leader in this case."); Doc. 460-5, Vazquez Decl. ¶10 ("I do not have any conflicts with any of the other employees at Leprino, and I never intend to."); Doc. 460-6, Hefke Decl. ¶ 11 ("I brought this case so I could help the other employees correct the legal wrongs I believe Leprino committed."); Doc. 460-7, Perez Decl. ¶ 10 ("I have always put the best interests of the other employees first while performing my duties as a potential leader in this case."); Doc. 460-8, Howell Decl. ¶ 9 ("I brought this case so I could help the other employees correct the legal wrongs I believe Leprino committed."); Doc. 460-9, Walter Decl. ¶ 10 ("I have always put the best interests of the other employees first while performing my duties as a potential leader in this case.").)

In addition, the Court has previously appointed certain of the Plaintiffs as class representatives when it certified classes in *Vasquez* (Isaias Vasquez and Linda Hefke), *Perez* (John Perez)*, Howell* (Andrew Howell), and *Walter* (Fred Walter).

The Court must also consider the adequacy of representation by Class Counsel: the Parris

Law Firm and The Downey Law Firm, LLC . Class Counsel have significant experience prosecuting wage-and-hour class actions.  Based on review of the submitted declarations, the Court finds Plaintiffs' counsel have demonstrated they have sufficient experience litigating employment class actions in which they were certified by the state and federal courts as competent and adequate class counsel. (*See* Doc. 443-1, Szeto Decl. ¶¶ 10-11 and Ex. 6; Doc. 443-2, Downey Decl. ¶ 2 and Ex. A.)  The Parris Law Firm and the Downey Law Firm have been appointed counsel in other of the Leprino Cases.

Here, there do not appear to be any conflicts of interest between Plaintiffs and the purported class members. Additionally, all Plaintiffs have the same interests and suffered from the same injury as the purported class members, albeit not every injury.  All alleged injuries arose from employment policies while employed at Leprino. Class Counsel have extensive experience in class actions and complex litigation, including many wage-and-hour cases (*See* Doc. 443-1, Szeto Decl. Ex. 6  and ¶¶ 10-11), there is no evidence of any potential conflicts, and they have prosecuted the Leprino Cases for over a decade. Accordingly, Plaintiffs and their counsel appear to be adequate representatives of the proposed class.

Accordingly, the Court finds Plaintiffs Jerrod Finder, Jonathan Talavera, Isaias Vasquez, Linda Hefke, John Perez, Andrew Howell, and Fred Walter have demonstrated they will adequately and fairly protect the interests of the class. Fed. R. Civ. P. 23(a)(4). For purposes of settlement only, the Court hereby appoints Plaintiffs Jerrod Finder, Jonathan Talavera, Isaias Vasquez, Linda Hefke, John Perez, Andrew Howell, and Fred Walter as Class Representatives. Similarly, based on the aforementioned litigation efforts detailed by counsel, the Court appoints the Parris Law Firm and The Downey Law Firm, LLC as Class Counsel in this matter.

**E.    Rule 23(b)(3) Requirements**

Both the predominance and superiority requirements are satisfied under Rule 23(b)(3).

*1.   Predominance*

"The first requirement of Rule 23(b)(3) is predominance of common questions over individual ones." *Valentino*, 97 F.3d at 1234.  The predominance inquiry "trains on the legal or

1  factual questions that qualify each class member's case as a genuine controversy, questions that

2  preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant

3  adjudication by representation." *Amchem Prod.,* 521 U.S. at 594. If a common question will drive

4  the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d

5  1001, 1005 (9th Cir. 2020) (court must determine which questions are likely "to drive the

6  resolution of the litigation.)

7         Plaintiffs contend that common questions of law or fact predominate over individual

8  questions pursuant to Rule 23(b)(3).  The challenged Leprino policies and practices apply

9  uniformly across all Class Members at Leprino's three facilities. There are no individualized

10  inquiries, and the same common legal questions qualify each Class Member's case as a genuine

11  controversy such that the proposed class is sufficiently cohesive to warrant adjudication by

12  representation.  The issues are common to the class: whether it was Defendants' standard practice

13  and policy to fail to pay minimum wage, fail to pay overtime wages, fail to pay appropriate

14  premium pay for meal or rest breaks not provided, fail to furnish accurate wage statements, or fail

15  to pay earned wages at termination.  Other issues similarly predominate: whether Leprino had an

16  on-call policy at its facilities that deprived Class Members of meal and rest breaks, whether

17  Leprino failed to provide second meal breaks, whether Leprino had a timekeeping policy that

18  rounded punches resulting in late and short meal breaks, and whether Leprino's policies resulted

19  in Class Members donning and doffing off the clock.  These are questions of law and fact subject

20  to common proof that would predominate over individualized inquiries.  Either such policies

21  existed as to all or such policies did not exist. Given that common policies apply to the Class, the

22  Court finds questions of law or fact common to the class members predominate over any

23  questions affecting only individual members.

24         *2.  Superiority*

25         The class action mechanism is the superior method for adjudicating this lawsuit. Fed. R.

26  Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and

27  promote greater efficiency, a class action may be superior to other methods of litigation. A class

28  action is the superior method for managing litigation if no realistic alternative exists." *Valentino,*

97 F.3d at 1234–35. Factors relevant to the superiority requirement include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority, courts must consider the four factors of Rule 23(b)(3).") "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190. However, where "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc.,* 521 U.S. at 620.

Resolution of the claims of approximately 3,300 total class members in one class action settlement is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. Further, the Court finds a class action avoids the inefficiency of each class member litigating similar claims individually. Therefore, the Court finds that a class action is the superior method for adjudicating the claims in this action.

For the foregoing reasons, the Court finds Plaintiffs have sufficiently met the requirements of Rule 23(a) and (b).  The Settlement Class is preliminarily certified for purposes of settlement, subject to a final fairness hearing and certification of the settlement class under the Federal Rules of Civil Procedure and related case law.

**DISCUSSION-PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

Having concluded that class treatment appears to be warranted, the Court now considers

whether the proposed settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Products Liab. Litigation.*, 654 F.3d 935, 946 (9th Cir. 2011). The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole. *Lane*, 696 F.3d at 818–19. Preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

In making this inquiry, the Court should weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 946. Some of these eight factors cannot be fully assessed until the court conducts its final fairness hearing. *Zwicky v. Diamond Resorts Mgmt. Inc.,* 343 F.R.D. 101, 119 (D. Ariz. 2022).  Thus, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval."  *Zwicky*, 343 F.R.D. at 119; *accord Collins v. Cargill Meat Sols. Corp*., 274 F.R.D. 294, 301-303 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079).  Because collusion may not be evident on a settlement's face, courts must be vigilant for subtle signs "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 947.

At this juncture, the Court will review the parties' Proposed Settlement Agreement

21

1  according to the four *Zwicky* considerations listed above and conduct a cursory review of its terms

2  in deciding whether to order the parties to send the proposed notice to Class Members and

3  conduct the final fairness hearing.

4  **A.     The Proposed Settlement Appears to be the Product of Serious, Informed, Non-**

5  **Collusive Negotiations**

6        The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a

7  yielding of absolutes and an abandoning of highest hopes.' " *Officers for Justice v. Civil Serv.*

8  *Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when

9  analyzing the amount offered in settlement, the Court should examine "the complete package

10  taken as a whole," and the amount is "not to be judged against a hypothetical or speculative

11  measure of what might have been achieved by the negotiators." *Id.* at 625, 628.  The Court must

12  look at the means and negotiations by which the parties settled the action in addition to reviewing

13  the Proposed Settlement Agreement for obvious deficiencies.  *Zwicky*, 343 F.R.D. at 120.

14        Here, the parties reached a settlement after participating in a mediation and subsequent

15  settlement negotiations.  Following the jury verdict in *Vasquez*, and while the *Vasquez* case was

16  pending on appeal, the parties engaged in two (2) arm's length mediations with Ninth Circuit

17  Mediator, Kyungah Kay Suk, who Plaintiffs represent is a very well-respected, experienced

18  mediator who specializes in resolving cases on appeal before the Ninth Circuit.  (Doc. 443, p. 15.)

19  During the mediation, the parties exchanged information and discussed all aspects of the Leprino

20  Cases including the risks and delays of further litigation, the risks to both parties, the evidence

21  produced and analyzed, and the possible outcome of the *Vasquez* appeal and its effect on the other

22  Leprino cases, among other things.  *Id.*  At all times, the parties' negotiations reportedly were

23  adversarial and non-collusive.  Both parties felt strongly about their case on appeal and arriving at

24  a settlement that was acceptable to both parties was difficult. All parties considered the risks in

25  continued litigation in all of the other pending Leprino Cases, and agreed that the Leprino Cases

26  were well-suited for settlement, given the costs and risks both sides faced in further, very

27  protracted litigation.

28        As Plaintiffs note in their motion, the parties heavily litigated the Leprino Cases for ten

22

1   years, until after a verdict rendered in favor of Leprino in 2023 and until the settlement was

2   reached while on appeal of the jury's verdict.  The attestations regarding the process of mediation

3   evinces good faith negotiations and a thorough process for arriving at settlement.

4         In terms of discovery, four of the Leprino Cases had been certified for class action

5   treatment.  The *Vasquez* case had been tried to a jury.  Thus, sufficient discovery and litigation

6   had been conducted to evaluate the strength of the claims.

7   **B.**   **No Obvious Deficiencies**

8         Obvious deficiencies in a settlement agreement include "any subtle signs that class

9   counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-*

10   *Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944

11   F.3d 1035, 1043 (9th Cir. 2019)). The Ninth Circuit has identified three such "subtle signs,"

12   which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate

13   distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under

14   which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3)

15   when the agreement contains a kicker or reverter clause that returns unawarded fees to the

16   defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re*

17   *Bluetooth*, 654 F.3d at 947 (internal quotation and citation omitted).

18   *1.  Disproportionate Distribution of the Settlement to Counsel*

19         Here, Class Counsel seeks 40% of the Maximum Settlement Amount for attorneys' fees.

20   As explained more fully below, the Court does not consider this request as a deficiency.

21   Plaintiffs' counsel litigated the Leprino Cases for ten years, four of the cases were certified for

22   class treatment, and the *Vasquez* case was tried before a jury.

23   *2.  Clear-sailing Arrangement for Attorneys' Fees*

24         Here, there is the presence of a clear-sailing agreement in the Proposed Settlement

25   Agreement, namely, Defendants promise not to oppose Plaintiffs' request for attorneys' fees of

26   40% of the Settlement Fund.  A court is always concerned with "the potential that [Defendants]

27   agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for

28   the class members." *McKinney-Drobnis*, 16 F.4th at 610 (quoting *Henderson*, 998 F.3d at 1027).

1    However, given the longevity of the Leprino Cases, the hard-fought nature of the litigation,

2    including substantial motion practice and a jury trial, the clear sailing agreement is not a

3    substantial concern.  The Court does not believe that Plaintiffs' counsel is getting a windfall by

4    unreasonably high fees nor acting to the disadvantage of the class.  Accordingly, the Court does

5    not find that the clear sailing provision weighs against preliminary approval.  *See Paredes Garcia*

6    *v. Harborstone Credit Union*, No. 3:21-CV-05148-LK, 2023 WL 4315117, at *7 (W.D. Wash.

7    July 3, 2023) (fee award was appropriate where the award equated to a "slight haircut" of actual

8    fees).

9                        *3.   Reversion of Unawarded Fees to the Defendant*

10           Here, the Settlement Agreement states that there will be no reversion of unpaid settlement

11   funds to Defendants.

12   **C.      Does not Grant Preferential Treatment**

13           The proposed settlement appears to treat class members equally. Payment to any Class

14   Member is based on the number of work weeks that member worked at any of the Leprino

15   facilities. The number of workweeks is calculated based upon objective information in Leprino's

16   business records. Aside from the Enhancement Payments, discussed below, all of the class

17   members are subject to the same payment calculations based on the number of workweeks

18   worded.

19   **D.      The Settlement Falls Within the Range of Possible Approval**

20           "To determine whether a settlement 'falls within the range of possible approval' a court

21   must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery

22   balanced against the value of the settlement offer.' " *Collins*, 274 F.R.D. at 302 (quoting *In re*

23   *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). The Court should examine "the complete

24   package taken as a whole," and the amount is "not to be judged against a hypothetical or

25   speculative measure of what might have been achieved by the negotiators." *Officers for Justice*,

26   688 F.2d at 625, 628.

27           Plaintiffs estimate that the damages exposure for the claims, other than the jury-rejected

28   on-call and rest break claim, as follows:

24

- potential damages for the off-the-clock claim in the Leprino Cases according to Plaintiffs' expert's calculations equate to $353,079. (Doc. 443-1, Szeto Decl. at ¶ 7.)

- damages for the late and short meal breaks resulting from Leprino's rounding policy extrapolate out to roughly $279,167.88 in unpaid wages based on the 2,089.58 hours of unpaid wages for the 25% sample Leprino provided for class certification, applying Plaintiff Walter's hourly rate of $33.40. (Doc. 443, p. 16.)

- damages for the second meal break claim across all three plants for the entire ten-year Class Period are extrapolated to be approximately $1,279,350 based on Plaintiffs' expert's analysis that 8,529 workdays from 2011 to 2015 reflected no second meal break recorded. *Id.*

- PAGA penalties for the initial violation equate to $330,000 for one Labor Code violation.[7]

Here, the proposed all-in, non-revisionary Settlement is $3,500,000.00. The Court considers Plaintiffs' expected recovery, as outlined above. However, given that the jury rendered a defense verdict in *Vasquez*, the Court acknowledges that the total possible exposure to Defendants, and Plaintiffs' expected recovery, must be discounted when considering the realistic potential of achieving and maintaining class certification and recovering under each of the theories in the various Leprino Cases. In other words, potential recovery to Plaintiffs must be discounted because a jury has already rejected Plaintiffs' claim in *Vasquez*. Plaintiffs state that the "crux of the monetary value in the Leprino Cases has always been on the on-call meal and rest break claim because that theory allocated damages to every single shift for ten years across all three plants." (Doc. 443, p. 16.) For this claim, the *Vasquez* jury rendered a verdict for Leprino and against Plaintiffs and did not award any damages to Plaintiff for the on-call and rest break claim  Thus, pursuing this claim for the remainder of the Leprino Cases risks that Class Members

---

[7] The number of anticipated Labor Code violations is unclear from the motion. When a PAGA claim is settled, the relief provided for under PAGA must be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public *Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving PAGA payment penalty representing 2.53% of the estimated gross settlement amount).

1    will not recover anything, just as in the *Vasquez* case.

2          Plaintiffs' motion represents that there are approximately 3,300 Class Members.. (Doc.

3    443-1, Ex. 1 (Settlement Agreement)  ¶ 60.) This case equates to a pre-tax recovery of

4    approximately $1,060.61 based on the Maximum Settlement Amount ($3,500,000.00 / 3,300 =

5    $1,060.61).  The net recovery, from the Court's review, equates to a pre-tax recovery of

6    approximately $366.25 based on the Net Settlement Amount.  ($1,219,624.06 / 3,330 = $363.25.)

7          "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred

8    means of dispute resolution [, especially] in complex class action litigation...." *In re SyncorE*

9    *RISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

10   Thus, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain

11   results." *Munoz v. Giumarra Vineyards Corp.,* No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075,

12   at *9 (E.D. Cal. June 21, 2017).

13         Here, the Leprino Cases have already been pending for a substantial amount of time, and

14   the best alternative is settlement.  The proposed settlement amount, $3,500,000, falls within the

15   range of possible settlement, given the estimated maximum recovery for the remaining viable

16   claims.

17   **E.    PAGA Penalty**

18         Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

19   code violations on behalf of himself and other current or former employees. Cal. Lab. Code §

20   2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

21   enforcement agencies." *Arias v. Superior Ct*., 95 Cal. Rptr. 3d 588, 600 (Cal. 2009). A PAGA

22   plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and

23   the action "functions as a substitute for an action brought by the government itself"; therefore, "a

24   judgment in that action binds all those, including nonparty aggrieved employees, who would be

25   bound by a judgment in an action brought by the government." *Id*. A plaintiff bringing a

26   representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also

27   owes responsibility to the public at large; they act, as the statute's name suggests, as a private

28   attorney general." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal.

1  2016).

2        Under PAGA, civil penalties collected are distributed between the aggrieved employees

3  (25%) and the Labor and Workforce Development Agency ("LWDA") (75%). Cal. Lab. Code §

4  2699(i). Any settlement of PAGA claims must be approved by the court. Cal. Lab. Code §

5  2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is

6  submitted to the court. Cal. Lab. Code § 2699(l)(2).

7        While PAGA requires a trial court to approve a PAGA settlement, district courts have

8  noted there is no governing standard to review PAGA settlements. *Scott v. Blackstone Consulting,*

9  *Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (collecting

10  cases).  District courts have applied "a Rule 23-like standard" asking whether the settlement of

11  the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Id.*

12        First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement

13  Agreement to the LWDA.  LWDA will have an opportunity to file a response to the proposed

14  settlement.  The Settlement Agreement provides for a $10,000 PAGA Penalty. This amount

15  represents less than 1 percent of the Maximum Settlement Amount.  However, district courts have

16  approved a broad range of PAGA penalties.  *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp.

17  3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in

18  PAGA penalties were preliminarily or finally approved despite total settlement amounts of

19  $900,000 and $6.9 million); *see also Alcala v. Meyer Logistics, Inc*., No. CV 17-7211 PSG

20  (AGRx), 2019 U.S. Dist. LEXIS 166879, at *26 (C.D. Cal. June 17, 2019) (collecting cases in

21  which PAGA penalties within the zero to two percent range were approved by courts); *Scott*,

22  2024 WL 271439, at *8 (approving 5 percent PAGA settlement). Further, the Settlement

23  Agreement provides that 75% of the PAGA Penalty will be paid to the LWDA and 25% will be

24  paid to the PAGA Members, in accordance with California Labor Code § 2699(i). (Doc. 443-1,

25  Ex. 1 (Settlement Agreement) ¶¶ 33-35.)

26  **F.      Enhancement Awards to Plaintiffs**

27        Incentive payments are to be evaluated individually, and the court should look to factors

28  such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which

1  the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended

2  in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

3  977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

4           Plaintiffs request that the Court approve a Plaintiff Enhancement Payment, for their efforts

5  in filing and prosecuting the Leprino Cases, in the total amount of $45,000, broken down as

6  follows: Jerrod Finder ($5,000.00), Jonathan Talavera ($5,000.00), Isaias Vasquez ($10,000.00),

7  Linda Hefke ($10,000.00), John Perez ($5,000.00), Andrew Howell ($5,000.00), and Fred Walter

8  ($5,000.00).  (Doc. 443, p. 29-30.) A service award of $5,000 is presumptively reasonable.  *See*

9  *Harris v. Vector Marketing Corp.*, No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb.

10 6, 2012) (collecting cases).  But courts have preliminarily approved higher amounts subject to

11 additional documentation from class representatives detailing the time and effort expended and

12 actions taken to benefit the settlement class prior to final approval.  *See, e.g., Howell v.

13 Advantage RN, LLC,* No. 17-CV-883 JLS (BLM), 2020 WL 3078522, at *5 (S.D. Cal. June 9,

14 2020)  (preliminarily approving service award of $10,000 subject to submission of additional

15 information from plaintiff before final approval); *Jamil v. Workforce Res.*, LLC, No. 18-CV-27

16 JLS (NLS), 2020 WL 3079221, at *8 (S.D. Cal. June 9, 2020) (preliminarily approving the

17 proposed $10,000 service award to each named plaintiff, but requesting plaintiffs provide

18 documentation detailing the time and effort they expended in pursuit of the litigation and the

19 actions they took to benefit the settlement class before final approval of the service award);

20 *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *17 (E.D.

21 Cal. Apr. 27, 2020) (preliminarily approving proposed $15,000.00 incentive award on the

22 condition that plaintiff demonstrate at the final approval stage that the requested award is

23 commensurate with and does not dwarf the average or median award received by the class and

24 FLSA members). In assessing the appropriateness of class representative enhancements or

25 incentive payments, the Court must consider factors such as: (1) the actions the plaintiff took to

26 protect the interests of the class; (2) the degree to which the class has benefitted from those

27 actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended

28 in pursuing litigation; and (4) any notoriety or personal difficulties encountered by the

representative plaintiff. *See Khanna v. Intercon Sec. Systems, Inc*., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014).

To substantiate Plaintiffs' activities in the cases, Plaintiffs' counsel submitted a declaration which generically states:

> [The Plaintiffs] committed time to the litigation by reviewing pleadings, communicating with Class Counsel during the prosecution of this case, participated in written discovery, and sitting for deposition, warranting an enhancement payment. Plaintiffs spent a substantial amount of time and effort in producing relevant documents and past employment records and providing the facts and evidence to prove the allegations in the complaint. They were available to Class Counsel as needed. The information and aid that she provided to Class Counsel was invaluable and ensured the successful resolution of this case.

(Doc. 443-1, Szeto Decl. ¶12.)  Counsel also states that each of the Plaintiffs took risks by being associated with the cases when "they attempt to seek new employment or is under investigation by a prospective employer."  *Id.* In supplemental briefing, Plaintiffs submitted declarations for each of the representative plaintiffs in support of preliminary approval.  (Doc. 460-3 through 460-9.)  Each of the declarations describe the actions the individual Plaintiffs engaged in to support counsel.  (*See*, *e.g.*, Doc. 460-5, Vazquez Decl. ¶ 8 ("Since my deposition, I have spent a great deal of additional time with my attorneys, including searching for and providing them with relevant documents that Leprino requested from me."); Doc. 460-6, Hefke Decl. ¶ 13 (listing the tasks she performed).)

At this stage, there is no indication the service awards constitute an improper award to defeat preliminary approval.  Each Plaintiff seeks a $5,000 enhancement payment with the exceptions of Plaintiffs Vasquez and Hefke who seek $10,000 each.  The increased enhancement for Plaintiffs Vasquez and Hefke is presumably because the *Vasquez* case, for which they were representatives, went to trial and the added work associated with trial.  (*See* Doc. 460-5, Vazquez Decl. ¶ 14 ("I believe that this amount is reasonable considering the time and effort over the last 6 years I have personally spent pursuing this case on behalf of the entire class and the risks that I undertook in pursuing the case against my current employer.").) Based on the foregoing and for purposes of this preliminary approval of the settlement, the Court finds the settlement terms are "within the range of possible approval."

1    **G.      Attorneys' Fees**

2           Class Counsel seeks approval of an attorneys' fee award equal to 40% of the Maximum

3    Settlement Amount, which equates to $1,400,000 of the $3,500,000 Maximum Settlement

4    Amount.

5           "In a certified class action, the court may award reasonable attorneys' fees and nontaxable

6    costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a

7    settlement produces a common fund for the benefit of the entire class, courts have discretion to

8    employ either the lodestar method or the percentage-of-recovery method" when determining the

9    reasonableness of a request for attorneys' fees. *Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at

10   942; *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (concluding district court

11   has discretion in a common fund case to choose either the lodestar method or the percentage-of-

12   the-fund method when calculating reasonable attorneys' fees). Under the percentage-of-recovery

13   method, 25% of a common fund is the benchmark for fee awards. *See*, *e.g*., *In re Bluetooth,* 654

14   F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee

15   award, providing adequate explanation in the record of any 'special circumstances' justifying a

16   departure."). Under the lodestar method, a "lodestar figure is calculated by multiplying the

17   number of hours the prevailing party reasonably expended on the litigation (as supported by

18   adequate documentation) by a reasonable hourly rate for the region and for the experience of the

19   lawyer." *Id.* at 941 (citing *Staton,* 327 F.3d at 965). The product of this computation, the

20   "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d

21   1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008).

22   The Ninth Circuit has recommended that district courts apply one method but cross-check the

23   appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

24          To support their claim for 40% of the Maximum Settlement Amount, Plaintiffs' counsel

25   argue: "The continued viability of wage-and-hour laws, like the viability of other remedial

26   statutes, depends on the ability of private litigants to seek redress through litigation. The success

27   of these lawsuits depends in part on the availability and willingness of attorneys to bring them.

28   Substantial fee awards also encourage reputable law firms with skilled, capable attorneys to take

1   the risk of serving as 'private attorneys general.'"  (Doc. 443, p. 19.)  Plaintiffs' counsel also

2   argue that an upward adjustment of the 25% benchmark is warranted because of the "the results

3   achieved and the difficulties attendant in litigating all of the Leprino Cases and the fact that Class

4   Counsel took one all the way through a jury trial." *Id.*

5          The percentage may be adjusted upward or downward based on (1) the results achieved;

6   (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature

7   of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Vizcaino*,

8   290 F.3d at 1048–50.

9          *Results Achieved*

10          Courts have recognized that the result achieved for the class is a major factor to be

11  considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983); *Wilcox v. City*

12  *of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). The Ninth Circuit has observed that "[e]xceptional

13  results are a relevant circumstance" to an adjustment from the benchmark award. *Vizcaino*, 290

14  F.3d at 1048.

15          Plaintiffs argue that the results are remarkable considering the status of the cases.  The

16  parties were in the midst of the *Vasquez* appeal, and Leprino was unwilling to settle and place any

17  value on the Leprino Cases. As a result of the settlement, all of the Class Members will be

18  provided a recovery.

19          Here, the result is a good result, in light of the history of the cases.  Considering that the

20  *Vasquez* on-call meal and rest break claim, which is the crux of the Leprino Cases, was soundly

21  rejected by a jury, the result obtained of the Maximum Settlement Amount is a decent result.

22          *Risks of Litigation*

23          Risk is a relevant circumstance. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th

24  Cir.1995) (holding fees justified "because of the complexity of the issues and the risks"); 

25  *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs

26  lost twice in district court and there was absence of supporting precedent). Given that the *Vasquez*

27  case was unsuccessful before a jury, the risk is real that subsequent juries in the other Leprino

28  cases would reject Plaintiffs' claims.

*Skill and Quality of the Work*

The Court does not doubt Class Counsel are experienced and skilled litigators.  The Parris Law firm resume shows their extensive class action litigation experience.  (Doc. 443-1, Szeto Decl. Ex. 6, p. 164.)  The Court's own experience in dealing with Class Counsel over the past decade has shown competent, prepared, zealous representation of class members.  Thus, this factor weighs slightly in favor of an upward deviation from the benchmark.

*Contingent Nature of the Fee and Burdens Carried*

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, whether counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. Here, Class Counsel took this case on a contingency fee basis.  (Doc. 443, p. 20.)  Thus, this factor weighs in favor of an upward deviation from the benchmark.

*Burdens Carried by Class Counsel*

 Class Counsel have provided information as to the costs in prosecuting this action, indicating that they incurred $800,000 in costs across all of the Leprino Cases. In supplemental briefing, Class Counsel submitted documentation in support of their litigation costs and expenses, identifying an amount in excess of $800,000.  (Doc. 460-1, Szeto Suppl. Decl., Ex. 15; Doc. 460-2, Downey Suppl. Decl., Ex. C.)  Plaintiffs' Counsel has carried their burden to show they incurred costs, over a 10 year time frame, in prosecuting the Leprino Cases.

*Awards Made in Similar Cases*

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029.  Class Counsel request the Court enhance the fee award, citing to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (Doc.  443, pp. 23-24.)  Plaintiffs cite cases in which many courts approved common fund fee awards equivalent to or greater than the percentage requested here, and even when the award resulted in a substantial multiplier. *See*, *e.g.*, *In re Pac. Enter. Sec. Litig.*, 47 F.3d at 379

1    (affirming an award equal to 33% of the common fund); *In re Ampicillin Antitrust Litigation*, 526

2    F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth-Century*

3    *Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979), aff'd 622 F.2d 1106 (2nd Cir. 1980) (53%

4    of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (36% of

5    settlement fund).  (Doc.  443, p. 23-24.)  Class Counsel argue that the 40% fee request is in line

6    with the customary fees awarded in similar cases given the amount of work Class Counsel

7    devoted on behalf of the Class, particularly in light of taking the *Vasquez* case to trial and

8    appealing the verdict, something that most plaintiffs' counsel would not have done.

9          Given that the percentage of the fund is above the benchmark, the Court will conduct a

10   cursory lodestar cross check. If a court applies the percentage method, it then typically calculates

11   the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.,*

12   *Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov.

13   23, 2013); *Suarez v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01202-LB, 2024 WL 150721, at *3

14   (N.D. Cal. Jan. 11, 2024). To guard against an unreasonable result, the Ninth Circuit has

15   encouraged district courts to cross-check any calculations done in one method against those of

16   another method. *See Vizcaino*, 290 F.3d at 1050–51.

17         The "lodestar" approach calculates attorney fees by multiplying the number of hours

18   reasonably expended by a reasonable hourly rate. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523

19   F.3d at 978.  Where, as here, the lodestar is employed to cross-check a percentage-of-fund

20   determination, courts may do a rough calculation. *In re Toys R Us-Delaware, Inc.—Fair &*

21   *Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014).

22         In their supplemental briefing, Plaintiffs provided information about the number of hours

23   worked and the attorney hourly rates.  The Parris Law Firm has devoted a total of 8,928.99 hours

24   with a total lodestar of $5,803,844.00 at $650.00 per hour. (Doc. 460-1, Szeto Suppl. Decl. ¶ 6.)

25   The following chart provides a breakdown of the 8,928.99 hours for the Parris Law Firm between

26   each of the Leprino Cases, as well as lodestar calculation at differently hourly rates and hours

27   between each of the Leprino Cases:

28

| | Lodestar | | | | | |
|---|---|---|---|---|---|---|
| | **Hours** | **$700/Hour** | **$600/Hour** | **$650/Hour** | **$550/Hour** | **$500/Hour** |
| **Vasquez** | 5,433.22 | $3,803,254.00 | $3,259,932.00 | $3,351,593.00 | $2,988,271.00 | $2,716,610.00 |
| **Perez** | 877.62 | $614,334.00 | $526,572.00 | $570,453.00 | $482,691.00 | $438,810.00 |
| **Howell** | 1,448.60 | $1,014,020.00 | $869,160.00 | $941,590.00 | $796,730.00 | $724,300.00 |
| **Walter** | 1,024.95 | $717,465.00 | $614,970.00 | $666,217.50 | $563,722.50 | $512,475.00 |
| **Finder/Talavera** | 144.60 | $101,220.00 | $86,760.00 | $93,990.00 | $79,530.00 | $72,300.00 |
| **TOTAL** | **8,928.99** | $6,250,293.00 | $5,357,394.00 | **$5,803,843.50** | $4,910,944.50 | $4,464,495.00 |

(*See* Doc. 460-1, Szeto Suppl. Decl. ¶ 6.)

In the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour. *See*, *e.g*., *Leprino Foods Co. v. JND Thomas Co., Inc*., No. 1:16-CV-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-CV-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney with more than thirty years of experience); *Sanchez v. Frito-Lay, Inc*., No. 1:14-CV-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." *Barkett v. Sentosa Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing *Silvester v. Harris*, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014). For attorneys with "less than ten years of experience ... the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014).

Recent cases have maintained the same hourly rates. *Accord Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at *19 (E.D. Cal. Oct. 31,

34

2022); *Langer v. Cooke City Raceway, Inc.,* No. 1:21-CV-01488-JLT-BAK, 2022 WL 2966172, at *16 (E.D. Cal. July 27, 2022), report and recommendation adopted, No. 1:21-cv-01488-JLT-BAK, 2022 WL 3348015 (E.D. Cal. Aug. 12, 2022); *Webb v. Cty. of Stanislaus,* No. 1:19-cv-01716-DAD-EPG, 2022 WL 446050, at *6 (E.D. Cal. Feb. 14, 2022) ("In the Fresno Division of the Eastern District of California, generally, attorneys with twenty or more years of experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of experience are awarded $250.00 to $325.00, attorneys with five to ten years of experience are awarded $225.00 to $250.00, and less than $200.00 for attorneys with less than five years of experience.") Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." *Silvester*, 2014 WL 7239371, at *4 (citations omitted); *cf. Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants").

The rates Plaintiffs propose range from $500 per hour, at the low end, to $700 per hour, at the high end. Counsels' stated rates may be high and above the upper limit of rates previously accepted in this District, without knowing which particular attorney did which activity. *See Avery v. Akima Support Operations, LLC*, No. 2:19-CV-00924-DAD-AC, 2022 WL 4473211, at *13 (E.D. Cal. Sept. 26, 2022) (approving associate attorneys with rates ranging from $250 through $300; and twenty-third- through thirty-sixth-year attorneys with rates ranging from $650 through $750). Therefore, the rates will be adjusted for purposes of the lodestar calculation.

In addition, the Court must also consider the reasonable number of hours spent. The Parris Law firm worked 8,928.99 hours on the various Leprino Cases. (Doc. 460-1, Szeto Suppl. Decl. ¶ 6.) The Downey Law Firm, LLC worked 1,040.3 hours on the cases. (Doc. 460-2, Downey Decl. ¶ 5.) The total number of hours worked on the Leprino Cases is 9,969.29 (Doc. 460, p. 3.) A cursory review of the types of tasks performed substantiates the hours expended are reasonable given the scope and breadth of the Leprino Cases. (*See*, *e.g.*, Doc. 460-1, pp. 19-30.)

Therefore, a rough lodestar calculation using the Fresno area highest hourly rate, $400, for the hours worked (9,969.29 hours) yields $3,987,716.00 in fees. Using the lowest Fresno area hourly rate, $200, yields $1,993,858.00. Thus, using the rates accepted in this District, the Court

concludes that the lodestar cross-check supports the requested award amount of $1,4000,000 in

attorneys' fees.

**H.     Costs**

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.

R. Civ. P. 23(h). Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably

incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F.

Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92

(1970)); *see also Staton*, 327 F.3d at 974.  The Ninth Circuit has held that an award to a

prevailing party "can include reimbursement for out-of-pocket expenses including ... travel,

courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir.

2010). Other recoverable expenses include expenses related to discovery and expenses related to

computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that

"expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health &*

*Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that

"reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.,* 273

F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable because

the evidence was necessary to negotiate a settlement).

Plaintiffs request $800,000 in costs.  In supplemental briefing, Plaintiffs submit evidence

of the costs incurred in the Leprino Cases.  Plaintiffs contend that the Parris Law Firm and The

Downey Law Firm, LLC have incurred costs well beyond the $800,000 requested.  (Doc. 460, p.

3.)  The Parris Law Firm has incurred $784,225.19 in costs and litigation expenses across all of

the Leprino Cases.  (Doc. 460-1, Szeto Suppl. Decl. ¶ 6.)  A breakdown of the Parris Law Firm's

total costs between each of the Leprino cases is:

///

///

///

///

| Vasquez | $443,475.65 |
| Perez | $166,369.30 |
| Howell | $124,446.17 |
| Walter | $47,914.40 |
| Finder | $1,794.20 |
| Talavera | $225.47 |
| **TOTAL** | **$784,225.19** |

(*Id.* at p. 5.)

The Downey Law Firm seeks reimbursement for its costs of $81,537.69 expended in prosecution of this action.  (Doc. 460-2, Downey Suppl. Decl. ¶5 and Ex. C.)

From the documents submitted, the total costs incurred are $865,762.88. Given the length of time these cases have been pending, the extensive discovery and use of experts, the jury trial in *Vasquez*, the Court approves the request for costs on a preliminary basis.

## I.    Notice Requirements

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal quotations omitted).

The revised class notice here complies with Rule 23(c)(2).  (Doc. 443-1, p. 41 (Notice); as revised, Doc. 460-1, Szeto Suppl. Decl. Ex. 8.)  The revised notice includes the nature of the action, the class definition, the class claims, the terms of the settlement, and information that the class member may be represented by an attorney  (Doc. 460-1, Ex. 8, p. 11), the binding effect of

37

1  the class judgment, how and when to opt-out, and how to object to the settlement.  The Rule 23

2  notice also provides information regarding the final fairness hearing.

3       In addition,  the parties agree the "best form of notice practicable" is to send the

4  settlement notice via first class mail to the last known address of each class member as indicated

5  by Defendants' business records and a search of the United States Postal Service National Change

6  of Address. (Doc. 443-1, Ex. 1 (Settlement Agreement) ¶¶ 68-72.)  As previously discussed,

7  Phoenix Class Action Administration Solutions will mail the class notice to each class member

8  The Settlement Administrator will use the United States Postal Service National Change of

9  Address ("NCOA") List to verify the accuracy of all addresses on the Class Member list before

10 the initial mailing date. With respect to any returned envelopes, the Settlement Administrator will

11 perform a routine skip trace procedure to obtain a current address.  The Settlement Administrator

12 will provide all counsel with a weekly report that certifies the number of Class Members who

13 have submitted a valid Request for Exclusion, Objection, and whether any Class Member

14 submitted a challenge to any information contained in the Class Notice.

15       Under the settlement agreement, class members do not have to submit claims to receive

16 payment; instead, they are identified through Defendants' employment records, receive a notice

17 calculating each member's potential award based on how many workweeks worked during the

18 class period (as determined by the employment records), and are given an opportunity to dispute

19 the calculations.

20       The Court finds the notice and the method of delivery is appropriate and appears to be the

21 "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  The Court

22 also finds it significant that there is no opt-in procedure here, as Class Members do not have to

23 confirm workweeks or take other action to have a check mailed to them, and there is no reversion

24 to Defendants here. Accordingly, based on all of the above, the Court finds the notice and the

25 method of delivery by U.S. mail, with an initial check for updated addresses with a national

26 database, re-mailing of notice information following return as undeliverable after a further

27 database check for updated addresses, is appropriate, appears to be the "best notice that is

28 practicable under the circumstances," and therefore meets the requirements of Federal Civil

1    Procedure Rule 23(c)(2)(B).

2                            **CONCLUSION AND ORDER**

3           The Court will grant Plaintiffs' motion for preliminary approval of the settlement.

4    Considering the risks Plaintiffs would face in taking these cases to trial, together with the value of

5    all of the claims being released and the value of the proposed settlement to the class members in

6    light of the apparent strengths and weaknesses of the claims and defenses, the Court preliminarily

7    concludes that the proposed settlement, on the current record, is "fair, reasonable, and adequate"

8    within the meaning of Rule 23(e)(2).

9           Accordingly, IT IS HEREBY ORDERED that:

10          1. The motion for preliminary approval of the proposed settlement (Doc. 443), as

11   supplemented with declarations (Doc. 460), is GRANTED for the reasons described above, and

12   subject to the terms below;

13          2. A hearing on the Final Approval of the settlement ("Final Approval Hearing") shall be

14   held before the Honorable Barbara A. McAuliffe in Courtroom 8 of the United States District

15   Court for the Eastern District of California located at 2500 Tulare Street, Sixth Floor, Fresno,

16   California, 93721 on June 14, 2024 at 9:00 a.m. to determine: whether the proposed Settlement,

17   on the terms and conditions provided for in the Settlement Agreement, is fair, reasonable, and

18   adequate and whether said Settlement should be finally approved by the Court. The Court may

19   adjourn or continue the Final Approval Hearing without further notice to the Class Members.;

20          3. The following persons are conditionally certified as Class Members solely for the

21   purpose of entering a settlement in this matter:

22

23          All individuals who currently or formerly worked at Leprino's Lemoore West,
            Lemoore East, or Tracy facilities in the State of California as hourly, non-exempt
24          employees at any time between November 15, 2009 and July 31, 2023.
            ("Settlement Class.")

25

26          4. The Court finds that, for settlement purposes only, the Settlement Class meets the

27   requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1)

28   the Class is ascertainable and so numerous that joinder of all members of the Class is

impracticable; (2) there are common questions of law and fact, and the questions of law and fact common to the Class predominate; (3) Plaintiffs' claims are typical of the claims of the members of the Class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the Class; and (5) a class action is superior to other available methods for the efficient adjudication of the controversy;

5. The Court finds that, on a preliminary basis, that the Settlement Agreement, entered into among the parties and their counsel, is fair, adequate and reasonable. It further appears to the Court that the parties conducted extensive investigation and research, and that they were able to reasonably evaluate their position and the strengths and weaknesses of the claims. The parties have provided the Court with enough information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the parties have agreed.  Settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the parties were to continue to litigate the Leprino Cases. It further appears that the Settlement has been reached as the result of intensive, serious, and non-collusive arms-length negotiations, and was entered into in good faith, to mitigate the potential of further losses to Plaintiffs and the Class Members;

6. The Court preliminarily finds that the Settlement, which provides for a Maximum Settlement Amount of $3,500,000 for approximately 3,300 Class Members, appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Maximum Settlement Amount includes all attorneys' fees, litigation costs, Settlement Administration Costs, and Plaintiffs' Enhancement Payments;

7. The Court hereby preliminarily approves Class Counsel's request for attorneys' fees in the amount of $1,400,000 and costs in the amount of $800,000 to be paid out of the Maximum Settlement Amount;

8. The Court hereby preliminarily approves the Plaintiffs' Enhancement Payment in the total amount of $45,000 to be paid out of the Maximum Settlement Amount; and

///

///

9.  Phoenix Class Action Administration Solutions is appointed to act as the Administrator, pursuant to the terms set forth in the Settlement Agreement.

10. Plaintiffs Isaias Vazquez, Linda Hefke, Jerrod Finder, Jonathan Talavera, John Perez, Andrew Howell, and Fred Walter are appointed the Class Representatives and the representatives of the Settlement Class for settlement purposes only;

11. Plaintiffs' Counsel, the Parris Law Firm and The Downey Law Firm, LLC are appointed Class Counsel; Class Counsel are authorized to act on behalf of the Class Representatives and the Settlement Class with respect to all acts or consents required by or which may be given pursuant to the Settlement and such other acts reasonably necessary to consummate the Settlement; the authority of Class Counsel includes entering into any necessary modifications or amendments to the Settlement on behalf of the Class Representatives and the Settlement Class which they deem appropriate;

12. The settlement of Plaintiffs' California Labor Code Private Attorney General Act ("PAGA") claim is fair and reasonable, and the Court preliminarily approves the Settlement and release of that claim as well as the PAGA Allocation in the amount of $10,000, which included payment to the LWDA and to the PAGA Members;

13.  The Court hereby approves, as to form and content, the Notice of Settlement attached as Exhibit "8" ("Notice") to the Supplemental Declaration of Kitty Szeto (Doc. 460-1), except that the Final Fairness hearing is set for June 14, 2024 at 9:00 and that the revised notice erroneously lists Plaintiff Walter as "Walters" in multiple spots.  The rights of any potential objectors to the proposed Settlement are adequately protected in that they may exclude themselves from the Settlement and proceed with any alleged claims they may have against Leprino, or they may object to the Settlement and appear before this Court. However, to do so, they must follow the procedures outlined in the Settlement Agreement which are set out in the Notice;

14. The Court finds that the mailing of the Notice substantially in the manner and form as set forth in the Settlement Agreement and this Order meets the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, and is the best notice practicable under the

circumstances, and shall constitute due and sufficient notice to all persons entitled thereto; and

15. The Court finds that the notice of settlement that Class Counsel provided to the LWDA satisfies the notice requirements of the California Private Attorneys General Act.

IT IS SO ORDERED.

Dated:   **February 12, 2024**            /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE