R. Rex Parris (SBN 96567)
        rrparris@parrislawyers.com
Alexander R. Wheeler (SBN 239541)
        awheeler@parrislawyers.com
Kitty K. Szeto (SBN 258136)
        kszeto@parrislawyers.com
Ryan A. Crist (SBN 316653)
        rcrist@parrislawyers.com
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:    (661) 949-2595
Facsimile:    (661) 949-7524
www.parris.com

Philip A. Downey (admitted *Pro Hac Vice*)
Pa Bar No. 81603
        downeyjustice@gmail.com
**THE DOWNEY LAW FIRM, LLC**
1500 Gabaldon Road NW
Albuquerque, NM 87104
Telephone:    (610) 470-5111
Facsimile:    (610) 813-4579

Attorneys for Plaintiffs and the Settlement Class

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAS VASQUEZ and LINDA HEFKE on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> LEPRINO FOODS COMPANY, a Colorado Corporation; LEPRINO FOODS DAIRY PRODUCTS COMPANY, a Colorado Corporation; and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 1:17-cv-00796-JLT-BAM <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:       June 14, 2024 <br> Time:       9:00 a.m. <br> Courtroom:  8 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Barbara A. McAuliffe in Courtroom 8 of the above-entitled court located at 2500 Tulare Street, Sixth Floor, Fresno, California, 93721, Plaintiffs will seek an order granting final approval of:

- the all-in, non-reversionary **$3,500,000.00** class action settlement as described herein and as set forth in the parties' Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto filed concurrently herewith ("Szeto Decl.");

- Class Counsel's request for attorneys' fees in the total amount of **$1,400,000** which was preliminarily approved by the Court on February 12, 2024 (Doc. 461, p. 40:22–24) and fully disclosed to the Class Members and not objected to by any Class Member (Doc. 462-10, Declaration of Kevin Lee ("Lee Decl.") at ⁋ 9), for **9,969.29** hours of work across the following six (6) cases: (1) *Finder v. Leprino Foods Company*, *et al.*; (2) *Talavera v. Leprino Foods Company*, *et al.*; (3) *Vasquez, et al. v. Leprino Foods Company*, *et al.*; (4) *Perez v. Leprino Foods Company*, *et al.*; (5) *Howell v. Leprino Foods Company*, *et al.*; and (6) *Walter v. Leprino Foods Company*, *et al.* (collectively "Leprino Cases");

- Class Counsel's request for reimbursement of litigation costs and expenses in the total amount of **$800,000** (which is $65,762.88 less than the actual costs incurred by Class Counsel in the Leprino Cases), that was preliminarily approved by the Court on February 12, 2024 (Doc. 461, p. 40:22–24), and fully disclosed to the Class Members and not objected to by any Class Member (Doc. 462-10, Lee Decl. at ⁋ 9);

- Plaintiff's Enhancement Payment in the total amount of **$45,000**, which was preliminarily approved by the Court on February 12, 2024 (Doc. 461, p. 40:25–26), and fully disclosed to the Class Members and not objected to by any Class Member (Doc. 462-10, Lee Decl. at ⁋ 9);

/ / / /

- Settlement Administration Costs in the total amount of **$25,375.94** that was fully disclosed to the Class Members and not objected to by any Class Member (Doc. 462-10, Lee Decl. at ⁋ 9).

This motion is based on the following memorandum of points and authorities; the Declarations of Kitty K. Szeto (Doc. 462-1), Philip A. Downey (Doc. 462-2), Jerrod Finder (Doc. 462-3), Jonathan Talavera (Doc. 462-4), Isaias Vazquez (Doc. 462-5), Linda Hefke (Doc. 462-6), John Perez (Doc. 462-7), Andrew Howell (Doc. 462-8), Fred Walter (Doc. 462-9), and Kevin Lee (Doc. 462-10); the [Proposed] Order (Doc. 462-11) lodged together with this motion, as well as upon the pleadings and other records on file with the Court in this matter, and upon such documentary evidence and oral argument as may be presented at or before the hearing on this motion.

Date:  April 18, 2024                                    **PARRIS LAW FIRM**


                                    By:    /s/ Kitty K. Szeto
                                         Kitty K. Szeto
                                         Attorneys for Plaintiffs
                                         and the Settlement Class

# TABLE OF CONTENTS

1.    BACKGROUND OF THE LEPRINO CASES ................................................................. 1

2.    SUMMARY OF THE SETTLEMENT TERMS ............................................................. 3

3.    THE SETTLEMENT ADMINISTRATION PROCESS ................................................... 4

4.    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ............................ 4

    A.    The Strength of the Leprino Cases Weighed Against the Associated Risks Favor Final Approval of the Settlement. ................................................................. 5

    B.    The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery. ................................................................. 7

    C.    The Settlement Amount is Fair, Reasonable, and Adequate. ..................... 8

5.    ATTORNEYS' FEES ARE APPROPRIATE AS A PERCENTAGE OF THE SETTLEMENT FUND ........... 10

    A.    AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE . 12

        1.    The Risks Assumed by Class Counsel Favor the Fee Award Sought........... 12

        2.    Class Counsel Obtained an Excellent Result for the Class........................... 13

        3.    Class Counsel Obtained Swift and Efficient Relief for the Class................. 14

        4.    The Skill and Reputation of Class Counsel Justifies the Fee Requested....... 15

        5.    Expectations of Counsel and Customary Fees in Similar Cases................... 15

6.    ATTORNEYS' FEES ARE ALSO APPROPRIATE UNDER THE LODESTAR METHOD...................... 16

7.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR FINAL APPROVAL .............................. 17

    A.    Numerosity........................................................................................... 17

    B.    Common Questions of Law and Fact Predominate .................................. 18

    C.    Typicality .............................................................................................. 19

    D.    Adequacy .............................................................................................. 20

    E.    Superiority............................................................................................. 20

8.    CLASS COUNSEL'S COSTS AND EXPENSES ARE REASONABLE ................................... 21

9.    THE SETTLEMENT ADMINISTRATION COSTS ARE NECESSARY AND REASONABLE.................. 21

10.   THE PLAINTIFF ENHANCEMENT PAYMENTS ARE FAIR AND REASONABLE ............................. 22

11.   THE PAGA SETTLEMENT SHOULD BE APPROVED ................................................. 24

i

12.   CONCLUSION................................................................................................25

ii

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**Cases**

4

*Allapattah Services, Inc. v. Exxon Corp.*,

5

   454 F.Supp.2d 1185 (S.D.Fla. 2006) ............................................................ 12

6

*Armstrong v. Whirlpool Corp.*,

7

   2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) ....................................... 13

8

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*,

9

   480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) ................................... 16

10

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,

11

   No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ........................................ 23

12

*Brinker Rest. Corp. v. Superior Court,*

13

   53 Cal. 4th 1004 (2012) ............................................................................. 18

14

*Brotherton v. Cleveland*,

15

   141 F.Supp.2d 907 (S.D.Ohio 2001) ........................................................... 24

16

*Dolgow v. Anderson*,

17

   43 F.R.D. 472 (E.D.N.Y. 1968) .................................................................. 11

18

*Eddings v. Health Net, Inc.*,

19

   No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ................................. 24

20

*Garner v. State Farm Mut. Auto. Ins. Co.*,

21

   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (Apr. 22, 2010) ................................... 23

22

*Glass v. UBS Financial Services, Inc.*,

23

   2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................................ 11

24

*Holman v. Experian Info. Solutions, Inc.*,

25

   No. 11-CV-0180 CW (DMR), 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ........................... 24

26

*In re Ampicillin Antitrust Litigation*,

27

   526 F. Supp. 494 (D.D.C. 1981) ................................................................. 16

28

i

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

<u>Cases</u>

4

*In re Cardizem CD Antitrust Litig.*,

5

    No. 99-73259 (E.D. Mich. Nov. 25, 2002) ................................................................. 16

6

*In re KeySpan Corp. Sec. Litig.*,

7

    No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068 (E.D.N.Y. Aug. 25, 2005) .... 14

8

*In re Linerboard Antitrust Litigation*,

9

    MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ...................................... 16

10

*In re Relafen Antitrust Litig.*,

11

    1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) ........................... 16

12

*In Re Southern Ohio Correctional Facility*,

13

    175 F.R.D. 270 (S.D. Ohio 1997) ................................................................................ 22

14

*In re Washington Public Power Supply Sys. Sec. Litig.*,

15

    19 F.3d 1291 (9th Cir. 1994) ...................................................................................... 12

16

*Ingram v. The Coca-Cola Co.*,

17

    200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................ 22, 23

18

*Masters v. Wilhelmina Model Agency, Inc.*,

19

    473 F.3d 423 (2d Cir. 2006) ...................................................................................... 11

20

*Mills v. Electric Auto-Lite Co.*,

21

    396 U.S. 375 (1970) ................................................................................................. 10

22

*Nichols v. Smithkline Beecham Corp.*,

23

    No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ............................................ 16

24

*North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*,

25

    No. 04 Civ. 248 (D.D.C. Nov. 30, 2004) ..................................................................... 16

26

*Paul, Johnson, Alston & Hunt v. Graulty*,

27

    886 F.2d 268 (9th Cir. 1989) ............................................................................... 10, 12

28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Razilov v. Nationwide Mut. Ins. Co.,*
  No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006)................................. 23

*Scott v. Blackstone Consulting, Inc.,*
  *Case No. 21-cv-1470-MMA-KSC, 2024 WL 271439 (S.D. Cal. Jan. 24, 2024)* ........................... 25

*Singer v. Becton Dickinson and Co.,*
  08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)........................................... 24

*Six Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) .............................................................................. 10, 11

*Smith v. CRST Van Expedited, Inc.,*
  No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ................................. 24

*Staton v Boeing Co.,*
  *327 F3d 938 (9th Cir 2003)* .................................................................................. 21

*Van Vranken v. Atlantic Richfield Co.,*
  901 F.Supp. 294 (N.D.Cal. 1995)......................................................................... 15, 23, 24

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ............................................................................... *passim*

*Vranken v. Atlantic Richfield Co.,*
  901 F.Supp. 294 (N.D. Cal. 1995)......................................................................... 15, 22

*Waters v. International Precious Metals Corp.,*
  190 F.3d 1291 (11th Cir. 1999) ........................................................................... 11

*Williams v. MGM-Pathe Communications,*
  129 F.3d 1026 (9th Cir. 1997) ............................................................................. 11

*Young v. Polo Retail, LLC,*
  2007 WL 951821 (N.D. Cal. 2007) ....................................................................... 11

iii

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**<u>Other Authorities</u>**

Newberg on Class Actions, 4th Ed., 2002 §14.6 .................................................. 10, 15, 19

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 18

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 19

Fed. R. Civ. P. 23(h) ................................................................................................... 21

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

After more than a decade of contentious litigation that involved the exchange of hard-fought written discovery and the analysis of documents, taking and defending over 80 depositions, 4 successful class certification motions, a month-long jury trial, pre-and-post trial appeals, 3 mediation sessions, and strenuous post-mediation settlement negotiations, Plaintiffs ask this Court to grant final approval of the **$3,500,000.00** Maximum Settlement Amount ("Settlement") to settle all of the Leprino Cases once and for all.  No one disputes that the Parties heavily litigated the Leprino Cases for ten years until the Settlement was reached while on appeal of a jury defense verdict in 2023.  The Settlement is the product of arms' length, good faith negotiations by experienced counsel presided over by a Ninth Circuit Mediator.  In the words of this Court, "the result is a good result, in light of the history of the cases."  (Doc. 461 at 31:19.)

As part of the Settlement, Plaintiffs also seek final approval of attorneys' fees ($1,400,000) and costs ($800,000) to Class Counsel, Settlement Administration Costs ($25,375.94), and the Plaintiff Enhancement Payment ($45,000).  As will be demonstrated herein, Class Counsel's fee request is reasonable and is below Class Counsel's Fresno-adjusted lodestar.  The requested amounts of attorneys' fees and costs, Settlement Administration Costs, and the Plaintiff Enhancement Payment were preliminarily approved by the Court on February 12, 2024.  (Doc. 461 at pp. 40.)  The amounts were also fully disclosed to the Class Members.  (Doc. 462-10, Lee Decl. at Ex. A ("Notice Packet").)  Importantly, only one Class Member opted out of the Settlement and not a single Class Member objected to the requested amounts of attorneys' fees and costs, Settlement Administration Costs, or the Plaintiff Enhancement Payment.  (Doc. 462-10, Lee Decl. ¶¶ 8–9.)  Accordingly, the **$3,500,000.00** Settlement is fair, reasonable, and adequate and the Court should grant final approval.

## 1. BACKGROUND OF THE LEPRINO CASES

Beginning in 2013 and until 2020, Plaintiffs filed a series of six class actions against Defendants Leprino Foods Company and Leprino Foods Dairy Products Company (collectively "Defendants" or "Leprino"), challenging certain wage-and-hour policies and practices at Leprino's three processing facilities in California:  Lemoore West, Lemoore East, and Tracy.  The six cases

(1) *Finder v. Leprino Foods Company, et al.*; (2) *Talavera v. Leprino Foods Company, et al.*; (3) *Vasquez, et al. v. Leprino Foods Company, et al.*; (4) *Perez v. Leprino Foods Company, et al.*; (5) *Howell v. Leprino Foods Company, et al.*; and (6) *Walter v. Leprino Foods Company, et al.* (collectively "Leprino Cases") are described as follows.

**_Finder_ and _Talavera_**:  Plaintiff Jerrod Finder filed the first of the Leprino Cases on November 15, 2013, alleging California Labor Code violations including failures to provide a second meal break or accurate itemized wage statements, waiting time violations, Unfair Business Practices Act violations, and Private Attorneys General Act ("PAGA") claims based on those substantive violations.  On January 21, 2015, Plaintiff Jonathon Talavera filed a second wage-and-hour class action against Leprino which ultimately included substantively similar claims as *Finder*.  On November 21, 2016, the Honorable Anthony W. Ishii found significant overlap between *Finder* and *Talavera* and consolidated them into a single action.  (*Finder*, 1:13-cv-02059, Doc. 63.) Thereafter, several other wage-and-hour class and representative actions were filed and certified against Leprino for similar, if not identical, theories of liability as summarized below at its three facilities in California:  Lemoore West, Lemoore East, and Tracy.

**_Vasquez_**:  On May 8, 2017, Plaintiffs Isaias Vasquez and Linda Hefke brought a similar class action on behalf of the hourly employees at Lemoore West.  On March 31, 2020, Judge Ishii certified the on-call meal and rest break claim that proceeded through a jury trial to a verdict for Leprino.  (Doc. 163.)

**_Perez_**:  On April 13, 2017, Plaintiff John Perez brought a similar class action on behalf of the hourly employees at Lemoore East.  On January 6, 2021, Judge Ishii granted class certification in *Perez*.

**_Howell_**:  On April 24, 2018, Plaintiff Andrew Howell filed a class action on behalf of the hourly employees at the Tracy facility.  On March 23, 2022, Judge Ishii granted class certification in *Howell* on the on-call meal and rest break claim.

**_Walter_**:  On February 28, 2020, Charles Bates filed a nearly identical class action as *Howell*. On August 16, 2022, Judge Ishii granted leave to substitute Charles Bates with Plaintiff Fred Walter as the class representative.  On April 25, 2023, the Court partially granted class certification.

All six (6) Leprino Cases are substantially similar and there is overlap between the actions. On April 6, 2020, Leprino filed a Notice of Related Cases in *Finder* listing each of the seven pending Leprino Cases. (*Finder*, 1:13-cv-02059, Doc. 130.) It stated "the plaintiffs and putative classes are represented by the same counsel as represents the plaintiff [in each action except for a settled action] – set forth **substantially the same** California Labor Code claims for wage and hour violations, including, but not limited to, failure to provide legally compliant meal periods, failure to provide accurate wage statements, and failure to pay wages, against the same defendants. The individuals whom the plaintiff in the [*Walter*] Action seeks to represent in his class action overlap with the putative classes in the other actions. As well, the claims overlap, and the defendants are identical, and **thus all actions involve similar questions of fact and the same or similar questions of law**." (*Id.*)

On March 14, 2023, the *Vasquez* case proceeded to a jury trial. At issue was whether Leprino had a facility-wide practice at its Lemoore West facility between May 8, 2013 and March 31, 2020 that required class members to be on-call during their meal and rest breaks. On April 6, 2023, the jury rendered a verdict for Leprino, finding that Leprino did not have a facility-wide policy at its Lemoore West facility that required the class to be on-call during rest breaks or during meal breaks. (Doc. 430.) Plaintiffs appealed the verdict on May 5, 2023, and Leprino filed a conditional cross appeal in the event the Ninth Circuit does not affirm the verdict. (Docs. 436 and 439.)

During the pendency of the *Vasquez* appeal, the Parties participated in two (2) full-day, in-person mediation sessions with Ninth Circuit Mediator, Kyungah Kay Suk, on July 31, 2023 and September 18, 2023. The Parties had attempted previously to mediate the *Vasquez* case unsuccessfully on January 31, 2020 with a private mediator. After ten years of hard-fought litigation, the Parties finally agreed to settle all of the Leprino Cases on the following terms.

2.    **SUMMARY OF THE SETTLEMENT TERMS**

Under the terms of the Settlement Agreement, Leprino agrees to pay a Maximum Settlement Amount of **$3,500,000.00** to resolve the claims of all individuals who currently or formerly worked at Leprino's Lemoore West, Lemoore East, or Tracy facilities in the State of California as hourly,

non-exempt employees ("Class Members") at any time between November 15, 2009 through July 31, 2023 ("Class Period").  All funds remaining after deduction of the Plaintiff Enhancement Payment ($45,000), Attorneys' Fees ($1,400,000), Costs ($800,000), the California Labor and Workforce Development Agency's share of the PAGA Settlement ($7,500), and Settlement Administration Costs ($25,375.94) will result in a pre-tax Net Settlement Amount of $1,222,124.06 that will be paid out to all Class Members who did not Request for Exclusion, on a pro-rata basis based on the total number of Workweek(s) employed by each Class Member as a non-exempt, hourly employee at any time during the Class Period.

3.    THE SETTLEMENT ADMINISTRATION PROCESS

The court-appointed Settlement Administrator, Phoenix Settlement Administrators ("Phoenix"), took all necessary steps to effectuate the settlement administration process as set forth in the Settlement Agreement.  On February 15, 2024, Defendant provided a Class Member List to Phoenix containing a total of 3,439 Class Members.  (Doc. 462-10, Lee Decl. at ¶ 3.)  Phoenix used the United States Postal Service National Change of Address List to verify the accuracy of all addresses on the Class Member List for all 3,439 Class Members.  (*Id.* at ¶ 4.)

On February 22, 2024, Phoenix mailed the Notice Packet to all 3,439 Class Members.  (*Id.* at ¶ 5.)  Thirty-nine (39) Notice Packets were returned, skip traced, and re-mailed.  (*Id.* at ¶ 6.)  Class Members had until April 8, 2024 to respond to the Settlement.  (*Id.* at ¶¶ 8–10.)  Phoenix did not receive any Requests for Exclusion, Objections, or disputes regarding a Class Member's Workweeks or Individual Settlement Payment reflected on the Notice Packet.  (*Id.* at ¶¶ 8–10.)

There are 3,438 Participating Class Members working a total of 998,442 Workweeks.  (Doc. 462-10, Lee Decl. at ¶ 11.)  On average, each Class Member's pre-tax recovery is approximately $344.50, with the highest Individual Settlement Payment at $848.32.  (*Id.* at ¶ 13.)

4.    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

Fed. R. Civ. P. 23(e) requires that a court engage in a two-step process when considering whether to approve the settlement of a class action.  First, it must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable."  *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).  At this stage, "the settlement need only be

potentially fair." *Id*.  In the second step, which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted.

In evaluating the fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).  A court is to consider and evaluate several factors as part of its assessment of a proposed settlement.  The Ninth Circuit has identified the following non-exclusive factors that may be considered during both the preliminary and final approval processes:

> (1) the strength of the plaintiff's case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the amount offered in settlement;
>
> (4) the extent of discovery completed and the stage of the proceedings;
>
> (5) the experience and view of counsel;
>
> (6) any evidence of collusion between the parties; and
>
> (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every class action settlement, and other factors may be considered in a particular case.  For example, courts often consider whether the settlement is the product of arm's length negotiations.  See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

## A.    The Strength of the Leprino Cases Weighed Against the Associated Risks Favor Final Approval of the Settlement.

Plaintiffs have vigorously and zealously litigated the Leprino Cases for almost ten (10) years since November 15, 2013, with Leprino fighting hard every step of the way.  The majority of the cases are certified with the Parris Law Firm and The Downey Law Firm, LLC appointed as Class Counsel.  The *Vasquez* case reached the dispositive motion phase and the Court denied Leprino's motion for summary judgment before the parties proceeded to trial.  Leprino's dispositive

summary judgment motion in the *Perez* case is fully briefed by both sides and is currently pending. Leprino has indicated that it intends to file dispositive motions in each of the other cases.

In certifying the cases, Judge Ishii found that the cases raise common questions of law and fact regarding Leprino's employment policies and practices at each of its three facilities. Plaintiffs provided ample evidence and certified claims that Leprino had on-call policies at all three facilities effectively depriving Class Members of compliant meal and rest breaks, had policies that required employees to don and doff equipment off-the-clock, and had timekeeping policies that rounded time punches resulting in late and short meal periods. By granting class certification, Judge Ishii agreed that Plaintiffs' claims at all three plants were amenable to be tried on a classwide basis. (Szeto Decl., Exs. 2–5.)

Indeed, after defeating a barrage of decertification motions and summary judgment, Plaintiffs took *Vasquez* all the way through a class action jury trial. Very few plaintiffs and their attorneys push class action cases all the way to trial. Plaintiffs and Class Counsel believed in the strength of their case and spent a month trying to convince the jury that Leprino had policies and practices that effectively placed Class Members on call during meal and rest breaks. The jury disagreed and rendered a verdict in favor of Leprino. Plaintiffs appealed the verdict, but agreed to stay the appeal to resolve the Leprino Cases.

While Plaintiffs and Class Counsel believe they could and would win their appeal and overturn the jury verdict, they are well aware of the inherent risks involved in any appeal and the consequences that flow from a ruling by the Ninth Circuit. Nevertheless, Class Counsel recognize the risk of potentially losing the *Vasquez* appeal and how that will very likely impact the remainder of the Leprino Cases. For instance, the *Vasquez* appeal may result in decertification with the cases proceeding on an individual basis. And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the Class Members' best interests. If Plaintiffs were to have rejected this multi-million dollar common fund settlement, to achieve any recovery for Plaintiffs the three certified cases would have to survive decertification, summary judgment, and proceed through more trials, and the *Finder* and *Talavera* cases would have to be certified and the move through those other phases. As with all

trials, there is considerable risk for both sides, and that risk is amplified for both sides when the cases involve thousands of Class Members.

Were Plaintiffs to succeed in prevailing at trial on the other cases, the resulting money judgment will most definitely be subject to many rounds of appeals by Leprino, where, again, both sides would face considerable risk – for Plaintiffs their hard-fought jury verdict could be overturned, as could another favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with class action trials and resulting appeals, Class Counsel stand ready and willing to do so again in the other cases. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interest of the Class.

**B.     The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery.**

The parties have actively litigated the Leprino Cases since the first case was initially filed on November 15, 2013. There have been ongoing investigations and the exchange of discovery including numerous class member and expert depositions and numerous documents and time punch data analysis. Furthermore, the parties engaged in two (2) arm's length mediations with Ninth Circuit Mediator, Kyungah Kay Suk, a very well respected, experienced mediator who specializes in resolving cases on appeal before the Ninth Circuit.

During the mediation, the parties exchanged information and discussed all aspects of the Leprino Cases including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possible outcome of the *Vasquez* appeal and its effect on the other cases, among other things. During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture. Arriving at a settlement that was acceptable to both parties was not easy. Leprino and its counsel felt very strongly about Leprino's ability to

prevail on the appeal and at trial in the other cases while Class Counsel adamantly felt that Plaintiffs would win the appeal and at trial in the other cases.

The parties heavily litigated the Leprino Cases for ten years, all the way up until the settlement was reached.  After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation.  The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how *Vasquez* might have concluded on appeal and the fate of the other cases.  The proposed Settlement is based on this incredibly large volume of facts, evidence, and investigation.

### C.    The Settlement Amount is Fair, Reasonable, and Adequate.

The proposed Settlement of $3,500,000.00 represents an excellent resolution of this case given that the jury rendered a defense verdict in *Vasquez*.  If the Ninth Circuit agrees with the jury, the result would be a zero-dollar recovery.  And if Leprino succeeds in the same manner on all of six remaining cases, none of the Class Members would recover a dime.  Thus, recovering $3,500,000.00 now for all of the Class Members in the face of a defense verdict is an amazing result by all accounts.

The proposed Settlement provides for a Maximum Settlement Amount of $3,500,000.00, inclusive of attorneys' fees and all associated costs, that will be automatically paid out to Class Members who do not submit a Request for Exclusion.  There are 3,438 Participating Class Members in the Settlement.  (Doc. 462-10, Lee Decl. at ¶ 11.)  This equates to an average pre-tax recovery of approximately $344.50, after deducting Attorneys' Fees and Costs, the Plaintiff Enhancement Payments, and Settlement Administration Costs.  (*Id.* at ¶ 13.)

The $3,500,000.00 Maximum Settlement Amount represents the present value of the Leprino Cases collectively, in light of a defense verdict in *Vasquez*, the pending appeal, and the potential for decertification and/or a defense verdict in the remaining cases.  The crux of the monetary value in the Leprino Cases has always been on the on-call meal and rest break claim because that theory allocated damages to every single shift for ten years across all three plants.  Unfortunately, zero damages were awarded in *Vasquez* for the on-call meal and rest break claim

8

given the defense verdict.  If the result in *Vasquez* were applied to the remainder of the Leprino Cases, Class Members could potentially recover nothing in the other cases as well.

As for the potential exposure analysis of the remaining claims, potential damages for the off-the-clock claim in the Leprino Cases according to Plaintiffs' expert's calculations equate to $353,079.  (Szeto Decl. at ¶ 7.)  Damages for the late and short meal breaks resulting from Leprino's rounding policy extrapolate out to roughly $279,167.88 in unpaid wages based on the 2,089.58 hours of unpaid wages for the 25% sample Leprino provided for class certification, applying Plaintiff Walter's hourly rate of $33.40.  (*Walter*, 2:20-cv-00700, Doc. 32-1 at 6:18-28.) Damages for the second meal break claim across all three plants for the entire ten-year Class Period are extrapolated to be approximately $1,279,350 based on Plaintiffs' expert's analysis that 8,529 workdays from 2011 to 2015 reflected no second meal break recorded.  (*Talavera*, 1:15-cv-00105, Doc. 65 at p. 4.)  PAGA penalties for the initial violation equate to $330,000 for one Labor Code violation.  Thus, a $3,500,000.00 Maximum Settlement Amount yielding a Net Settlement Amount of $1,222,124.06 represents a fair, reasonable, and adequate Settlement.  There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds.  Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel."  *In re American Bank Note Holographies, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30.

In light of the potential risk of the *Vasquez* appeal and the possibility of a defense verdict in the remainder of the Leprino Cases, Class Counsel believes that the $3,500,000.00 Maximum Settlement Amount is within a reasonable range given the uncertainties of success as well as the costs in terms of both time and expense in litigating the rest of the Leprino Cases.  Further, the $3,500,000.00 Maximum Settlement Amount was the result of arms' length negotiations with a Ninth Circuit Mediator.  She was not someone hired and paid for by the parties.  Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations of counsel into account, particularly where, as here, Class Counsel is competent, has experience with this type of litigation, and significant discovery and investigation has been

completed.  *Newberg* §11.47.  Accordingly, the Court should approve the Settlement.

**5.    ATTORNEYS' FEES ARE APPROPRIATE AS A PERCENTAGE OF THE SETTLEMENT FUND**

Class Counsel seeks approval of an attorneys' fee award equal to 40% of the Maximum Settlement Amount, which the Court preliminarily approved on February 12, 2024.  (Doc. 461 at 40:22–24.)  An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[1]  Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund.  *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future

---

[1]    The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched.  *Boeing*, 444 U.S. at 478.

alleged misconduct of a similar nature.  *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  Courts have consistently adhered to these teachings.  *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).  The "[d]etermination of 'reasonableness' is within the discretion of the district court."  *Id* at *31.

The Ninth Circuit has made clear that when a fund is established which makes a pool of money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly calculated as a percentage of the entire fund.  *See Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27 (9th Cir. 1997).  In *Boeing*, the Court concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants.  *Boeing*, 444 U.S. at 480-81; *see also Six Mexican Workers*, 904 F.2d at 1311; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with federal laws.  The continued viability of wage-and-hour laws, like the viability of other remedial statutes, depends on the ability of private litigants to seek redress through litigation.  The success of these lawsuits depends in part on the availability and willingness of attorneys to bring them.  Substantial fee awards also encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys general."  Indeed, "[a]bsent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interest of those lawyers who would prefer to take minor sums to serve their self-interest rather than obtaining real justice on

behalf of their injured clients." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185, 1217 (S.D.Fla. 2006).

A.    AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE

Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul,* 886 F.2d at 272.  Given the results achieved and the difficulties attendant in litigating all of the Leprino Cases and the fact that Class Counsel took one all the way through a jury trial, an upward adjustment is warranted.

In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from the "benchmark." *See Vizcaino*, 290 F.3d at 1047-1050.  These are: (i) the size of the fund (and thus the resulting size of the percentage fee award); the quality of the results obtained by Class Counsel; (ii) the risk taken on by Class Counsel in accepting and pursuing the case with no guarantee of victory or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by Class Counsel; (v) Class Counsel's reasonable expectations based on the circumstances of the case and fee awards in other cases; and, to a certain extent, the percentage fee award originally contracted for between Plaintiffs and Class Counsel. *Id*  A consideration of the *Vizcaino* factors shows that Class Counsel's request for 40% the total value of the settlement is exceedingly reasonable.

1.    The Risks Assumed by Class Counsel Favor the Fee Award Sought

Class Counsel assumed a very real risk in taking on the Leprino Cases.  They took six cases on a contingency basis and invested time, effort, and money with no guarantee of any recovery.  In cases where the "recovery is far from certain," as most certainly here, an award of more than 25% of the common fund as attorneys' fees is appropriate.  *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Class Counsel proceeded knowing there was a chance that Leprino would prevail at trial and that even if Plaintiffs prevailed, each case would not be resolved without an appeal.  The risk of no

recovery in complex class actions of this type is very real.  There are numerous cases where Class Counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever.  *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important factor in approving the class action settlement.).  From the outset, Leprino has adamantly denied any liability and continues to do so today.

These were complicated and uncertain cases in which Leprino vehemently contested liability.  There have been voluminous discovery and related disputes that have required substantial efforts by Class Counsel.  (Doc. 462-2, Szeto Decl. at ¶ 2.)  Class Counsel has made a significant effort on behalf of the Class, including taking and defending over 80 depositions up and down the State of California, without assurance of any compensation.  (*Id.*)  The risks of the case and litigation obstacles were great, but Class Counsel, nevertheless, achieved an extremely successful result, and thus, this *Vizcaino* factor militates in favor of a 40% fee award.

### 2.    Class Counsel Obtained an Excellent Result for the Class

The result obtained by Class Counsel here is remarkable in light of the current status of the cases.  The parties were in the midst of the *Vasquez* appeal when the settlement was obtained.  But for Class Counsel taking the *Vasquez* case all the way to trial and continuing to persist at the appellate level, Leprino would not have been willing to come to the table and place any value on the Leprino Cases.

Class Counsel diligently and effectively investigated Plaintiffs' claims, drafted pleadings, interviewed witnesses, prepared and responded to discovery, reviewed and analyzed documents produced, filed countless motions to compel discovery, took and defended over 80 depositions, hired experts, successfully opposed several motions for decertification and a summary judgment motion, tried the *Vasquez* matter to a jury, and appealed the verdict.  (*Id.*)  Class Counsel concluded that the Settlement is in the best interests of the Class in light of the last ten years of litigation and after evaluating the risk that further litigation might result in the Class Members not recovering

13

anything at all was a very significant factor in determining that this settlement is fair, reasonable, and adequate.  As a result of the settlement, all of the Class Members will be provided with an automatic recovery.  Thus, this *Vizcaino* factor greatly favors the fee request.

The fairness of this fee request is further supported by the high quality of Class Counsel's legal representation as described above and in the declaration.  Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.  *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005)  Here, Leprino is represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases.  The ability of Class Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Class Counsel's representation.  Accordingly, this factor strongly supports the requested fee.

### 3.    Class Counsel Obtained Swift and Efficient Relief for the Class

While the *Vizcaino* court considered the protracted litigation in that case, it stressed:  "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement."  *Id.*  Here, Class Counsel achieved a substantial benefit for Class Members in a very timely fashion, providing Class Members with substantial and certain relief much sooner than if this matter had been extensively litigated.  There is no doubt that either side would have appealed the trial verdict.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of the Leprino Cases.  As discussed above, Class Counsel litigated these cases heavily, took and

14

defended over 80 depositions up and down the state, and reviewed hundreds of thousands of pages of relevant documents produced by Leprino.  (Doc. 462-2, Szeto Decl. at ¶ 2.)  Additionally, Class Counsel spoke with numerous Class Members concerning their claims.  (*Id.*)  Thus, Class Counsel's fee request is reasonable here.

### 4.    The Skill and Reputation of Class Counsel Justifies the Fee Requested

As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiffs and the Class in this case.  (*Id.* at ¶ 20.)  As a result, these factors favor the fee award sought by Class Counsel. The Parris Law Firm has dedicated itself to this case.  Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.  (*Id.*)  The goal achieved is the extraordinary result of obtaining $3,500,000.00 for the Class.   Class counsel respectfully requests an award of attorneys' fees equal to 40% of that amount.

### 5.    Expectations of Counsel and Customary Fees in Similar Cases

Class Counsel knew this case would be an uphill battle, yet still took on Leprino on a contingency basis.  And they were right.  Leprino fought the Leprino Cases strenuously for ten years and at great expense including on discovery and defending against Plaintiffs' experts and Plaintiffs' class member declarants.  Accordingly, there was a reasonable expectation based on the circumstances of the case and given the amount of work and hours Class Counsel devoted to this case that warrants an upward adjustment of the 25% benchmark to 40% of the Maximum Settlement Amount.

This adjusted fee request is commensurate with federal court -- and, in particular, Ninth Circuit -- precedent: case surveys reflect that awards of this amount, or more, are common. Newberg, Newberg on Class Actions, 4th Ed., 2002 §14.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298 (N.D.Cal. 1995) (citing cases awarding an award of 33%).  Indeed, many courts have approved common fund fee awards equivalent to or greater than the percentage requested here, and even when the award results in a substantial multiplier.  *See, e.g., In re Pacific Enterprises*, 47 F.3d at 379 (affirming an award equal to 33% of the common fund); *In re*

*Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F.Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (53% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was more than eight times counsel's lodestar) ("BuSpar"); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04 Civ. 248 (D.D.C. Nov. 30, 2004), (multiplier was well over eight times counsel's lodestar); *In re Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) (multiplier of 4.88 awarded); *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) (approving multiplier of approximately 3.7); *Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2, 2004) (approving 2.66 multiplier).  Accordingly, Class Counsel's 40% fee request is in line with the customary fees awarded in similar cases given the amount of work Class Counsel devoted on behalf of the Class, particularly in light of taking the *Vasquez* case to trial and appealing the verdict, something that most plaintiffs' counsel would not have done.

**6.     ATTORNEYS' FEES ARE ALSO APPROPRIATE UNDER THE LODESTAR METHOD**

Ninth Circuit law regards both the percentage and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements.  *Vizcaino*, 290 F.3d at 1047; *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008 (9th Cir. 2002).  Thus, while some courts use the lodestar to "check" the reasonableness of a fee request, an examination of Class Counsel's lodestar is unnecessary here.  *Vizcaino*, 290 F.3d at 1047.  But even if this Court were to apply a lodestar cross-check on the percentage fee award sought, 40% of the Maximum Settlement Amount is an appropriate fee award in this case.

"Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate."  *Fischel*, 307 F.3d at 1006.  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202

(9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008).  The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well.  *In re Bluetooth Headset Products Liab. Litigation.*, 654 F.3d 935, 944 (9th Cir. 2011); *Vizcaino*, 290 F.3d at 1047 (concluding district court has discretion in a common fund case to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees).  Where, as here, the lodestar is employed to cross-check a percentage-of-fund determination, courts may do a rough calculation.  *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 460 (C.D. Cal. 2014).

 As detailed in the declarations of Class Counsel, the Parris Law Firm has devoted a total of 8,928.99 hours (Doc. 462-1, Szeto Decl., ℙ 11) and The Downey Law Firm, LLC has devoted a total of 1,040.30 hours (Doc. 462-3, Downey Decl., Ex. B), totaling 9,969.29 on the various Leprino Cases over the last decade.  (Doc. 462-1, Szeto Decl., ℙ 18.)  The highest hourly rate in the Fresno area is $400 and the lowest Fresno area hourly rate is $200.  (Doc. 461, pp. 34–35.)  Therefore, a rough lodestar calculation using the Fresno area highest hourly rate, $400, for the hours worked (9,969.29 hours) yields $3,987,716.00 in fees.  (*Id.*)  Using the lowest Fresno area hourly rate, $200, yields $1,993,858.00.  (*Id.*)  Thus, using the rates accepted in this District, the lodestar cross-check supports Class Counsel's request for $1,400,000.00 in attorneys' fees for 9,969.29 hours of work on the Leprino Cases for the last ten years.

## 7.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR FINAL APPROVAL

 The Court conditionally certified the following Settlement Class at preliminary approval:

> All individuals who currently or formerly worked at Leprino's Lemoore West, Lemoore East, or Tracy facilities in the State of California as hourly, non-exempt employees at any time between November 15, 2009 and July 31, 2023.

(Doc. 461, pp. 39–40.)  The Settlement Class should also be certified for final approval.

### A.  Numerosity

 The Settlement Class consists of 3,438 Participating Class Members who did not opt out. (Doc. 462-10, Lee Decl. ¶ 11.)  This satisfies the numerosity requirement.  *See also Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007); *Cervantez v. Celestica Corp*., 253 F.R.D.

562, 569 (C.D. Cal. 2008) ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.")  Accordingly, the Settlement Class is sufficiently numerous.

**B.    <u>Common Questions of Law and Fact Predominate</u>**

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the common questions across the Class include the certified questions of whether Leprino had an on-call policy at its facilities that deprived Class Members of meal and rest breaks, whether Leprino failed to provide second meal breaks, whether Leprino had a timekeeping policy that rounded punches resulting in late and short meal breaks, whether Leprino's policies resulted in Class Members donning and doffing off the clock, and also include the questions on which Plaintiffs would still seek certification, including, whether Leprino failed to pay minimum wage, failed to pay overtime wages, failed to pay appropriate premium pay for meal or rest breaks not provided, failed to furnish accurate wage statements, or failed to pay earned wages at termination.  These types of claims are the "sort routinely, and properly, found suitable for class treatment." *Brinker*, at 1033.  "The theory of liability—that Defendant has a uniform policy and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." *Id*.; *see also In re Taco Bell Wage and Hour Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *5 (E.D.Cal. 2012) ("Numerous courts within the Ninth Circuit have held that commonality exists where a defendant's policy allegedly violates the meal requirements of California law.").  In fact, Judge Ishii already certified many of these common questions.  With respect to the second meal break claim, Plaintiffs have provided ample evidence for certification in their class certification brief in *Talavera*.  Judge Ishii already consolidated *Finder* and *Talavera* on November 21, 2016.  And, Leprino has taken the position that the claims in *Finder* should be reduced into the pending *Talavera* certification motion.  (*Finder*, 1:13-cv-02059, Doc. 138.)

Plaintiffs contend that these common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3).  First, all of the Leprino policies and practices at issue apply uniformly across all Class Members at the three facilities.  Thus, proving that the alleged Leprino

18

policies and practices violate the law does not require any individualized proof. Common questions likely will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim," *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 334 F.R.D. 234, 256 (E.D. Cal. 2019) (citing *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)), or "when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced." (*Gomez*, 334 F.R.D. at 256 (citing Newberg on Class Actions § 4:50).) Second, there are no individualized inquiries that would somehow bar certification or recovery here. Instead, Plaintiffs' theories of liability are "sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 964 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)). Notably, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b) (3)," especially in a wage-and-hour case. *Levya v. Medline Indus., Inc.* 716 F.3d 510, 514 (9th Cir. 2013); *see also Wal-Mart*, 131 S.Ct. at 2558 "[D]amages determinations are individual in nearly all wage-and-hour class actions," and therefore any rule precluding certification " 'on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.' " *Levya*, 716 F.3d at 513–14. For settlement purposes, whether Leprino had an on-call policy at its facilities that deprived Class Members of meal and rest breaks, whether Leprino failed to provide second meal breaks, whether Leprino had a timekeeping policy that rounded punches resulting in late and short meal breaks, whether Leprino's policies resulted in Class Members donning and doffing off the clock, and whether Leprino failed to provide minimum wage, overtime, premium pay, accurate wage statements and final wages at termination, are questions of law and fact subject to common proof that would predominate over individualized inquiries.

C.    **Typicality**

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Here, Plaintiffs were

employed as hourly, non-exempt employee at Leprino's facilities and were subjected to Leprino's uniform policies and practices, just like the rest of the Class Members. Plaintiffs suffered the same harms as the absent Class Members. Plaintiffs assert claims that are typical of the other Class Members because they arise from the same factual basis and are based on the same legal theory as those applicable to the other Class Members. (Szeto Decl., Exs. 2–5; *Talavera*, 1:15-cv-00105, Doc. 59; *Finder*, 1:13-cv-02059, Doc. 37.)

### D.    Adequacy

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs submits that no conflict exists between Plaintiffs and the Class because Plaintiffs allegedly has suffered the same violations as all Class Members and has fairly represented all Class Members. (Szeto Decl., Exs. 2–5; *Talavera*, 1:15-cv-00105, Doc. 59; *Finder*, 1:13-cv-02059, Doc. 37.) Despite the settlement, Plaintiffs remain willing to vigorously prosecute the Leprino Cases to the benefit of the Class. Furthermore, Plaintiffs are represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in their declarations supported herewith. (Szeto Decl., Ex. 11.)

### E.    Superiority

Resolution of the claims of 3,438 Participating Class Members in one class action settlement is far superior to 3,438 individual lawsuits. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, e.g. *Hanlon*, 150 F.3d at 1022. Here, Judge Ishii found the superiority factors weigh in favor of certification. (Szeto Decl., Exs. 2–5.) Notably, Plaintiffs tried the *Vasquez* matter as a class action, which further proves that a class action is superior to other methods of adjudication.

/ / / /

/ / / /

/ / / /

1  **8.  C** LASS **C**OUNSEL'S **C**OSTS AND **E**XPENSES ARE **R**EASONABLE

2         Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

3  attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed.

4  R. Civ. P. 23(h).  Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably

5  incurred investigating and prosecuting the case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F.

6  Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92

7  (1970)); *see also Staton*, 327 F.3d at 974. The Ninth Circuit has held that an award to a prevailing

8  party "can include reimbursement for out-of-pocket expenses including ... travel, courier and

9  copying costs."  *Grove v. Wells Fargo Fin. Cal., Inc*., 606 F.3d 577, 580 (9th Cir. 2010).  Other

10  recoverable expenses include expenses related to discovery and expenses related to computerized

11  research.  *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that "expenses related

12  to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v.

13  Redland Ins. Co*., 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for

14  computerized research may be recovered."); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 646 (S.D. Cal.

15  2011) (holding that consulting fees as costs were reasonable because the evidence was necessary to

16  negotiate a settlement).

17         Plaintiffs seek final approval of $800,000 in reimbursement of reasonable costs expended on

18  the Leprino Cases for the last ten years.  As supported by Class Counsel's declarations, the Parris

19  Law Firm and The Downey Law Firm, LLC have incurred costs well beyond the $800,000

20  requested.  (Doc. 462-1, Szeto Decl. ¶ 23.)  The Parris Law Firm has incurred $784,225.19 in costs

21  and litigation expenses across all of the Leprino Cases.  (*Id*. at, Ex. 12.)  The Downey Law Firm

22  seeks reimbursement for its costs of $81,537.69 expended in its prosecution of the Leprino Cases.

23  (Doc. 462-2, Downey Decl. ¶ 5 and Ex. C.)  The total costs incurred are $865,762.88.  (Doc. 462-1,

24  Szeto Decl. ¶ 23.)  Given the length of time these cases have been pending, the extensive discovery

25  and use of experts, and the jury trial in *Vasquez*, Plaintiffs respectfully request that the Court grant

26  final approval of $800,000 in costs.

27  **9.  T**HE **S**ETTLEMENT **A**DMINISTRATION **C**OSTS **A**RE **N**ECESSARY AND **R**EASONABLE

28         Plaintiffs seek final approval of Settlement Administration Costs in the total amount of

21

$25,375.94. As detailed in the Settlement Administrator's declaration, these costs were required to complete the following settlement administration tasks: print and distribute the Notice to the Class by First Class mail; establish a mailing address and toll-free telephone number to receive Class Members' inquiries about the proposed Settlement; handle inquiries from Class Members regarding the proposed Settlement; calculate each Class Members' Individual Settlement Payment; mail the settlement checks to the Settlement Class Members; and perform any other usual and customary duties for administering a class action settlement. (Doc. 462-10, Lee Decl., Ex. B.) Accordingly, the Court should grant final approval of these costs.

**10.    THE PLAINTIFF ENHANCEMENT PAYMENTS ARE FAIR AND REASONABLE**

Plaintiffs request that the Court approve a Plaintiff Enhancement Payment in the total amount of $45,000, broken down as follows, for their efforts in filing and prosecuting the Leprino Cases: Jerrod Finder ($5,000.00), Jonathan Talavera ($5,000.00), Isaias Vasquez ($10,000.00), Linda Hefke ($10,000.00), John Perez ($5,000.00), Andrew Howell ($5,000.00), and Fred Walters ($5,000.00). It is within the Court's discretion to award to the Class Representatives for their efforts and work. *Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative). The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Id.*

Enhancement payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for

the services they provided and the risks they incurred during the course of the class action litigation.").  In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

Enhancement payments are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006).  Plaintiffs hereby submit the Declarations of Jerrod Finder (Doc. 462-3), Jonathan Talavera (Doc. 462-4), Isaias Vazquez (Doc. 462-5), Linda Hefke (Doc. 462-6), John Perez (Doc. 462-7), Andrew Howell (Doc. 462-8), and Fred Walter (Doc. 462-9) detailing their respective efforts as Class Representatives to support their individual Plaintiff Enhancement Payment.  They committed time to the litigation by reviewing pleadings, communicating with Class Counsel during the prosecution of this case, participated in written discovery, and sitting for deposition, warranting an enhancement payment.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a $20,000 award where plaintiff "made herself available for deposition on two separate occasions; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.")

The Plaintiffs Enhancement Payments are further justified because Plaintiffs have agreed to the full general release of their claims against Leprino, which is much broader than the release that applies to the class.  (Doc. 462-1, Ex. 1 (Settlement Agreement) ¶ 80.)  Broad releases of the named plaintiff's claims that go beyond what is required of the class members are taken into account when considering the reasonableness of the incentive award.  *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207,

23

at *6 (N.D. Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his service to the class and for his broad release of all claims, known or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving the incentive award in part because the plaintiff executed "a general release that will resolve her individual claims, as well the class claims").

Notably, the award is also well within the acceptable range awarded in similar cases. *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (holding that incentive awards of $15,000 for each of the three named representatives was "well within the range awarded in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation"). Without the effort of Plaintiffs, these cases would not have been filed and a classwide settlement would not have been achieved. The $45,000 Plaintiffs Enhancement Payment is therefore appropriate and justified as part of the overall settlement.

## 11. THE PAGA SETTLEMENT SHOULD BE APPROVED

The Settlement allocates $10,000 for the PAGA Settlement (which represents less than 1 percent of the Maximum Settlement Amount), of which 75% will be paid to the LWDA and 25% will be paid to the PAGA Members. (Doc. 462-1, Ex. 1 (Settlement Agreement) ¶¶ 27, 33, 35.) Courts have approved PAGA penalties within the range of the PAGA Settlement here. *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in PAGA penalties were preliminarily or finally approved despite total settlement amounts of $900,000 and $6.9 million); *see also Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx), 2019 U.S. Dist. LEXIS 166879, at *26 (C.D. Cal.

24

June 17, 2019) (collecting cases in which PAGA penalties within the zero to two percent range were approved by courts); *Scott*, 2024 WL 271439, at *8 (approving 5 percent PAGA settlement). Plaintiffs submitted the Settlement Agreement to the LWDA almost 6 months ago. (Doc. 462-1, Szeto Decl. Ex. 13.) Neither Class Counsel nor the Settlement Administrator have not received any objections from the LWDA or PAGA Members as to the $10,000 PAGA Settlement. (Doc. 462-1, Szeto Decl. ¶ 25; Doc. 462-10, Lee Decl. ¶¶ 8–10.)

## 12.  CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the **$3,500,000.00** Settlement, Class Counsel's request for attorneys' fees in the amount of $1,400,000 and reimbursement of litigation costs and expenses in the amount of $800,000, the $45,000 Plaintiff Enhancement Payment to Plaintiffs, and the $25,375.94 in Settlement Administrator Costs.

DATED:  April 18, 2024                    **PARRIS LAW FIRM**

By: /s/ Kitty K. Szeto
    Kitty K. Szeto
    Attorneys for Plaintiffs and the
    Settlement Class